1  LATHAM & WATKINS LLP
   Michael H. Rubin (Bar No. 214636)
2    *michael.rubin@lw.com*
   Melanie M. Blunschi (Bar No. 234264)
3    *melanie.blunschi@lw.com*
   Francis J. Acott (Bar No. 331813)
4    *francis.acott@lw.com*
   505 Montgomery St., Suite 2000
5  San Francisco, CA 94111
   Telephone: +1.415.391.0600
6

7  *Attorneys for Defendant Amplitude, Inc.*

8

9

10                    **UNITED STATES DISTRICT COURT**

11                  **NORTHERN DISTRICT OF CALIFORNIA**

12                      **SAN FRANCISCO DIVISION**

13  KYLE ATKINS, individually and on          Case No. 3:24-cv-04913-RFL
    behalf of all others similarly situated,
14                                            **DEFENDANT AMPLITUDE, INC.'S**
                  Plaintiff,                  **NOTICE OF MOTION AND MOTION TO**
15                                            **DISMISS CLASS ACTION COMPLAINT;**
          v.                                  **MEMORANDUM OF POINTS AND**
16                                            **AUTHORITIES IN SUPPORT THEREOF**
    AMPLITUDE, INC., a Delaware
17  corporation,                              Hearing: February 4, 2025
                                              Time:  10:00 a.m.
18                Defendant.                   Location: Courtroom 15—18th Floor
                                              Judge: Hon. Rita F. Lin
19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION TO DISMISS**

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on February 4, 2025 at 10 a.m., or as soon thereafter as the parties may be heard, before the Honorable Rita F. Lin, United States District Court, Courtroom 15, 18th Floor, 450 Golden Gate Ave., San Francisco, California, Defendant Amplitude, Inc. ("Amplitude") will and hereby does move for an order dismissing Plaintiff's Class Action Complaint (Dkt. 1).

Amplitude respectfully submits this Motion pursuant to (1) Federal Rule of Civil Procedure ("Rule") 12(b)(1) on the ground that Plaintiff lacks Article III standing because he did not suffer any concrete, particularized harm traceable to Amplitude; and (2) Rule 12(b)(6) on the ground that Plaintiff does not allege facts sufficient to state a violation of (a) the Federal Wiretap Act, 18 U.S.C. § 2510, *et seq.*, (b) the California Invasion of Privacy Act ("CIPA"), Penal Code § 638.51, (c) the California Comprehensive Computer Data Access and Fraud Act ("CDAFA"), Penal Code § 502, or (d) the California Wiretap Act, Penal Code § 631(a).

This Motion is based on the accompanying Memorandum of Points and Authorities, the Declaration of Michael H. Rubin, the Declaration of Brian Cramer, the Declaration of Jeffrey Wang, the pleadings, records, and papers on file, and such argument and evidence as may be presented in connection with the hearing on this Motion.

**STATEMENT OF RELIEF SOUGHT**

Amplitude seeks an order pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) dismissing Plaintiff's Class Action Complaint for the reasons set forth herein.

Dated: October 25, 2024

Respectfully submitted,

LATHAM & WATKINS LLP

By  /s/ *Michael H. Rubin*
   Michael H. Rubin (Bar No. 214636)
   *michael.rubin@lw.com*
   Melanie M. Blunschi (Bar No. 234264)
   *melanie.blunschi@lw.com*
   Francis J. Acott (Bar No. 331813)
   *francis.acott@lw.com*
   505 Montgomery St., Suite 2000

1

San Francisco, CA 94111
Telephone: +1.415.391.0600

2

*Attorneys for Defendant Amplitude, Inc.*

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.    BACKGROUND ................................................................................................ 2

    A.    Amplitude Helps App Developers Such As DoorDash Analyze
Their Data ................................................................................................ 2

    B.    DoorDash Discloses in Its Privacy Policy That It Shares Personal
Information With Service Providers Like Amplitude ........................... 3

    C.    All DoorDash Users Must Consent to its Privacy Policy—
including Plaintiff ................................................................................... 3

III.    ARGUMENT ..................................................................................................... 4

    A.    Plaintiff Lacks Article III Standing ....................................................... 4

        1.    Legal Standard .......................................................................... 4

        2.    Plaintiff Consented To DoorDash's Collection And Sharing
Of His Information With "Analytics Services" Like
Amplitude .................................................................................. 4

        3.    Plaintiff Does Not Allege A Concrete, Particularized Harm
Traceable To Amplitude On The Face Of The Complaint ....... 6

        4.    Plaintiff Lacks Standing To Pursue Injunctive Relief ............. 8

    B.    Plaintiff Has Not Stated Any Claim Against Amplitude ...................... 8

        1.    Legal Standard .......................................................................... 8

        2.    Plaintiff Cannot State Any Claim Because He Consented
To The Collection And Sharing Of His Information With
"Analytics Services" ................................................................. 9

        3.    Plaintiff Cannot State A Claim For Wiretapping ..................... 9

        4.    Plaintiff's Section 638.51 Claim Should Be Dismissed
Because Amplitude's SDK Is Not A Pen Register ................. 14

        5.    Plaintiff's CDAFA Claim Fails On Multiple Grounds ........... 14

IV.    CONCLUSION ................................................................................................ 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................ 8

*Avilez v. Garland*,
  69 F.4th 525 (9th Cir. 2023) .................................................................................. 8

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................ 8

*Birdsong v. Apple, Inc.*,
  590 F.3d 955 (9th Cir. 2009) ............................................................................... 4, 7

*Byars v. Hot Topic, Inc.*,
  656 F. Supp. 3d 1051 (C.D. Cal. 2023) ................................................................ 11

*Byars v. Sterling Jewelers, Inc.*,
  2023 WL 2996686 (C.D. Cal. Apr. 5, 2023) ......................................................... 8

*Chapman v. Pier 1 Imports (U.S.) Inc.*,
  631 F.3d 939 (9th Cir. 2011) ................................................................................ 14

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) .............................................................................................. 8

*Cody v. E. Gluck Corp.*,
  2024 WL 4314187 (N.D. Cal. Sept. 26, 2024) ...................................................... 7

*Cottle v. Plaid Inc.*,
  536 F. Supp. 3d 461 (N.D. Cal. 2021) .................................................................. 15

*Doe I v. Google LLC*,
  2024 WL 3490744 (N.D. Cal. Jul. 22, 2024) ....................................................... 10

*Doe v. Google LLC*,
  2023 WL 6882766 (N.D. Cal. Oct. 18, 2023) ...................................................... 13

*Doe v. Kaiser Found. Health Plan, Inc.*,
  2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) ...................................................... 11

*Doe v. Meta Platforms, Inc.*,
  690 F. Supp. 3d 1064 (N.D. Cal. Sep. 7, 2023) ................................................... 15

*Fish v. Tesla, Inc.*,
  2022 WL 1552137 (C.D. Cal. May 12, 2022) ...................................................... 15

*Fleming v. ProVest California LLC*,
2021 WL 6063565 (N.D. Cal. Dec. 22, 2021) ................................................................. 8

*Frasco v. Flo Health, Inc.*,
2022 WL 21794391 (N.D. Cal. June 6, 2022) ................................................................. 12

*Gonzales v. Uber Techs., Inc.*,
305 F. Supp. 3d 1078 (N.D Cal. 2018) ............................................................................ 14

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) ................................................................. 4, 10, 11

*Hammerling v. Google LLC*,
2022 WL 17365255 (N.D. Cal. Dec. 1, 2022) ................................................................. 7

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) .............................................................. 5, 12, 13

*Hammerling v. Google, LLC*,
2024 WL 937247 (9th Cir. Mar. 5, 2024) ......................................................................... 5

*Heiting v. Taro Pharms. USA, Inc.*,
2024 WL 1626114 (C.D. Cal. Apr. 2, 2024) ................................................................... 13

*Heiting v. Taro Pharms. USA, Inc.*,
709 F. Supp. 3d 1007 (C.D. Cal. 2023) ........................................................................... 13

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009) ............................................................................................. 6, 7, 8

*I.C. v. Zynga, Inc.*,
600 F. Supp. 3d 1034 (N.D. Cal. 2022) ............................................................................ 7

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ......................................................................... 4, 8, 10, 15

*In re Gilead Scis. Sec. Litig.*,
536 F.3d 1049 (9th Cir. 2008) .......................................................................................... 9

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) .......................................................................... 12

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) ........................................................................................ 12

*Ji v. Naver Corp.*,
2022 WL 4624898 (N.D. Cal. Sept. 30, 2022) ................................................................. 7

*Johnson v. Blue Nile, Inc.*,
2021 WL 1312771 (N.D. Cal. Apr. 8, 2021) ................................................................... 11

*Jones v. Peloton Interactive, Inc.*,
  2024 WL 1123237 (S.D. Cal. Mar. 12, 2024) ................................................................ 12, 13

*Konop v. Hawaiian Airlines, Inc.*,
  302 F.3d 868 (9th Cir. 2002) ................................................................................................. 13

*Lau v. Gen Digit. Inc.*,
  2024 WL 1880161 (N.D. Cal. Apr. 3, 2024) ........................................................................ 13

*Leite v. Crane Co.*,
  749 F.3d 1117 (9th Cir. 2014) ................................................................................................. 4

*Lightoller v. Jetblue Airways Corp.*,
  2023 WL 3963823 (S.D. Cal. June 12, 2023) ........................................................................ 8

*M.G. v. Therapy Match, Inc.*,
  2024 WL 4219992 (N.D. Cal. Sept. 16, 2024) ...................................................................... 13

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
  540 F.3d 1049 (9th Cir. 2008) ................................................................................................. 9

*Mikulsky v. Noom, Inc.*,
  682 F. Supp. 3d 855 (S.D. Cal. 2023) ..................................................................................... 8

*NovelPoster v. Javitch Canfield Grp.*,
  140 F. Supp. 3d 938 (N.D. Cal. 2014) ................................................................................... 15

*O'Handley v. Padilla*,
  579 F. Supp. 3d 1163 (N.D. Cal. 2022) ................................................................................... 4

*People v. Larkin*,
  194 Cal. App. 3d 650 (1987) ................................................................................................. 14

*Pratt v. Higgins*,
  2023 WL 4564551 (N.D. Cal. July 17, 2023) ....................................................................... 15

*Rodriguez v. Google LLC*,
  2022 WL 214552 (N.D. Cal. Jan. 25, 2022) ......................................................................... 13

*Roe v. Amgen Inc.*,
  2024 WL 2873482 (C.D. Cal. June 5, 2024) .................................................................... 13, 15

*Russo v. Microsoft Corp.*,
  2021 WL 2688850 (N.D. Cal. June 30, 2021) ......................................................................... 7

*S.D. v. Hytto Ltd.*,
  2019 WL 8333519 (N.D. Cal. May 15, 2019) ....................................................................... 12

*Shah v. Fandom, Inc.*,
  2024 WL 4539577 (N.D. Cal. Oct. 21, 2024) ....................................................................... 14

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

iii

AMPLITUDE'S MOT. TO DISMISS
CLASS ACTION COMPLAINT
CASE NO. 3:24-cv-04913-RFL

*Silver v. Stripe Inc.*,
  2021 WL 3191752 (N.D. Cal. July 28, 2021).................................................................... 6

*Spreewell v Golden State Warriors*,
  266 F.3d 979 (9th Cir. 2011) ......................................................................................... 9

*Steckman v. Hart Brewing Inc.*,
  143 F.3d 1293 (9th Cir. 1998) ....................................................................................... 9

*Summers v. Earth Is. Inst.*,
  555 U.S. 488 (2009)........................................................................................................ 8

*Swarts v. Home Depot*,
  689 F. Supp. 3d 732 (N.D. Cal. 2023) .................................................................... 11, 13

*TransUnion LLC v. Ramirez*,
  590 U.S. 413 (2021).............................................................................................. passim

*United States v. Olson*,
  856 F.3d 1216 (9th Cir. 2017) ..................................................................................... 15

*Valenzuela v. Keurig Green Mountain, Inc.*,
  2023 WL 6609351 (N.D. Cal. Oct. 10, 2023)............................................................... 7

*Valenzuela v. Keurig Green Mountain, Inc.*,
  674 F. Supp. 3d 751 (N.D. Cal. 2023) ......................................................................... 10

*Williams v. What If Holdings, LLC*,
  2022 WL 17869275 (N.D. Cal. Dec. 22, 2022)...................................................... 10, 11

*Yale v. Clicktale, Inc.*,
  2021 WL 1428400 (N.D. Cal. Apr. 15, 2021) .............................................................. 11

*Yoon v. Lululemon USA, Inc.*,
  549 F. Supp. 3d 1073 (C.D. Cal. 2021) ....................................................................... 12

**STATUTES**

18 U.S.C. § 2510............................................................................................................ 1, 13

18 U.S.C. § 2511............................................................................................................ 9, 13

Cal. Civ. Code § 1798.140.................................................................................................. 11

Cal. Penal Code § 502..................................................................................... 2, 9, 14, 15

Cal. Penal Code § 631..................................................................................... 1, 6, 9, 10

Cal. Penal Code § 638.50.................................................................................................... 14

Cal. Penal Code § 638.51.......................................................................................... 2, 9, 14

1

**RULES**

2   Fed. R. Civ. P. 12 ........................................................................................................... passim

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### ISSUES TO BE DECIDED

1.      Whether all of Plaintiff's claims should be dismissed under Rule 12(b)(1) because Plaintiff does not (and cannot) allege that he suffered any concrete, particularized harm and therefore lacks Article III standing, including because he consented to the conduct about which he now complains;

2.      Whether all of Plaintiff's claims should be dismissed under Rule 12(b)(6) because Plaintiff consented to the collection of his personal information and sharing of that information with service providers;

3.      Whether Plaintiff's wiretapping claims under California Penal Code § 631 and the Federal Wiretap Act should be dismissed pursuant to Rule 12(b)(6) because (a) Plaintiff does not allege that Amplitude engaged in any "willful or intentional conduct," as required, (b) Plaintiff does not allege that Amplitude made an unauthorized connection with his device or intercepted the contents of his communications in transit, as required by each statute, and (c) Plaintiff concedes that DoorDash consented to the use of Amplitude's software in its app, which defeats his Federal Wiretap Act claim;

4.      Whether Plaintiff's claim under California Penal Code § 638.51 should be dismissed pursuant to Rule 12(b)(6) because Plaintiff alleges no facts justifying the application of that statute to Amplitude's software;

5.      Whether Plaintiff's claim under California Penal Code § 502 should be dismissed pursuant to Rule 12(b)(6) because Plaintiff lacks statutory standing and does not allege Amplitude's knowledge of any unauthorized conduct.

## I.      INTRODUCTION

This cynical lawsuit tries to make a lawful and ordinary arrangement between a business and its analytics service provider look nefarious. But the law, the facts, and common sense show that is wrong. Plaintiff Kyle Atkins—a user of the DoorDash food delivery app—expressly agreed that DoorDash could collect his personal information directly from his device *and* share it with service providers (including analytics services) when he signed up to use the app. He now claims that because he did not provide this consent specifically to Amplitude, Inc. ("Amplitude"), the developer of a specific software development kit ("SDK") that DoorDash embedded in its app, he should be able to bring a raft of wiretapping, hacking and other privacy claims and trigger windfall statutory damages. Make no mistake, Plaintiff alleges nothing more than routine data processing by a service provider. And his radical effort to expand privacy liability and impose it on an entire industry of service providers that simply provide commonly-used software tools (SDKs) to their customers fails for lack of standing and failure to plead elements of each claim.

Plaintiff lacks Article III standing under *TransUnion LLC v. Ramirez*, 590 U.S. 413 (2021). Even if what he alleges actually occurred, none of the conduct could have harmed him—let alone in a concrete, particularized way that is "traditionally recognized" by American courts. *Id.* at 417. Instead, Plaintiff relies solely on a generalized claim of privacy harm—which would never suffice for Article III standing—and also fails to meet the high bar for an individual privacy injury, which requires pleading not only a "reasonable expectation of privacy" in the information but also that its disclosure constitutes a "highly offensive privacy intrusion." *As a factual matter*, Plaintiff cannot establish either requirement because he agreed to DoorDash's collection and subsequent sharing of his information with analytics services like Amplitude. *As a facial matter*, despite Plaintiff's artful pleading, his allegations are deficient: Amplitude's theoretical ability to receive his delivery address or data about what kind of food he ordered is not a privacy injury.

Even if Plaintiff could meet his burden to establish standing, the Complaint still fails under Rule 12(b)(6) because Plaintiff does not state any claim against Amplitude. Plaintiff asserts causes of action pursuant to the (1) Federal Wiretap Act, 18 U.S.C. § 2510, *et seq.*, (2) the California Wiretap Act, Penal Code § 631(a), (3) California Invasion of Privacy Act ("CIPA"), Penal Code

§ 638.51, and (4) California Comprehensive Computer Data Access and Fraud Act ("CDAFA"), Penal Code § 502. None is adequately pled as a matter of law.

No Wiretapping: Plaintiff's California and federal wiretapping claims fail. His allegations reflect that Amplitude was acting as an extension of DoorDash, which means Amplitude could not have "eavesdropped" at all. On top of this, Plaintiff's threadbare complaint fails to allege basic elements of a wiretapping claim, including identifying the "content" of his communication or that any content was "intentionally" or "willfully" intercepted "in transit." The federal wiretapping claim fails for the additional reason that one party's consent is a complete defense, and Plaintiff acknowledges that DoorDash consented to share his data with Amplitude.

No Pen Register Under CIPA: Plaintiff's attempt to apply the pen register provision in CIPA § 638.51—which was enacted to regulate law enforcement surveillance—to SDKs would have sweeping consequences on the software industry. But that result need not happen here: this claim is doomed because it was DoorDash, not Amplitude, that installed the SDK in its app.

No CDAFA Violation: Plaintiff not only fails to allege the sort of economic harm from computer damage necessary to meet CDAFA's narrow statutory standing requirements, he does not plausibly allege Amplitude's knowledge that DoorDash supposedly lacked Plaintiff's consent to share his data—no surprise, given DoorDash's readily accessible, publicly available Privacy Policy reflecting that it obtains the consent of its users to share data with analytics services.

## II.   BACKGROUND

### A.   Amplitude Helps App Developers Such As DoorDash Analyze Their Data

Amplitude is a data analytics service provider that offers tools to help businesses understand how people use their products. *See* Compl. ¶ 3. One of those tools is a publicly available SDK, prebuilt software that Amplitude's developer customers configure for "their applications to save time and execute specific tasks." *Id.* ¶¶ 14, 20. By using Amplitude's SDK and analytics platform, developers can analyze their own data and learn how users engage with their apps and what product features are successful. Amplitude's SDK is used by thousands of app developers in a broad range of apps—including DoorDash, a popular food delivery app. *Id.* ¶¶ 2, 14, 15. Amplitude's customers install the SDK and configure it for their specific use, including

determining what data are processed. *See* Decl. of Jeffrey Wang ("Wang Decl.") ¶ 5.[1] Amplitude does not sell customer data or provide advertising services; it simply provides a platform for businesses to analyze their own data. *Id.* ¶ 7.

**B.      DoorDash Discloses in Its Privacy Policy That It Shares Personal Information With Service Providers Like Amplitude**

Users must agree to DoorDash's Privacy Policy when they sign up for the app. Cramer Decl. ¶¶ 7-10. DoorDash's Privacy Policy expressly discloses that DoorDash collects certain information from users (including through "software development kits"), that DoorDash may share that information with "service providers" (including "analytics services"), and that such service providers "may access, store and process your personal information." *Id.*, Ex. A at §§ III, V.[2]

**C.      All DoorDash Users Must Consent to its Privacy Policy—including Plaintiff**

Plaintiff Kyle Atkins alleges he is a user of the DoorDash app. Compl. ¶ 32. He alleges that DoorDash embedded Amplitude's SDK into its app and sent his data to Amplitude when he "downloaded and used" the app. *Id.* ¶¶ 32-33. He alleges that DoorDash's use of the SDK in its app "allow[ed]" Amplitude to "collect his timestamped geolocation information, device IDs, device fingerprint data, information about which app(s) he uses on his mobile device, search terms he input into the DoorDash app, the products he placed in his shopping cart, and the restaurants and products he viewed," as well as his name and email address. *Id.* ¶ 33.[3] He does not allege what, if anything, he searched or purchased via the app, or what information he provided to the app.

Though Plaintiff alleges he was not informed that DoorDash's app used Amplitude's SDK and did not consent "to Amplitude's data collection practices," *id.* ¶¶ 5, 48, that is contradicted by documents incorporated into the Complaint and subject to judicial notice: he received detailed

---

[1] Amplitude submits the Declarations of Brian Cramer ("Cramer Decl.") and Jeffrey Wang ("Wang Decl.") in support of its factual attack on standing under Rule 12(b)(1), and the Declaration of Michael H. Rubin ("Rubin Decl.") in support of its arguments under Rule 12(b)(6).

[2] The DoorDash Privacy Policy is accessible in the DoorDash app, Cramer Decl. ¶¶ 3, 9, and the current Privacy Policy is available at https://help.doordash.com/legal/document?type=cx-privacy-policy&region=US&locale=en-US.

[3] While not relied upon for any of its dismissal arguments at this stage, Amplitude notes that Plaintiff mischaracterizes Amplitude's SDK and how DoorDash uses it in the DoorDash app.

1  disclosures from DoorDash about its data collection and sharing policies, and he was required to

2  consent to those practices to use the app. *See* Cramer Decl. ¶¶ 7-10; Rubin Decl., Exs. 1-2.

3  **III.    ARGUMENT**

4      **A.    Plaintiff Lacks Article III Standing**

5      Plaintiff lacks standing. The factual record establishes that he consented to the conduct that

6  he complains about. And the Complaint does not allege any concrete, particularized harm.

7              1.    Legal Standard

8      To establish Article III standing, a plaintiff "must demonstrate, among other things, that

9  they suffered a concrete harm," meaning a harm with a "'close relationship' to a harm traditionally

10  recognized as providing a basis for a lawsuit in American courts." *TransUnion*, 594 U.S. at 440

11  (citation omitted). For a privacy harm, a plaintiff must plead that their information was subject to

12  a "reasonable expectation of privacy" and that defendant's access to it constituted a "highly

13  offensive intrusion." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir.

14  2020). That injury must be "particularized" (*i.e.*, plaintiff must personally have experienced it),

15  and plaintiff bears the burden of establishing each element of Article III standing. *Birdsong v.*

16  *Apple, Inc.*, 590 F.3d 955, 960 (9th Cir. 2009) (citation omitted).

17      Challenges to a plaintiff's standing can be either "factual" or "facial." *Graham v. Noom,*

18  *Inc.*, 533 F. Supp. 3d 823, 829 (N.D. Cal. 2021). A "factual" attack "contests the truth of the

19  plaintiff's factual allegations" by "introducing evidence outside the pleadings," whereas a "facial"

20  attack "asserts that" the allegations are "insufficient on their face to invoke federal jurisdiction."

21  *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (citation omitted). In deciding a factual

22  attack, "courts may consider evidence like declarations submitted by the parties, and the party

23  opposing the motion to dismiss has the burden of establishing [standing] by a preponderance of

24  the evidence." *O'Handley v. Padilla*, 579 F. Supp. 3d 1163, 1178 (N.D. Cal. 2022).

25              2.    Plaintiff Consented To DoorDash's Collection And Sharing Of His
                      Information With "Analytics Services" Like Amplitude
26

27      Plaintiff cannot meet his burden to establish standing based on a privacy harm because he

28  consented to the collection of his information by DoorDash and to DoorDash's sharing of that

information with service providers, including "analytics services" like Amplitude. The evidence establishes that (1) DoorDash's disclosures described its data collection and sharing practices, and (2) users like Plaintiff must affirmatively consent to those practices in order to use the app.

*First*, Plaintiff agreed that DoorDash could collect his personal information, including his "Account and Profile Information," "Activity and Transactions," "Geolocation Information,"[4] and "Device Information." Cramer Decl., Ex. A at § II. These categories cover every type of information he identifies in his Complaint. *Compare* Compl. ¶ 33. Plaintiff further agreed that this information could be "collected automatically from [his] device." Cramer Decl., Ex. A at § III. Thus, Plaintiff had notice of and agreed that the data at issue could be collected by DoorDash.

*Second*, Plaintiff agreed that DoorDash could provide his personal information to its "service providers and vendors," including "analytics services that help us understand usage of our Services." *Id.* at § V. Critically, Plaintiff also agreed that DoorDash's service providers "may access, store and process" his personal information. *Id.* Plaintiff's own allegations confirm that Amplitude—an analytics services company—was merely supporting DoorDash's operation of its app. *See* Compl. ¶ 33. Plaintiff thus did not have a reasonable expectation of privacy in information he voluntarily provided—which was identified in the Privacy Policy as data that may be shared with "service providers"—would not be shared with Amplitude for the "specific purpose of" providing analytics services. *Hammerling v. Google, LLC*, 2024 WL 937247, at *3 (9th Cir. Mar. 5, 2024) (no reasonable expectation of privacy where collection practices were "expressly disclosed"). Nor can Plaintiff maintain that any intrusion was "highly offensive," as courts have held "that data collection and disclosure to third parties that is 'routine commercial behavior' is not a 'highly offensive' intrusion of privacy." *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1090 (N.D. Cal. 2022) (collecting cases). This case involves nothing more than routine commercial behavior: Amplitude simply provides a platform for businesses like DoorDash to analyze their own data—the customer installs the SDK and decides what data are processed, and Amplitude does not sell the data or use it to serve ads (or for its own purposes). *See* Wang Decl. ¶¶ 5-7.

---

[4] The Privacy Policy states that geolocation data will only be collected if the user "consent[s] by enabl[ing] location services." Cramer Decl., Ex. A at § II. Plaintiff alleges he did. Compl. ¶ 33.

1    Plaintiff's assertion that he did not provide his consent to *Amplitude* (as opposed to

2    DoorDash, on behalf of itself and its "service providers") is irrelevant. Plaintiff consented to the

3    *act* of DoorDash sharing his "Personal Information," including with "analytics services that help

4    [DoorDash] understand usage of [its] Services." Cramer Decl., Ex. A at § V. As a result, Plaintiff

5    cannot establish that he had a reasonable expectation of privacy in the information at issue, or that

6    such conduct was highly offensive. *Silver v. Stripe Inc.*, 2021 WL 3191752, at *4 (N.D. Cal. July

7    28, 2021) is on point. There, plaintiffs asserted wiretapping claims against a third-party payment

8    service that Instacart installed on its website. The court dismissed the claims based on the

9    plaintiffs' consent to Instacart's privacy policy, which disclosed that unnamed "partners" of

10   Instacart may use "various technologies" to collect information like identifiers, demographic and

11   commercial information, geolocation data, and inferences. *Id*.[5]

12            3.      Plaintiff Does Not Allege A Concrete, Particularized Harm Traceable To
                     Amplitude On The Face Of The Complaint
13

14   Even setting aside the DoorDash evidence, Plaintiff still would lack standing because he

15   has not plausibly alleged that he personally suffered a concrete injury as a result of Amplitude.

16   Plaintiff suggests that "consumers" suffer some undefined "privacy harm" because

17   Amplitude allegedly receives their "sensitive information" from DoorDash, Compl. ¶¶ 26-28, but

18   he does not link that to any "traditionally recognized" harm. *TransUnion*, 594 U.S. at 432. Though

19   "disclosure of private information, and intrusion upon seclusion" can provide the historical

20   analogue under *TransUnion*, *id.* at 425, Plaintiff fails to plead facts supporting such an injury: he

21   does not identify any category of information that he personally shared in which he had a

22   "reasonable expectation of privacy," much less that DoorDash's sharing that information with

23   Amplitude was "highly offensive." *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286 (2009). The

24   Complaint simply lists a handful of data fields that the SDK is *capable* of receiving based on how

25   a person uses DoorDash—without any facts about Plaintiff's actual use of the app, what specific

26   information he provided to DoorDash, or why that information is sensitive.[6] For example, Plaintiff

27   _____
     [5] Although the court's § 631 dismissal was pursuant to Rule 12(b)(6), its reasoning applies here.

28   [6] Plaintiff's speculation that a hypothetical consumer's geolocation information for their food

does not even allege that he used the app's search function, added items to his cart, or placed an order. *See Cody v. E. Gluck Corp.*, 2024 WL 4314187, at *2 (N.D. Cal. Sept. 26, 2024) (no allegation that plaintiff "actually used the chat feature"); *Valenzuela v. Keurig Green Mountain, Inc.*, 2023 WL 6609351, at *2 (N.D. Cal. Oct. 10, 2023) (plaintiff did not allege "contents" of chats); *Russo v. Microsoft Corp.*, 2021 WL 2688850, at *3 (N.D. Cal. June 30, 2021) (similar).

Even if Plaintiff had shared all of that data with DoorDash, he still could not plausibly allege that its disclosure was "highly intrusive." The notion that adding sushi to one's shopping cart or searching for "tacos" resembles a harm "traditionally recognized" by American courts is simply not plausible. *TransUnion*, 594 U.S. at 425. And courts have recognized that data about a user's device, such as "device IDs", so-called "device fingerprint data" (*i.e.*, "device make and model, screen resolution, and operating system version"), and the like, *see* Compl. ¶¶ 16, 33, do not give rise to a cognizable privacy injury. *See, e.g., Ji v. Naver Corp.*, 2022 WL 4624898, at *7 (N.D. Cal. Sept. 30, 2022) (device ID, IP address, operating system data); *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1049-50 (N.D. Cal. 2022) (email address, phone number, username).

The circumstances here make clear that DoorDash sharing data with Amplitude could not be so "'sufficiently serious' and unwarranted as to constitute an 'egregious breach of the social norms'"—as Plaintiff must plead to establish a "highly offensive" intrusion. *Hernandez*, 47 Cal. 4th at 295. This case is about a "food delivery app" analyzing its own app-usage data with tools developed by an analytics company. Compl. ¶ 20. Plaintiff alleges nothing more than routine data processing by a service provider. *See Hammerling v. Google LLC*, 2022 WL 17365255, at *9 (N.D. Cal. Dec. 1, 2022), *aff'd*, 2024 WL 937247 (9th Cir. Mar. 5, 2024) (searches for meal subscriptions, coconut oil, and use of photo editor were "data collection of 'routine commercial behavior,'" not highly offensive). And the very data collection and sharing practices that Plaintiff complains about were publicly disclosed in DoorDash's Privacy Policy. *See* Cramer Decl., Ex. A at § V; Rubin Decl., Exs. 1-2. Plaintiff has *at most* alleged a "bare procedural violation[], divorced from any concrete harm," which is insufficient. *TransUnion*, 594 U.S. at 440 (citation omitted).

---

deliveries *could* reveal their "religious affiliation, sexual orientation, [or] medical condition" is too far-fetched to countenance. Compl. ¶ 26. In any event, he does not allege that his data *actually* reveals such information. *See Birdsong*, 590 F.3d at 960 (injury must be "particularized").

1    Nor can Plaintiff argue that an alleged statutory violation alone is a concrete injury. "[A]n

2    injury in law is not an injury in fact." *Id.* at 427 (plaintiff does not "automatically satisf[y] the

3    injury-in-fact requirement whenever a statute grants [him] a statutory right"). Rather, Article III

4    requires a concrete injury "traditionally recognized" by American courts, *id.* at 440, which here

5    requires a "reasonable expectation of privacy" and a "highly offensive" intrusion.[7] *Hernandez*, 47

6    Cal. 4th at 286. Plaintiff has alleged nothing of the sort.

#### 4.    Plaintiff Lacks Standing To Pursue Injunctive Relief

8    Plaintiff also lacks standing to seek injunctive relief (Compl. ¶¶ 55, 62, 71), which requires

9    a threat of "actual and imminent, not conjectural or hypothetical" injury. *Summers v. Earth Is.*

10   *Inst.*, 555 U.S. 488, 493 (2009). The "threatened injury must be certainly impending." *Clapper v.*

11   *Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quotation and alteration omitted). Plaintiff does not

12   allege any future harm whatsoever. Nor could he, since the data collection and sharing practices

13   he complains about are publicly disclosed in DoorDash's Privacy Policy. *See* Cramer Decl. ¶¶ 7-

14   10; Rubin Decl., Exs. 1-2. And he is free to uninstall the DoorDash app.

### B.    Plaintiff Has Not Stated Any Claim Against Amplitude

#### 1.    Legal Standard

17   "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

18   accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

19   U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff

20   must provide "more than labels and conclusions," *Twombly*, 550 U.S. at 555, and the Court need

---

[7] To the extent pre-*TransUnion* case law suggested that a violation of CIPA alone could constitute a cognizable harm for standing purposes, that is "clearly irreconcilable," *Avilez v. Garland*, 69 F.4th 525, 533 (9th Cir. 2023), with the Supreme Court's later decision in *TransUnion*. *Compare TransUnion*, 594 U.S. at 426 ("[E]ven though 'Congress may 'elevate' harms that 'exist' in the real world before Congress recognized them to actionable legal status, it may not simply enact an injury into existence . . . .'"), *with In re Facebook Internet Tracking*, 956 F.3d at 598-99 (finding standing based on violations of statutory provisions codifying right to privacy). *See Lightoller v. Jetblue Airways Corp.*, 2023 WL 3963823, at *3 (S.D. Cal. June 12, 2023) (concluding that *In re Facebook Internet Tracking*'s holding is "untenable" in light of *TransUnion*); *Fleming v. ProVest California LLC*, 2021 WL 6063565, at *2 (N.D. Cal. Dec. 22, 2021) ("*TransUnion* likely alters the Ninth Circuit standing framework"); *Byars v. Sterling Jewelers, Inc.*, 2023 WL 2996686, at *3 (C.D. Cal. Apr. 5, 2023) (similar, holding that "bare violation of CIPA" is insufficient); *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 865 (S.D. Cal. 2023) (similar).

not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences," *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Spreewell v Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2011)).

### 2.   Plaintiff Cannot State Any Claim Because He Consented To The Collection And Sharing Of His Information With "Analytics Services"

All of Plaintiff's claims fail for the threshold reason that he consented to DoorDash's collection of his personal information and the sharing of that information with "service providers," including "analytics services" like Amplitude. Each statute at issue here precludes liability where a plaintiff consented. *See* Cal. Penal Code § 631(a) ("without the consent of all parties"), § 638.51 (no violation "[i]f the consent of the user … has been obtained"), § 502(c) ("without permission"), 18 U.S.C. § 2511(2)(d) (no violation if "prior consent"). Though Plaintiff asserts that he did not separately consent to *Amplitude*, *see* Compl. ¶¶ 34-35, he does *not* claim that he did not consent to DoorDash. Nor could he: Plaintiff alleges that he "downloaded and used" the DoorDash app, *id.* ¶ 32, which discloses and requires agreement to DoorDash's public Privacy Policy. *See* Rubin Decl., Exs. 1-2.[8] And the DoorDash Privacy Policy discloses that information could be collected and shared with "analytics services," Cramer Decl., Ex. A at § V, defeating all of Plaintiff's claims.

### 3.   Plaintiff Cannot State A Claim For Wiretapping

Plaintiff cannot state a wiretapping claim under CIPA or federal law because he does not plausibly allege that Amplitude intentionally or willfully made an unauthorized connection with his device or intercepted the contents of his communications in transit.

#### a.   *Plaintiff Does Not Allege That Amplitude Wiretapped His Phone Or Eavesdropped On His Communications Under CIPA*

Plaintiff's CIPA claim is entirely conclusory: he simply quotes § 631(a) and declares that Amplitude's SDK "made an unauthorized connection" with his device and "intercepted" his "input

---

[8] DoorDash's Privacy Policy, app welcome screen, and app sign up page are incorporated by reference and judicially noticeable (see Dkt. 22) and thus the Court may consider them in ruling on Amplitude's facial standing and Rule 12(b)(6) challenges. *See Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061, 1064 n.7 (9th Cir. 2008). The Court need not "accept as true conclusory allegations which are contradicted by documents referred to in the complaint." *Steckman v. Hart Brewing Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1998).

events" (Compl. ¶¶ 57, 65) without any facts or explanation. Based on his vague references to an "unauthorized connection" and "intercept[ion],"[9] Plaintiff appears to assert claims under the first two clauses of § 631(a), which respectively prohibit (1) "intentionally" making an "unauthorized connection" with any "telegraph or telephone wire, line, cable, or instrument" (*i.e.*, intentional wiretapping), and (2) "willfully attempting to learn the contents or meaning" of a communication "in transit" (*i.e.*, eavesdropping). Cal. Penal Code § 631(a). Both fail.

*First*, as a threshold matter, Plaintiff fails to sufficiently plead either claim because the Complaint lacks facts indicating that Amplitude engaged in any "willful or intentional conduct," as required to state a claim under § 631(a). *See* Cal. Penal Code § 631; *Doe I v. Google LLC*, 2024 WL 3490744, at *6 (N.D. Cal. Jul. 22, 2024) ("CIPA liability only extends to willful or intentional conduct."). Plaintiff alleges that DoorDash, not Amplitude, embedded the SDK in its app, and there are no factual allegations suggesting that Amplitude expected DoorDash to share data from users without permission. *See Doe I*, 2024 WL 3490744, at *6.

*Second*, as a matter of law, Plaintiff cannot state a claim for making "an unauthorized connection" with his device. That provision in § 631(a) does not cover internet communications, even on a smartphone. *Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 755 (N.D. Cal. 2023). Because Plaintiff does not allege that the SDK operates using telegraph or telephone wires (nor could he), he fails to state a wiretapping claim under the first clause of § 631(a).

*Third*, Plaintiff fails to plead essential elements of a claim for intercepting communications. The Complaint alleges that Amplitude was acting as an authorized extension of DoorDash and thus is exempted under § 631(a), and Plaintiff has not alleged, as he must, the "contents" of the allegedly intercepted communication or that it was intercepted while "in transit."

***No Eavesdropping.*** Section 631 exempts any "'party' to the communication." *In re Facebook Internet Tracking*, 956 F.3d at 607. Courts have applied this exemption to third-party service providers where, as here, the allegations indicate that the provider was merely an extension of a party. *See, e.g.*, *Graham*, 533 F. Supp. 3d at 823 (session-replay vendor was extension of

---

[9] Courts construe references to "interception" as invoking the second clause of § 631(a). *See, e.g.*, *Williams v. What If Holdings, LLC*, 2022 WL 17869275, at *2 (N.D. Cal. Dec. 22, 2022).

website operator); *Johnson v. Blue Nile, Inc.*, 2021 WL 1312771, at *1 (N.D. Cal. Apr. 8, 2021) (same); *Yale v. Clicktale, Inc.*, 2021 WL 1428400, at *1, *3 (N.D. Cal. Apr. 15, 2021) (similar).

Here, Plaintiff's allegations reflect that Amplitude was acting as an authorized extension of DoorDash. Plaintiff alleges that developers like DoorDash "integrate" the SDK into their apps "to save time and execute specific tasks." Compl. ¶¶ 3, 14, 20. Though the Complaint tries to obfuscate Amplitude's role as a service provider by asserting that Amplitude "collects" the data (*e.g.*, *id.* ¶¶ 13, 20), the totality of Plaintiff's allegations—and DoorDash's Privacy Policy—show that Amplitude received the information after DoorDash collected it and that Amplitude performed functions *for* DoorDash. And simply "provid[ing] a tool" that "allows [a business] to record and analyze its own data" does not make a service provider an eavesdropper.[10] *Graham*, 533 F. Supp. 3d at 832 (vendor captured "clients' data" and allowed client to analyze it) (citation omitted); *Williams*, 2022 WL 17869275, at *3 (distinguishing vendors that use client data for separate business purposes).

In an attempt to plead around the party exception, the Complaint includes two vague paragraphs nodding to supposed "integrations" with advertising platforms and the development of "artificial intelligence tools to analyze the data," Compl. ¶¶ 29-30, but these allegations are entirely conclusory and untethered to the DoorDash app and Plaintiff's data. They are also insufficient to transform Amplitude from a service provider to an eavesdropper. Whether a vendor functions as an extension of its business customer hinges on whether the business retains "control and ability to limit" dissemination of the data, *Doe v. Kaiser Found. Health Plan, Inc.*, 2024 WL 1589982, at *18 (N.D. Cal. Apr. 11, 2024), and courts typically look to whether the vendor resells the data or uses it for advertising. *See Swarts v. Home Depot*, 689 F. Supp. 3d 732, 746 (N.D. Cal. 2023) (no allegation that analytics provider could use information "for any other purpose besides relaying it to [customer]"); *Graham*, 533 F. Supp. 3d at 832 (distinguishing software vendors providing "tools" from "independent parties who mined information from other websites and sold it"); *Byars*

---

[10] Under the California Consumer Privacy Act ("CCPA"), a business may share information with a "service provider" for a "valid business purpose," including for "analytic services." Cal. Civ. Code § 1798.140(e)(5)-(6). Notably, the CCPA defines a "third party" as a "person who is *not* … a service provider to the business." *Id.* § 1798.140(ai) (emphasis added).

*v. Hot Topic, Inc.*, 656 F. Supp. 3d 1051, 1068 (C.D. Cal. 2023) (vendor was extension of party where there was no allegation that vendor aggregated data for resale); *see also Frasco v. Flo Health, Inc.*, 2022 WL 21794391, at *1 (N.D. Cal. June 6, 2022) (no factual allegation about service provider "us[ing] the data provided to it through its SDK for '[its] own purposes'"). Here, Plaintiff alleges that Amplitude "created integrations" for its customers to share their own data "with marketing and advertising platforms," Compl. ¶ 29—***not*** that Amplitude itself sells data or uses it in an advertising business that it runs. (Amplitude does not sell data and has no ad business.)

***No "Content" at Issue.*** Plaintiff's claim under this subsection additionally fails because he has not alleged the "contents or meaning" of any intercepted communication. *Jones v. Peloton Interactive, Inc.*, 2024 WL 1123237, at *4 (S.D. Cal. Mar. 12, 2024) (conclusory allegation that vendor captured transcript of online chat failed to plead "content"). Under CIPA, the "contents" of a communication are limited to "the intended message conveyed by the communication." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014). Indeed, the Complaint lacks any factual allegations about the "intended message" of *any* communication whatsoever.

Plaintiff's theory is that the SDK intercepted his "specific input events," *i.e.*, page views, button presses, or "affirmative actions (such as installing a mobile app on his device)." Compl. ¶ 65. But that information does not reveal a message that Plaintiff intended to convey to DoorDash, let alone "comprise the substance, purport, or meaning of that communication." *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1062 (N.D. Cal. 2012). Courts have dismissed eavesdropping claims based on similar information. *See Jones*, 2024 WL 1123237, at *4 ("IP address, device used to connect to website, web browser used, date and time of communication, [and] words used to prompt the chat" are not content); *Hammerling*, 615 F. Supp. 3d at 1093 (similar); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021) (similar).[11]

Plaintiff's generic reference to the collection of "search terms" cannot save him. Because Plaintiff does not even identify a search term he used (if any), he necessarily fails to plead the

---

[11] Even if Plaintiff could assert an "unauthorized connection" claim (he cannot), the device setting information he alleges for that claim (Compl. ¶ 65) is automatically generated "record information," not "content." *S.D. v. Hytto Ltd.*, 2019 WL 8333519, at *6 (N.D. Cal. May 15, 2019).

existence of any "content." *Jones*, 2024 WL 1123237, at *4; *Heiting v. Taro Pharms. USA, Inc.*, 709 F. Supp. 3d 1007, 1018 (C.D. Cal. 2023). In any event, determining whether search terms qualify as "content" requires a "case-specific analysis" that turns on "how much information would be revealed" by disclosure. *Hammerling*, 615 F. Supp. 3d at 1092. Here, Plaintiff cannot plausibly allege that his searches for food items were protected content.

   ***No Allegations About Communications "In Transit."*** Plaintiff also fails to allege, as he must, that his communications were "stop[ped], seize[d], or interrupt[ed] in progress or course before arrival." *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002); *Lau v. Gen Digit. Inc.*, 2024 WL 1880161, at *1 (N.D. Cal. Apr. 3, 2024) (wiretapping concerns "the unauthorized *interception* of communications, not any subsequent storage and/or use"). Plaintiff cannot meet his pleading burden by simply using the word "interception," which is all he did. Compl. ¶ 25. He must allege facts "regarding the method, or nature, of [the] interception." *Heiting v. Taro Pharms. USA, Inc.*, 2024 WL 1626114, at *9 (C.D. Cal. Apr. 2, 2024). Similarly, his claim that the SDK collects information "intended for the mobile app" "in real-time" (Compl. ¶ 19) fails to allege that Amplitude accessed *his* data *before* it reached the app. Courts have rejected vague allegations like these. *See Lau*, 2024 WL 1880161, at *1 (allegation that defendant "catalogued and stored" data); *Rodriguez v. Google LLC*, 2022 WL 214552, at *1-2 (N.D. Cal. Jan. 25, 2022) (references to "intercepted" and "simultaneous"); *Swarts*, 689 F. Supp. 3d at 746 (similar).

     b. *Plaintiff Alleges That DoorDash Consented To The Use Of Amplitude's SDK, Barring His Federal Wiretapping Claim*

   Plaintiff's federal wiretapping claim fails for all the same reasons as his California claim—and more. *See supra* Section III.B.3.a; *M.G. v. Therapy Match, Inc.*, 2024 WL 4219992, at *3 (N.D. Cal. Sept. 16, 2024) (analysis for CIPA the same as federal Wiretap Act). Unlike CIPA, one party's consent is a complete defense under the Federal Wiretap Act. *See* 18 U.S.C. § 2511(2)(d). DoorDash consented to the use of Amplitude's SDK by installing it in its app. Plaintiff's own allegations indicate that DoorDash *chose* to "embed[]" the SDK in its app (Compl. ¶ 33), which is fatal. *See, e.g.*, *Doe v. Google LLC*, 2023 WL 6882766, at *2 (N.D. Cal. Oct. 18, 2023); *Rodriguez*, 2021 WL 2026726, at *6; *Roe v. Amgen Inc.*, 2024 WL 2873482, at *6 (C.D. Cal. June 5, 2024).

4.    Plaintiff's Section 638.51 Claim Should Be Dismissed Because
Amplitude's SDK Is Not A Pen Register

Plaintiff seeks to upend the software industry's reliance on SDKs by asserting that Amplitude is liable because its SDK—which Doordash integrated in its own app—is a "pen register" used to track his information under § 638.51. Compl. ¶ 53. This claim fails.

*First*, Plaintiff does not allege that Amplitude "install[ed] or use[d]" the SDK, as required. Cal. Penal Code § 638.51(a). To the contrary, he alleges that *DoorDash* "embedded" the SDK in its own app and that the SDK was used by that app to collect data. Compl. ¶¶ 20, 33.

*Second*, Plaintiff does not allege that the SDK is a pen register, which has a very specific meaning:  it is "a device or process that records or decodes dialing, routing, addressing, or signaling information . . . ." § 638.50(b). Rather than plead facts, the Complaint simply parrots the statutory language, claiming the SDK is a "pen register" because it is a "device or process that records addressing or signaling information." Compl. ¶ 53. That is circular and conclusory. *See Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 955 n.9 (9th Cir. 2011). In any event, Plaintiff alleges that developers like DoorDash integrate SDKs into their apps to "execute specific tasks" and that the SDK *collects* information from a device, Compl. ¶ 14—which is nothing like a pen register.[12]

5.    Plaintiff's CDAFA Claim Fails On Multiple Grounds

Plaintiff's CDAFA claim fares no better: it is entirely conclusory, Plaintiff lacks statutory standing, and he does not allege that Amplitude knew he supposedly did not consent.

***Parroting the Statute Is Not Enough.*** Plaintiff invokes three subsections of § 502(c), *see* Compl. ¶ 59, but merely parrots the statutory language and alleges no facts. That alone warrants dismissal. *See Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1090 (N.D Cal. 2018).

***No Cognizable Loss.*** Plaintiff also lacks statutory standing, which requires "damage or

---

[12] Amplitude disputes that § 638.51 applies to the software alleged here, or that a pen register encompasses technology that captures the originating information of an outbound communication, *see People v. Larkin*, 194 Cal. App. 3d 650, 653 n.2 (1987), but reserves these arguments in light of the Court's decision in *Shah v. Fandom, Inc.*, 2024 WL 4539577 (N.D. Cal. Oct. 21, 2024).

AMPLITUDE'S MOT. TO DISMISS
CLASS ACTION COMPLAINT
CASE NO. 3:24-CV-04913-RFL

loss by reason of a violation" of the statute. Cal. Penal Code § 502(e).[13] Courts narrowly construe "loss" under the CDAFA "to encompass costs related to fixing a computer, lost revenue, or other consequential damages incurred due to an interruption of computer services." *Pratt v. Higgins*, 2023 WL 4564551, at *9 (N.D. Cal. July 17, 2023) (access to medical information not loss); *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1081 (N.D. Cal. Sep. 7, 2023) (privacy violation not loss); *Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461, 488 (N.D. Cal. 2021) (similar).

Plaintiff does not attempt to identify any damage to his device from the SDK, much less costs to fix it. *See* Compl. ¶¶ 56-62. That should end the inquiry. *See Fish v. Tesla, Inc.*, 2022 WL 1552137, at *8 (C.D. Cal. May 12, 2022). Instead, Plaintiff alleges that Amplitude "was unjustly enriched with the data it obtained." Compl. ¶ 61. This theory appears to be based on *In re Facebook Internet Tracking*, an outlier case where the CDAFA loss allegations were based on plaintiffs' claim to profits from the unauthorized sale of their data for advertising. 956 F.3d at 600. But there, the defendant was alleged to have earned revenue directly from the sale of the plaintiffs' data, bringing the allegations within the ambit of "lost revenue." Here, there is no allegation (nor could Plaintiff make one in good faith) that Amplitude sold Plaintiff's data or used it for advertising. *See Amgen Inc.*, 2024 WL 2873482, at *7. Nor does he allege a market for his DoorDash data.

***No Allegation Regarding Amplitude's Knowledge.*** Plaintiff's claim also fails because he does not allege that Amplitude "knowingly" received his data "without permission."[14] Cal. Penal Code §§ 502(c)(1)-(2), (c)(7). Plaintiff does not even suggest that Amplitude knew DoorDash lacked permission to share his data—not surprising, given DoorDash's public Privacy Policy.

## IV.   CONCLUSION

For the foregoing reasons, Amplitude respectfully requests dismissal of the Complaint.

---

[13] Courts typically apply the definitions of "damage" and "loss" from the federal Computer Fraud and Abuse Act ("CFAA") to the CDAFA. *See NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 938, 951 (N.D. Cal. 2014) (no damage or loss under CDAFA "for the same reason" as CFAA).

[14] CDAFA is a criminal statute, and "[a]bsent indication of contrary purpose in the language or legislative history [], [courts] ordinarily read a phrase in a criminal statute that introduces the elements of a crime with the word 'knowingly' as applying that word to each element." *United States v. Olson*, 856 F.3d 1216, 1220 (9th Cir. 2017). Thus, to state a CDAFA claim, Plaintiff must not only allege that Amplitude lacked permission, but that it *knew* it lacked permission. *Id.*

Dated: October 25, 2024                    Respectfully submitted,

LATHAM & WATKINS LLP

By: */s/ Michael H. Rubin*
Michael H. Rubin (Bar No. 214636)
 *michael.rubin@lw.com*
Melanie M. Blunschi (Bar No. 234264)
 *melanie.blunschi@lw.com*
Francis J. Acott (Bar No. 331813)
 *francis.acott@lw.com*
505 Montgomery St., Suite 2000
San Francisco, CA 94111
Telephone: +1.415.391.0600

*Attorneys for Defendant Amplitude, Inc.*