LATHAM & WATKINS LLP
Michael H. Rubin (Bar No. 214636)
 *michael.rubin@lw.com*
Melanie M. Blunschi (Bar No. 234264)
 *melanie.blunschi@lw.com*
Francis J. Acott (Bar No. 331813)
 *francis.acott@lw.com*
505 Montgomery St., Suite 2000
San Francisco, CA 94111
Telephone: +1.415.391.0600

*Attorneys for Defendant Amplitude, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| KYLE ATKINS and MICHAEL LUO, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AMPLITUDE, INC., a Delaware corporation,<br><br>Defendant. | Case No. 3:24-cv-04913-RFL<br><br>**DEFENDANT AMPLITUDE, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS THE FIRST AMENDED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing: May 13, 2025<br>Time:  10:00 a.m.<br>Location: Courtroom 15—18th Floor<br>Judge: Hon. Rita F. Lin |

LATHAM&WATKINS<sub>LLP</sub>
ATTORNEYS AT LAW

## NOTICE OF MOTION AND MOTION TO DISMISS

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on May 13, 2025 at 10 a.m., or as soon thereafter as the parties may be heard, before the Honorable Rita F. Lin, United States District Court, Courtroom 15, 18th Floor, 450 Golden Gate Ave., San Francisco, California, Defendant Amplitude, Inc. ("Amplitude") will and hereby does move for an order dismissing Plaintiffs' First Amended Class Action Complaint (Dkt. 23).

Amplitude respectfully submits this Motion pursuant to (1) Federal Rule of Civil Procedure ("Rule") 12(b)(1) on the ground that Plaintiffs lack Article III standing because they did not suffer any concrete, particularized harm traceable to Amplitude; and (2) Rule 12(b)(6) on the ground that Plaintiffs do not allege facts sufficient to state a violation of (a) the Federal Wiretap Act, 18 U.S.C. § 2510, *et seq.*, (b) the California Invasion of Privacy Act ("CIPA"), Penal Code § 638.51, (c) the California Comprehensive Computer Data Access and Fraud Act ("CDAFA"), Penal Code § 502, or (d) the California Wiretap Act, Penal Code § 631(a).

This Motion is based on the accompanying Memorandum of Points and Authorities, the Declaration of Michael H. Rubin, the Declaration of Brian Cramer, the Declaration of Jeffrey Wang, the pleadings, records, and papers on file, and such argument and evidence as may be presented in connection with the hearing on this Motion.

## STATEMENT OF RELIEF SOUGHT

Amplitude seeks an order pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) dismissing Plaintiffs' First Amended Class Action Complaint for the reasons set forth herein.

Dated: January 7, 2025

Respectfully submitted,

LATHAM & WATKINS LLP

By  /s/ *Michael H. Rubin*
    Michael H. Rubin (Bar No. 214636)
     *michael.rubin@lw.com*
    Melanie M. Blunschi (Bar No. 234264)
     *melanie.blunschi@lw.com*
    Francis J. Acott (Bar No. 331813)

*francis.acott@lw.com*
505 Montgomery St., Suite 2000
San Francisco, CA 94111
Telephone: +1.415.391.0600
*Attorneys for Defendant Amplitude, Inc.*

## **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................................................ 1

II.   BACKGROUND ................................................................................................................ 2

    A.    Amplitude Helps App Developers Such As DoorDash Analyze
         Their Data ................................................................................................................ 2

    B.    DoorDash Discloses In Its Privacy Policy That It Shares Personal
         Information With Service Providers Like Amplitude ............................................ 3

    C.    All DoorDash Users Must Consent to its Privacy Policy—
         Including Plaintiffs ................................................................................................ 3

    D.    Procedural History ................................................................................................ 4

III.  ARGUMENT ..................................................................................................................... 5

    A.    Plaintiffs Lack Article III Standing ...................................................................... 5

         1.    Legal Standard ........................................................................................... 5

         2.    Plaintiffs Consented To DoorDash's Collection And
              Sharing Of Their Information With "Analytics Services"
              Like Amplitude ........................................................................................... 5

         3.    Plaintiffs Do Not Allege A Concrete, Particularized Harm
              Traceable To Amplitude On The Face Of The Complaint ......................... 7

         4.    Plaintiffs Lack Standing To Pursue Injunctive Relief ............................. 10

    B.    Plaintiffs Have Not Stated Any Claim Against Amplitude ................................. 10

         1.    Legal Standard ......................................................................................... 10

         2.    Plaintiffs Cannot State Any Claim Because They
              Consented To The Collection And Sharing Of Their
              Information With "Analytics Services" ................................................... 10

         3.    Plaintiffs Cannot State A Claim For Wiretapping ................................... 11

         4.    Plaintiffs' Section 638.51 Claim Should Be Dismissed
              Because Amplitude's SDK Is Not A Pen Register ................................... 16

         5.    Plaintiffs' CDAFA Claim Fails On Multiple Grounds ........................... 18

IV.   CONCLUSION ................................................................................................................ 20

# TABLE OF AUTHORITIES

## CASES

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).................................................................................................... 10

*Avilez v. Garland*,
69 F.4th 525 (9th Cir. 2023) .......................................................................................... 9

*Balletto v. Am. Honda Motor Co., Inc.*,
2023 WL 7026931 (N.D. Cal. Oct. 24, 2023)............................................................. 13

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).................................................................................................... 10

*Birdsong v. Apple, Inc.*,
590 F.3d 955 (9th Cir. 2009) ..................................................................................... 5, 8

*Bui-Ford v. Tesla, Inc.*,
2024 WL 694485 (N.D. Cal. Feb. 20, 2024) ......................................................... 19, 20

*Byars v. Hot Topic, Inc.*,
656 F. Supp. 3d 1051 (C.D. Cal. 2023) ...................................................................... 14

*Byars v. Sterling Jewelers, Inc.*,
2023 WL 2996686 (C.D. Cal. Apr. 5, 2023) ................................................................ 9

*Chapman v. Pier 1 Imports (U.S.) Inc.*,
631 F.3d 939 (9th Cir. 2011) ...................................................................................... 17

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013)..................................................................................................... 10

*Cody v. E. Gluck Corp.*,
2024 WL 4314187 (N.D. Cal. Sept. 26, 2024) ............................................................. 8

*Cody v. Ring LLC*,
718 F. Supp. 3d 993 (N.D. Cal. 2024) ........................................................................ 16

*Cottle v. Plaid Inc.*,
536 F. Supp. 3d 461 (N.D. Cal. 2021) ........................................................................ 19

*Doe I v. Google LLC*,
2024 WL 3490744 (N.D. Cal. Jul. 22, 2024).......................................................... 12, 19

*Doe v. Google LLC*,
2023 WL 6882766 (N.D. Cal. Oct. 18, 2023)............................................................. 16

*Doe v. Kaiser Found. Health Plan, Inc.*,
  2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) ........................................................................ 13

*Doe v. Meta Platforms, Inc.*,
  690 F. Supp. 3d 1064 (N.D. Cal. Sep. 7, 2023) ...................................................................... 19

*Fleming v. ProVest California LLC*,
  2021 WL 6063565 (N.D. Cal. Dec. 22, 2021) ........................................................................... 9

*Frasco v. Flo Health, Inc.*,
  2022 WL 21794391 (N.D. Cal. June 6, 2022) ......................................................................... 14

*Gonzales v. Uber Techs., Inc.*,
  305 F. Supp. 3d 1078 (N.D Cal. 2018) ................................................................................... 18

*Graham v. Noom, Inc.*,
  533 F. Supp. 3d 823 (N.D. Cal. 2021) ....................................................................... 5, 13, 14

*Hammerling v. Google LLC*,
  2022 WL 17365255 (N.D. Cal. Dec. 1, 2022) ........................................................................... 9

*Hammerling v. Google LLC*,
  615 F. Supp. 3d 1069 (N.D. Cal. 2022) ..................................................................... 6, 14, 15

*Hammerling v. Google, LLC*,
  2024 WL 937247 (9th Cir. Mar. 5, 2024) ................................................................................. 6

*Heiting v. Taro Pharms. USA, Inc.*,
  2024 WL 1626114 (C.D. Cal. Apr. 2, 2024) ........................................................................... 15

*Heiting v. Taro Pharms. USA, Inc.*,
  709 F. Supp. 3d 1007 (C.D. Cal. 2023) .................................................................................. 15

*Hernandez v. Hillsides, Inc.*,
  47 Cal. 4th 272 (2009) ...................................................................................................... 7, 9

*I.C. v. Zynga, Inc.*,
  600 F. Supp. 3d 1034 (N.D. Cal. 2022) .................................................................................... 8

*In re Facebook, Inc. Internet Tracking Litig.*,
  956 F.3d 589 (9th Cir. 2020) ............................................................................... 5, 9, 12, 19

*In re Gilead Scis. Sec. Litig.*,
  536 F.3d 1049 (9th Cir. 2008) ............................................................................................... 10

*In re iPhone Application Litig.*,
  844 F. Supp. 2d 1040 (N.D. Cal. 2012) ................................................................................. 14

*In re Zoom Video Commc'ns Inc. Privacy Litig.*,
  525 F. Supp. 3d 1017 (N.D. Cal. 2021) ................................................................................. 19

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

iii

AMPLITUDE'S MOT. TO DISMISS
FIRST AM. CLASS ACTION COMPL.
CASE NO. 3:24-cv-04913-RFL

*In re Zynga Priv. Litig.*,
    750 F.3d 1098 (9th Cir. 2014) ................................................................................ 14

*Ji v. Naver Corp.*,
    2022 WL 4624898 (N.D. Cal. Sept. 30, 2022) ......................................................... 8

*Johnson v. Blue Nile, Inc.*,
    2021 WL 1312771 (N.D. Cal. Apr. 8, 2021) ........................................................... 13

*Jones v. Peloton Interactive, Inc.*,
    720 F. Supp. 3d 940 (S.D. Cal. 2024) ............................................................. 14, 15

*Konop v. Hawaiian Airlines, Inc.*,
    302 F.3d 868 (9th Cir. 2002) .................................................................................. 15

*Lau v. Gen Digit. Inc.*,
    2024 WL 1880161 (N.D. Cal. Apr. 3, 2024) ...................................................... 15, 16

*Leite v. Crane Co.*,
    749 F.3d 1117 (9th Cir. 2014) .................................................................................. 5

*Lightoller v. Jetblue Airways Corp.*,
    2023 WL 3963823 (S.D. Cal. June 12, 2023) ........................................................... 9

*Local Ventures & Inv., LLC v. Open Found.*,
    2019 WL 7877936 (N.D. Cal. May 13, 2019) ........................................................ 20

*M.G. v. Therapy Match, Inc.*,
    2024 WL 4219992 (N.D. Cal. Sept. 16, 2024) ........................................................ 16

*McCoy v. Alphabet, Inc.*,
    2021 WL 405816 (N.D. Cal. Feb. 2, 2021) ............................................................. 14

*Meta Platforms, Inc. v. BrandTotal Ltd.*,
    605 F. Supp. 3d 1218 (N.D. Cal. 2022) .................................................................. 20

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
    540 F.3d 1049 (9th Cir. 2008) ................................................................................ 11

*Mikulsky v. Noom, Inc.*,
    682 F. Supp. 3d 855 (S.D. Cal. 2023) ...................................................................... 9

*NovelPoster v. Javitch Canfield Grp.*,
    140 F. Supp. 3d 938 (N.D. Cal. 2014) .................................................................... 18

*O'Handley v. Padilla*,
    579 F. Supp. 3d 1163 (N.D. Cal. 2022) .................................................................... 5

*People v. Larkin*,
    194 Cal. App. 3d 650 (1987) .................................................................................. 18

*Pratt v. Higgins*,
2023 WL 4564551 (N.D. Cal. July 17, 2023) ................................................................. 19

*Rodriguez v. Google LLC*,
2021 WL 2026726 (N.D. Cal. May 21, 2021) ................................................................. 16

*Rodriguez v. Google LLC*,
2022 WL 214552 (N.D. Cal. Jan. 25, 2022) ................................................................... 16

*Roe v. Amgen Inc.*,
2024 WL 2873482 (C.D. Cal. June 5, 2024) ............................................................. 16, 19

*Russo v. Microsoft Corp.*,
2021 WL 2688850 (N.D. Cal. June 30, 2021) ................................................................... 8

*S.D. v. Hytto Ltd.*,
2019 WL 8333519 (N.D. Cal. May 15, 2019) ................................................................. 15

*Shah v. Fandom, Inc.*,
2024 WL 4539577 (N.D. Cal. Oct. 21, 2024) ................................................................. 18

*Silver v. Stripe Inc.*,
2021 WL 3191752 (N.D. Cal. July 28, 2021) ................................................................. 7, 11

*Spreewell v Golden State Warriors*,
266 F.3d 979 (9th Cir. 2011) ......................................................................................... 10

*Steckman v. Hart Brewing Inc.*,
143 F.3d 1293 (9th Cir. 1998) ....................................................................................... 11

*Summers v. Earth Island Inst.*,
555 U.S. 488 (2009) ...................................................................................................... 10

*Swarts v. Home Depot*,
689 F. Supp. 3d 732 (N.D. Cal. 2023) ........................................................................ 13, 16

*TransUnion LLC v. Ramirez*,
590 U.S. 413 (2021) ................................................................................................ passim

*United States v. Christensen*,
828 F.3d 763 (9th Cir. 2015) ......................................................................................... 12

*United States v. Olson*,
856 F.3d 1216 (9th Cir. 2017) ....................................................................................... 20

*Valenzuela v. Keurig Green Mountain, Inc.*,
2023 WL 6609351 (N.D. Cal. Oct. 10, 2023) ................................................................... 8

*Valenzuela v. Keurig Green Mountain, Inc.*,
674 F. Supp. 3d 751 (N.D. Cal. 2023) ........................................................................... 12

*Wesch v. Yodlee, Inc.*,
    2021 WL 1399291 (N.D. Cal. Feb. 16, 2021) ........................................................................ 19

*Williams v. What If Holdings, LLC*,
    2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) ............................................................... 11, 13

*Yale v. Clicktale, Inc.*,
    2021 WL 1428400 (N.D. Cal. Apr. 15, 2021) ........................................................................ 13

*Yoon v. Lululemon USA, Inc.*,
    549 F. Supp. 3d 1073 (C.D. Cal. 2021) ................................................................................. 15

**STATUTES**

18 U.S.C. § 2510 .......................................................................................................................... 2, 16

18 U.S.C. § 2511 ........................................................................................................................ 10, 16

Cal. Civ. Code § 1798.140 ................................................................................................................ 13

Cal. Penal Code § 502 ............................................................................................................... passim

Cal. Penal Code § 631 ............................................................................................................... passim

Cal. Penal Code § 637.2 ................................................................................................................... 17

Cal. Penal Code § 638.50 ............................................................................................................ 17, 18

Cal. Penal Code § 638.51 ........................................................................................................... passim

**RULES**

Fed. R. Civ. Proc. 12 ......................................................................................................... 1, 3, 7, 11

**ISSUES TO BE DECIDED**

1.      Whether all of Plaintiffs' claims should be dismissed under Rule 12(b)(1) because Plaintiffs do not (and cannot) allege that they suffered any concrete, particularized harm and therefore lack Article III standing, including because they consented to the conduct about which they now complain;

2.      Whether all of Plaintiffs' claims should be dismissed under Rule 12(b)(6) because Plaintiffs consented to the collection of their personal information and sharing of that information with service providers;

3.      Whether Plaintiffs' wiretapping claims under California Penal Code § 631 and the Federal Wiretap Act should be dismissed pursuant to Rule 12(b)(6) because (a) Plaintiffs do not allege that Amplitude engaged in any "willful or intentional conduct," as required, (b) Plaintiffs do not allege that Amplitude made an unauthorized connection with their devices or intercepted the contents of their communications in transit, as required by § 631, and (c) Plaintiffs concede that DoorDash consented to the use of Amplitude's software in its app, which defeats their Federal Wiretap Act claim;

4.      Whether Plaintiffs' claim under California Penal Code § 638.51 should be dismissed pursuant to Rule 12(b)(6) because Plaintiffs do not allege that Amplitude installed or used a pen register; and

5.      Whether Plaintiffs' claim under California Penal Code § 502 should be dismissed pursuant to Rule 12(b)(6) because Plaintiffs lack statutory standing and do not allege Amplitude's knowledge of any unauthorized conduct.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

vii

AMPLITUDE'S MOT. TO DISMISS
FIRST AM. CLASS ACTION COMPL.
CASE NO. 3:24-cv-04913-RFL

## I.    INTRODUCTION

Rather than respond to Amplitude, Inc.'s ("Amplitude's") prior motion to dismiss, Plaintiff Kyle Atkins chose to amend his complaint and to add a new plaintiff, Michael Luo. But the First Amended Complaint ("FAC") (Dkt. 23) only confirms that this case should be dismissed.

Plaintiffs Atkins and Luo—users of the DoorDash food delivery app—expressly agreed that DoorDash could collect their personal information directly from their devices and share it with service providers (including analytics services) when they signed up to use the app. They now claim that because they did not provide this consent specifically to Amplitude, the developer of a specific software development kit ("SDK") that DoorDash embedded in its app, they should be able to bring a raft of wiretapping, hacking, and other privacy claims and trigger windfall statutory damages. Make no mistake, this is a radical effort to expand privacy liability and impose it on an entire industry of service providers that perform routine data processing for customers. It fails for lack of standing and failure to plead elements of each claim.

Plaintiffs lack Article III standing under *TransUnion LLC v. Ramirez*, 590 U.S. 413 (2021). Even if what they allege actually occurred, none of the conduct could have harmed them—let alone in a concrete, particularized way that is "traditionally recognized" by American courts. *Id.* at 417. Plaintiffs rely solely on a generalized claim of privacy harm to "consumers"—which would never suffice for Article III standing—and also fail to meet the high bar for an individual privacy injury, which requires pleading not only a "reasonable expectation of privacy" in the information but also that its disclosure constitutes a "highly offensive privacy intrusion." *As a factual matter*, Plaintiffs cannot establish either requirement because they agreed to DoorDash's collection and subsequent sharing of their information with analytics services like Amplitude. Plaintiffs did not even attempt to add new allegations—much less evidence—supporting their alleged injury or disputing their consent to the data collection and sharing practices here. *As a facial matter*, despite artful pleading, Plaintiffs' allegations are deficient: Amplitude's receipt of data about the "thermometer" products and "halal burgers" that Plaintiffs viewed in the app is not a privacy injury.

Even if Plaintiffs could meet their burden to establish standing, the FAC still fails under Rule 12(b)(6) because Plaintiffs do not state any claim against Amplitude. Plaintiffs assert causes

of action pursuant to the (1) Federal Wiretap Act, 18 U.S.C. § 2510, *et seq.*, (2) the California Wiretap Act, Penal Code § 631(a), (3) California Invasion of Privacy Act ("CIPA"), Penal Code § 638.51, and (4) California Comprehensive Computer Data Access and Fraud Act ("CDAFA"), Penal Code § 502. None is adequately pled as a matter of law.

No Wiretapping: Plaintiffs' California and federal wiretapping claims fail. Their allegations reflect that Amplitude was acting as an extension of DoorDash, which means Amplitude could not have "eavesdropped" at all. On top of this, Plaintiffs' threadbare FAC fails to allege basic elements of a wiretapping claim, including identifying the "content" of Plaintiffs' communications or that any content was "intentionally" or "willfully" intercepted "in transit." The federal wiretapping claim fails for the additional reason that one party's consent is a complete defense, and Plaintiffs acknowledge that DoorDash consented to share their data with Amplitude.

No Pen Register Under CIPA: Plaintiffs' attempt to apply the pen register provision in CIPA § 638.51—which was enacted to regulate law enforcement surveillance—to SDKs would have sweeping consequences on the software industry. But that result need not happen here: this claim is doomed because it was DoorDash, not Amplitude, that installed the SDK in its app, and Plaintiffs' own allegations indicate that the SDK is not a pen register.

No CDAFA Violation: Plaintiffs not only fail to allege the sort of economic harm from computer damage necessary to meet CDAFA's narrow statutory standing requirements, they do not plausibly allege Amplitude's knowledge that DoorDash supposedly lacked Plaintiffs' consent to share their data—no surprise, given DoorDash's readily accessible, publicly available Privacy Policy reflecting that it obtains the consent of its users to share data with analytics services.

At bottom, this cynical lawsuit tries to make a lawful and ordinary arrangement between a business and its analytics service provider look nefarious. But the law, the facts, and common sense show that is wrong. Accordingly, the Court should dismiss the FAC in its entirety.

## II.    BACKGROUND

### A.    Amplitude Helps App Developers Such As DoorDash Analyze Their Data

Amplitude is a data analytics service provider that offers tools to help businesses understand how people use their products. *See* FAC ¶ 3. One of those tools is a publicly available

SDK, prebuilt software that Amplitude's developer customers configure for "their applications to save time and execute specific tasks." *Id.* ¶¶ 15, 20. By using Amplitude's SDK and analytics platform, developers can analyze their own data and learn how users engage with their apps and what product features are successful. Amplitude's SDK is used by thousands of app developers in a broad range of apps—including DoorDash, a popular food delivery app. *Id.* ¶¶ 2, 14, 15. Amplitude's customers install the SDK and configure it for their specific use, including determining what data are processed and how. *See* Decl. of Jeffrey Wang ("Wang Decl.") ¶ 5.[1] Amplitude does not sell customer data or provide advertising services; it simply provides a platform for businesses to analyze and leverage their own data. *Id.* ¶ 7.

### B.   DoorDash Discloses In Its Privacy Policy That It Shares Personal Information With Service Providers Like Amplitude

Users must agree to DoorDash's Privacy Policy when they sign up for the app. Cramer Decl. ¶¶ 8-10. The Privacy Policy discloses that DoorDash collects certain information from users (including through "software development kits"), that DoorDash may share that information with "service providers" (including "analytics services"), and that such service providers "may access, store and process your personal information." *Id.*, Ex. A at §§ III, V; Ex. B at §§ III, V.[2]

### C.   All DoorDash Users Must Consent to its Privacy Policy—Including Plaintiffs

Plaintiffs Kyle Atkins and Michael Luo allege they are users of the DoorDash app. FAC ¶¶ 33, 37. They allege that DoorDash embedded Amplitude's SDK into its app and sent their data to Amplitude when they "downloaded and used" the app. *Id.* ¶¶ 33-34, 37-38. Each Plaintiff alleges that DoorDash's use of the SDK in its app "allow[ed]" Amplitude to "collect his timestamped geolocation information, device IDs, device fingerprint data, information about which app(s) he uses on his mobile device, search terms he input into the DoorDash app, the products he placed in his shopping cart, and the restaurants and products he viewed," as well as his name and email

---

[1] Amplitude submits the Declarations of Brian Cramer ("Cramer Decl.") and Jeffrey Wang ("Wang Decl.") in support of its factual attack on standing under Rule 12(b)(1), and the Declaration of Michael H. Rubin ("Rubin Decl.") in support of its arguments under Rule 12(b)(6).

[2] The DoorDash Privacy Policy is accessible in the DoorDash app, and the current Privacy Policy is available at https://help.doordash.com/legal/document?type=cx-privacy-policy&region=US&locale=en-US. Cramer Decl. ¶¶ 3, 9.

address. *Id.* ¶¶ 34, 38.[3] Plaintiffs vaguely allege to have viewed "thermometer" and "halal burger[]" products and a restaurant called "Halal Burgers & More." *Id.*

Plaintiffs allege they were not informed that DoorDash's app used Amplitude's SDK and did not consent "to Amplitude's data collection practices," *id.* ¶¶ 5, 36, 40, but that is contradicted by documents incorporated into the FAC and subject to judicial notice: they received detailed disclosures from DoorDash about its data collection and sharing policies, and they were required to consent to those practices to use the app. *See* Cramer Decl. ¶¶ 7-10; Rubin Decl., Exs. 1-2.

**D.    Procedural History**

The original Complaint in this matter was filed by Plaintiff Atkins. Amplitude moved to dismiss, raising the same arguments it makes in this Motion: that Plaintiff lacked standing because he consented to the collection of his information by DoorDash and to DoorDash's sharing of that information with service providers, and that Plaintiff failed to allege required elements of his wiretapping, pen register, and CDAFA claims.

In response to Amplitude's motion, Plaintiffs filed the FAC on November 15, 2024. The FAC added Plaintiff Luo but is otherwise substantially similar to the original Complaint—it asserts the same causes of action under the same theories, based on the same underlying allegations. Beyond Plaintiff Luo's allegations and minor typographical edits, the relevant additions to the FAC are as follows: (1) conclusory statements (a) that Plaintiff Atkins viewed "thermometer" products in the app (FAC ¶ 34), (b) that Amplitude "contracted with DoorDash to provide its SDK to be embedded" in the app (*id.* ¶ 21), (c) that Amplitude "designed the SDK so that Amplitude could collect sensitive consumer data from consumers, . . . despite Amplitude not having their consent" (*id.*); and (d) that the alleged interception occurred "at the same moment" as when DoorDash received the communications (*id.* ¶ 73); and (2) new damages theories for the CDAFA claim, including that the SDK occupied storage space and used cellular data (*id.* ¶ 67).

---

[3] While not relied upon for any of its dismissal arguments at this stage, Amplitude notes that Plaintiffs mischaracterize Amplitude's SDK and how DoorDash uses it in the DoorDash app.

## III.    ARGUMENT

### A.    Plaintiffs Lack Article III Standing

Plaintiffs lack standing. The FAC makes no effort to remedy the deficiencies Amplitude identified in its prior motion: the factual record still establishes that they consented to the conduct that they complain about, and the FAC still does not allege any concrete, particularized harm.

#### 1.    Legal Standard

To establish Article III standing, a plaintiff "must demonstrate, among other things, that they suffered a concrete harm," meaning a harm with a "'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *TransUnion*, 594 U.S. at 417 (citation omitted). For a privacy harm, a plaintiff must plead that their information was subject to a "reasonable expectation of privacy" and that defendant's access to it constituted a "highly offensive" intrusion. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020). That injury must be "particularized" (*i.e.*, plaintiff must personally have experienced it), and plaintiff bears the burden of establishing each element of Article III standing. *Birdsong v. Apple, Inc.*, 590 F.3d 955, 960 (9th Cir. 2009) (citation omitted).

Challenges to a plaintiff's standing can be either "factual" or "facial." *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 829 (N.D. Cal. 2021). A "factual" attack "contests the truth of the plaintiff's factual allegations" by "introducing evidence outside the pleadings," whereas a "facial" attack "asserts that" the allegations are "insufficient on their face to invoke federal jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (citation omitted). In deciding a factual attack, "courts may consider evidence like declarations submitted by the parties, and the party opposing the motion to dismiss has the burden of establishing [standing] by a preponderance of the evidence." *O'Handley v. Padilla*, 579 F. Supp. 3d 1163, 1178 (N.D. Cal. 2022).

#### 2.    Plaintiffs Consented To DoorDash's Collection And Sharing Of Their Information With "Analytics Services" Like Amplitude

Plaintiffs cannot meet their burden to establish standing based on a privacy harm because they consented to the collection of their information by DoorDash and to DoorDash's sharing of that information with service providers, including "analytics services" like Amplitude. The

evidence establishes that (1) DoorDash's disclosures described what data are collected, how, and with whom it would be shared, and (2) users like Plaintiffs must affirmatively consent to those practices in order to use the app. Plaintiffs failed to provide any new factual allegations in the FAC in response to the evidence Amplitude submitted on the last motion.

*First*, Plaintiffs agreed that DoorDash could collect their personal information, including their "Account and Profile Information," "Activity and Transactions," "Device Information," and "Geolocation Information."[4] Cramer Decl., Ex. A at § II. These categories cover every type of information Plaintiffs identify in the FAC. *Compare* FAC ¶¶ 34, 38. Plaintiffs further agreed that this information could be "collected automatically from [their] device[s]," and that DoorDash may receive data through "software development kits." Cramer Decl., Ex. A at § III. Thus, Plaintiffs had notice of and agreed that the data at issue could be collected by DoorDash.

*Second*, Plaintiffs agreed that DoorDash could provide their personal information to its "service providers and vendors," including "analytics services that help us understand usage of our Services." *Id.* at § V. Critically, Plaintiffs also agreed that DoorDash's service providers "may access, store and process" their personal information. *Id.* Plaintiffs' own allegations confirm that Amplitude—an analytics services company—was merely acting as a service provider supporting DoorDash's operation of its app. *See* FAC ¶¶ 33, 38. Plaintiffs thus did not have a reasonable expectation of privacy that information they voluntarily provided—which was identified in the Privacy Policy as data that may be shared with "service providers"—would not be shared with Amplitude for the specific purpose of providing analytics services. *Hammerling v. Google, LLC*, 2024 WL 937247, at *3 (9th Cir. Mar. 5, 2024) (no reasonable expectation of privacy where collection practices were "expressly disclosed"). Nor can Plaintiffs maintain that any intrusion was "highly offensive," as courts have held "that data collection and disclosure to third parties that is 'routine commercial behavior' is not a 'highly offensive' intrusion of privacy." *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1090 (N.D. Cal. 2022) (collecting cases). And this case involves nothing more than routine commercial behavior: Amplitude simply provides a platform

---

[4] The Privacy Policy states that geolocation data will only be collected if the user "consent[s] by enabl[ing] location access." Cramer Decl., Ex. A at § II. Plaintiffs allege they did. FAC ¶¶ 34, 38.

for businesses like DoorDash to analyze their own data—the *customer* installs the SDK and decides what data are processed, and Amplitude does not sell the data or use it to serve ads (or for its own purposes). *See* Wang Decl. ¶¶ 5-7.

Plaintiffs' assertion that they did not provide their consent to *Amplitude* (as opposed to DoorDash, on behalf of itself and its "service providers") is irrelevant. Plaintiffs consented to the *act* of DoorDash sharing their "Personal Information" with its "service providers," including those providing "analytics services that help [DoorDash] understand usage of [its] Services." Cramer Decl., Ex. A at § V. As a result, Plaintiffs cannot establish that they had a reasonable expectation of privacy in the information at issue, or that such conduct was highly offensive.

*Silver v. Stripe Inc.*, 2021 WL 3191752, at *4 (N.D. Cal. July 28, 2021) is on point. That case involved wiretapping claims against a payment service that Instacart installed on its website. The court dismissed the claims based on the plaintiffs' consent to Instacart's privacy policy, which stated that unnamed "partners" of Instacart may use "various technologies" to collect information like identifiers, demographic and commercial information, geolocation data, and inferences. *Id.*[5]

3.    Plaintiffs Do Not Allege A Concrete, Particularized Harm Traceable To Amplitude On The Face Of The Complaint

Even setting aside the DoorDash evidence, Plaintiffs still would lack standing because they have not plausibly alleged that they personally suffered a concrete injury as a result of Amplitude.

Plaintiffs suggest that "consumers" suffer some undefined privacy harm because Amplitude allegedly receives their "sensitive information" from DoorDash without consent, FAC ¶¶ 27-29, but they do not link that to any "traditionally recognized" harm. *TransUnion*, 594 U.S. at 432. Though "disclosure of private information, and intrusion upon seclusion" can provide the historical analogue under *TransUnion*, *id.* at 425, Plaintiffs fail to plead facts supporting such an injury: they do not identify any category of information that they personally shared in which they had a "reasonable expectation of privacy," much less that DoorDash's sharing that information with Amplitude was "highly offensive." *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286 (2009). The FAC simply lists a handful of data fields that the SDK is *capable* of receiving based on how

[5] Although the court's § 631 dismissal was pursuant to Rule 12(b)(6), its reasoning applies here.

a person uses DoorDash—without any details about Plaintiffs' actual use of the app, whether those fields were provided to DoorDash, or why that information is sensitive.[6] For example, Plaintiffs do not even allege that they used the app's search function, added items to their cart, or placed an order through the app. *See Cody v. E. Gluck Corp.*, 2024 WL 4314187, at *2 (N.D. Cal. Sept. 26, 2024) (no allegation that plaintiff "actually used the chat feature"); *Valenzuela v. Keurig Green Mountain, Inc.*, 2023 WL 6609351, at *3 (N.D. Cal. Oct. 10, 2023) (plaintiff lacked "any 'reasonable expectation of privacy'" without alleging that the contents of the chats "contained any private information"); *Russo v. Microsoft Corp.*, 2021 WL 2688850, at *3 (N.D. Cal. June 30, 2021) (similar). That is telling given that Amplitude raised this exact deficiency in its prior motion. Indeed, the only new allegation about Plaintiffs' use of the app in the FAC is that they viewed "thermometer" and "halal burgers" products and a restaurant called "Halal Burgers & More." FAC ¶¶ 34, 38. But that is entirely conclusory, and Plaintiffs do not—and cannot—identify any injury resulting from disclosure of that information.

In any event, even accepting Plaintiffs' allegation about the products and restaurant they viewed at face value (or assuming they had shared all of the data fields identified in the FAC with DoorDash), they still could not plausibly allege that any disclosure to Amplitude was "highly offensive." The notion that viewing products related to a "thermometer" or "halal burgers," much less adding unspecified food (*e.g.*, sushi) to one's shopping cart or searching for food resembles a harm "traditionally recognized" by American courts is simply not plausible. *TransUnion*, 594 U.S. at 425. And courts have recognized that data about a user's device, such as "device IDs", so-called "device fingerprint data" (*i.e.*, "device make and model, screen resolution, and operating system version"), and the like, *see* FAC ¶¶ 17, 34, 38, do not give rise to a cognizable privacy injury. *See, e.g.*, *Ji v. Naver Corp.*, 2022 WL 4624898, at *7 (N.D. Cal. Sept. 30, 2022) (device ID, IP address, operating system data); *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1049–50 (N.D. Cal. 2022) (email address, phone number, username).

---

[6] Plaintiffs' speculation that a hypothetical consumer's geolocation information for their food deliveries *could* reveal their "religious affiliation, sexual orientation, [or] medical condition" is too far-fetched to countenance. FAC ¶ 27. In any event, they still do not allege that their data actually reveals such information. *See Birdsong*, 590 F.3d at 960 (injury must be "particularized").

The circumstances here make clear that DoorDash sharing data with Amplitude could not be so "'sufficiently serious' and unwarranted as to constitute an 'egregious breach of the social norms'"—as Plaintiffs must plead to establish a "highly offensive" intrusion. *Hernandez*, 47 Cal. 4th at 295 (citation omitted). This case is about a "food delivery app" analyzing its own app-usage data with tools developed by an analytics company. FAC ¶ 21. Plaintiffs allege nothing more than routine data processing by a service provider. *See Hammerling v. Google LLC*, 2022 WL 17365255, at *9 (N.D. Cal. Dec. 1, 2022), *aff'd*, 2024 WL 937247 (9th Cir. Mar. 5, 2024) (searches for meal subscriptions, coconut oil, and use of photo editor were "data collection of 'routine commercial behavior,'" not highly offensive). And the very data collection and sharing practices that Plaintiffs complain about were publicly disclosed in DoorDash's Privacy Policy. *See* Cramer Decl., Exs. A-B at § V; Rubin Decl., Exs. 1-2. Without an intrusion into their protectable privacy interest, Plaintiffs have *at most* alleged a "bare procedural violation[], divorced from any concrete harm," which is insufficient under Article III. *TransUnion*, 594 U.S. at 440 (citation omitted).

Nor can Plaintiffs argue that an alleged statutory violation alone is a concrete injury. "[A]n injury in law is not an injury in fact." *Id.* at 427 (plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants [him] a statutory right"). Rather, Article III requires a concrete injury "traditionally recognized" by American courts, *id.* at 440, which here requires a "reasonable expectation of privacy" and a "highly offensive" intrusion.[7] *Hernandez*, 47 Cal. 4th at 286. Plaintiffs have alleged nothing of the sort.

---

[7] To the extent pre-*TransUnion* case law suggested that a violation of CIPA alone could constitute a cognizable harm for standing purposes, that is "clearly irreconcilable," *Avilez v. Garland*, 69 F.4th 525, 533 (9th Cir. 2023), with the Supreme Court's later decision in *TransUnion*. *Compare TransUnion*, 594 U.S. at 426 ("[E]ven though 'Congress may 'elevate' harms that 'exist' in the real world before Congress recognized them to actionable legal status, it may not simply enact an injury into existence . . . .'"), *with In re Facebook Internet Tracking*, 956 F.3d at 598–99 (finding standing based on violations of statutory provisions codifying right to privacy). *See Lightoller v. Jetblue Airways Corp.*, 2023 WL 3963823, at *3 (S.D. Cal. June 12, 2023) (concluding that *In re Facebook Internet Tracking*'s holding is "untenable" in light of *TransUnion*); *Fleming v. ProVest California LLC*, 2021 WL 6063565, at *2 (N.D. Cal. Dec. 22, 2021) ("*TransUnion* likely alters the Ninth Circuit Article III standing framework"); *Byars v. Sterling Jewelers, Inc.*, 2023 WL 2996686, at *3 (C.D. Cal. Apr. 5, 2023) (similar, holding that "bare violation of CIPA" is insufficient); *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 865 (S.D. Cal. 2023) (similar).

4.    Plaintiffs Lack Standing To Pursue Injunctive Relief

Plaintiffs also lack standing to seek injunctive relief, FAC ¶¶ 55, 61, 78, which requires a threat of "actual and imminent, not conjectural or hypothetical" injury. *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). The "threatened injury must be certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quotation and alteration omitted). Plaintiffs do not allege any future harm whatsoever. Nor could they, since the data collection and sharing practices they complain about are publicly disclosed in DoorDash's Privacy Policy. *See* Cramer Decl. ¶¶ 7-10; Rubin Decl., Exs. 1-2. And they are free to uninstall or stop using the DoorDash app.

**B.    Plaintiffs Have Not Stated Any Claim Against Amplitude**

1.    Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff must provide "more than labels and conclusions," *Twombly*, 550 U.S. at 555, and the Court need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences," *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

2.    Plaintiffs Cannot State Any Claim Because They Consented To The Collection And Sharing Of Their Information With "Analytics Services"

All of Plaintiffs' claims fail for the threshold reason that they consented to DoorDash's collection of their personal information and the sharing of that information with "service providers," including "analytics services" like Amplitude. Each statute at issue here precludes liability where a plaintiff consented. *See* Cal. Penal Code § 631(a) ("without the consent of all parties"), § 638.51 (no violation "[i]f the consent of the user . . . has been obtained"), § 502(c) ("without permission"), 18 U.S.C. § 2511(2)(d) (no violation if "prior consent"). Though Plaintiffs assert that they did not separately consent to *Amplitude*, *see* FAC ¶¶ 35-36, 39-40, they do *not* claim that they did not consent to DoorDash. Nor could they: Plaintiffs allege that they "downloaded and used" the DoorDash app, *id.* ¶¶ 33, 37, which discloses and requires agreement

to DoorDash's public Privacy Policy. *See* Rubin Decl., Exs. 1-2.[8] And the DoorDash Privacy Policy discloses that information could be collected and shared with "analytics services." Cramer Decl., Exs. A-B at § V. In other words, Plaintiffs were made aware of and agreed to the *act* of DoorDash sharing their personal information with its "service providers" like Amplitude. "That the disclosures were provided by [DoorDash] (as opposed to [Amplitude] directly) does not require a different result." *Silver*, 2021 WL 3191752, at *4 (plaintiff's consent to Instacart privacy policy barred wiretapping claims against third-party payment service installed on Instacart's website).

3.    <u>Plaintiffs Cannot State A Claim For Wiretapping</u>

Plaintiffs cannot state a wiretapping claim under CIPA or federal law because they do not plausibly allege that Amplitude intentionally or willfully made an unauthorized connection with their device or intercepted the contents of their communications in transit.

a.    *Plaintiffs Do Not Allege That Amplitude Wiretapped Their Phones Or Eavesdropped On Their Communications Under CIPA*

Plaintiffs' CIPA claim is entirely conclusory: they simply quote § 631(a) and declare that Amplitude's SDK "made an unauthorized connection" with their devices and "intercepted" their "input events" (FAC ¶¶ 71-73) without any facts or explanation. Based on their vague references to an "unauthorized connection" and "intercept[ion],"[9] Plaintiffs appear to assert claims under the first two clauses of § 631(a), which respectively prohibit (1) "intentionally" making an "unauthorized connection" with any "telegraph or telephone wire, line, cable, or instrument" (*i.e.*, intentional wiretapping), and (2) "willfully" attempting "to learn the contents or meaning" of a communication "in transit" (*i.e.*, eavesdropping). Cal. Penal Code § 631(a). Both claims fail.

*First*, as a threshold matter, Plaintiffs fail to sufficiently plead either claim because the FAC lacks facts indicating that Amplitude engaged in any "willful or intentional conduct," as

---

[8] DoorDash's Privacy Policy, app welcome screen, and app sign up page are incorporated by reference and judicially noticeable (*see* Dkt. 31) and thus the Court may consider them in ruling on Amplitude's facial standing and Rule 12(b)(6) challenges. *See Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061, 1064 n.7 (9th Cir. 2008). The Court need not "accept as true conclusory allegations which are contradicted by documents referred to in the complaint." *Steckman v. Hart Brewing Inc.*, 143 F.3d 1293, 1295–96 (9th Cir. 1998).

[9] Courts construe references to "interception" as invoking the second clause of § 631(a). *See, e.g.*, *Williams v. What If Holdings, LLC*, 2022 WL 17869275, at *2 (N.D. Cal. Dec. 22, 2022).

required to state a claim under § 631(a). *See* Cal. Penal Code § 631; *Doe I v. Google LLC*, 2024 WL 3490744, at *6 (N.D. Cal. Jul. 22, 2024) ("CIPA liability only extends to willful or intentional conduct."). Plaintiffs allege that DoorDash, not Amplitude, embedded the SDK in its app, and there are no factual allegations suggesting that Amplitude expected DoorDash to share data from users without permission. After Amplitude raised this same deficiency in its prior motion to dismiss (*see* Dkt. 21 at 10), Plaintiffs added a single conclusory statement that "Amplitude designed the SDK so that Amplitude could collect sensitive consumer data from consumers, including DoorDash users, despite Amplitude not having their consent to collect such data." FAC ¶ 21. That is insufficient. Plaintiffs must allege that Amplitude "acted consciously and deliberately with the goal of intercepting wire communications." *Doe I*, 2024 WL 3490744, at *4, *6 (quoting *United States v. Christensen*, 828 F.3d 763, 790 (9th Cir. 2015)). Plaintiffs' boilerplate allegation that Amplitude "designed the SDK" to be customizable by app developers does not suggest that Amplitude deliberately intercepted any (much less Plaintiffs') communications—particularly where, as here, DoorDash is the entity that embedded the SDK in the app, and DoorDash's Privacy Policy discloses that it shares information with service providers, including analytics services.

*Second*, as a matter of law, Plaintiffs cannot state a claim for making "an unauthorized connection" with their devices. That provision in § 631(a) does not cover internet communications, even on a smartphone. *Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 755 (N.D. Cal. 2023). Because Plaintiffs do not allege that the SDK operates using telegraph or telephone wires (nor could they), they fail to state a wiretapping claim under the first clause of § 631(a).

*Third*, Plaintiffs fail to plead essential elements of a claim for intercepting communications. The FAC alleges that Amplitude was acting as an authorized extension of DoorDash and thus is exempted under § 631(a), and Plaintiffs have not alleged, as they must, the "contents" of the allegedly intercepted communication or that it was intercepted while "in transit."

***No Eavesdropping.*** Section 631 exempts a "'party' to the communication." *In re Facebook Internet Tracking*, 956 F.3d at 607. Courts have applied this exemption to third-party service providers where, as here, the allegations indicate that the provider was merely an extension of a party. *See, e.g.*, *Graham*, 533 F. Supp. 3d at 832–33 (session-replay vendor was extension of

website operator); *Balletto v. Am. Honda Motor Co., Inc.*, 2023 WL 7026931, at *3 (N.D. Cal. Oct. 24, 2023) (similar); *Johnson v. Blue Nile, Inc.*, 2021 WL 1312771, at *1 (N.D. Cal. Apr. 8, 2021) (same); *Yale v. Clicktale, Inc.*, 2021 WL 1428400, at *1, *3 (N.D. Cal. Apr. 15, 2021) (similar).

Here, Plaintiffs' allegations reflect that Amplitude was acting as an authorized extension of DoorDash. Plaintiffs allege that developers like DoorDash "integrate" the SDK into their apps "to save time and execute specific tasks." FAC ¶¶ 2, 15, 21. Indeed, Plaintiffs even allege (albeit in conclusory fashion) that Amplitude "contracted" with DoorDash to provide the SDK. *Id.* ¶ 21. Though the FAC tries to obfuscate Amplitude's role as a service provider by asserting that Amplitude "collects" the data (*e.g., id.* ¶¶ 13, 19), the totality of Plaintiffs' allegations—and DoorDash's Privacy Policy—show that Amplitude received the information after DoorDash collected it and that Amplitude performed functions *for* DoorDash. And simply "provid[ing] a tool" that "allows [a business] to record and analyze its own data" does not make a service provider an eavesdropper.[10] *Graham*, 533 F. Supp. 3d at 832 (vendor captured "clients' data" and allowed client to analyze it) (citation omitted); *Williams*, 2022 WL 17869275, at *3 (distinguishing vendors that use client data for separate business purposes).

In an attempt to plead around the party exception, the FAC includes two vague paragraphs nodding to supposed "integrations" with advertising platforms and the development of "artificial intelligence tools to analyze the data," FAC ¶¶ 29-31, but these allegations are entirely conclusory and untethered to the DoorDash app and Plaintiffs' data. They are also insufficient to transform Amplitude from a service provider to an eavesdropper. Whether a vendor functions as an extension of its business customer hinges on whether the business retains "control and ability to limit" dissemination of the data, *Doe v. Kaiser Found. Health Plan, Inc.*, 2024 WL 1589982, at *18 (N.D. Cal. Apr. 11, 2024), and courts typically look to whether the vendor resells the data or uses it for advertising. *See Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 746 (N.D. Cal. 2023) (no

---

[10] Under the California Consumer Privacy Act ("CCPA"), a business may share information with a "service provider" for a valid "business purpose," including for "analytic services." Cal. Civ. Code § 1798.140(e)(5)-(6). Notably, the CCPA defines a "third party" as a "person who is *not* … a service provider to the business." *Id.* § 1798.140(ai)(2) (emphasis added).

allegation that analytics provider could use information "for any other purpose besides relaying it to [customer]"); *Graham*, 533 F. Supp. 3d at 832 (distinguishing software vendors providing "tools" from "independent parties who mined information from other websites and sold it"); *Byars v. Hot Topic, Inc.*, 656 F. Supp. 3d 1051, 1068 (C.D. Cal. 2023) (vendor was extension of party where there was no allegation that vendor aggregated data for resale); *see also Frasco v. Flo Health, Inc.*, 2022 WL 21794391, at *1 (N.D. Cal. June 6, 2022) (no factual allegation about service provider "us[ing] the data provided to it through its SDK for '[its] own purposes'"). Here, Plaintiffs allege that Amplitude "created integrations" for its customers to share their own data "with marketing and advertising platforms," FAC ¶ 30—***not*** that Amplitude itself sells data or uses it in an advertising business that it runs. (Amplitude does not sell data and has no ad business.)

***No "Content" at Issue.*** Plaintiffs' claim under § 631(a) additionally fails because they have not alleged the "contents or meaning" of any intercepted communication. *Jones v. Peloton Interactive, Inc.*, 720 F. Supp. 3d 940, 947 (S.D. Cal. 2024) (conclusory allegation that vendor captured transcript of online chat failed to plead "content"). Under CIPA, the "contents" of a communication are limited to "the intended message conveyed by the communication." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014). Despite the amendment, the FAC still does not include any factual allegations about the "intended message" of *any* communication.

Plaintiffs' theory is that the SDK intercepted their "specific input events," *i.e.*, page views, button presses, or "affirmative actions (such as installing a mobile app on their device)."[11] FAC ¶ 71. But that information does not reveal a message that Plaintiffs intended to convey to DoorDash, let alone "comprise the substance, purport, or meaning of that communication." *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1062 (N.D. Cal. 2012). Courts have dismissed eavesdropping claims based on similar information. *See Jones*, 720 F. Sup. 3d at 947 ("IP address, device used to connect to website, web browser used, date and time of communication, [and] words used to prompt the chat" are not content); *Hammerling*, 615 F. Supp. 3d at 1093 (similar); *McCoy v. Alphabet, Inc.*, 2021 WL 405816, at *14 (N.D. Cal. Feb. 2, 2021) (frequency and duration of use of apps on phone not content); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082–83

---

[11] The FAC does not identify any "affirmative actions" that Plaintiffs made within the app.

(C.D. Cal. 2021) (keystrokes, mouse clicks, and page views are not content).[12] The same is true for the products and restaurants Plaintiffs claim in the FAC to have viewed—specifically, the "thermometer" that Plaintiff Atkins viewed (FAC ¶ 34) and the "halal burgers" and the 'Halal Burgers & More" restaurant that Plaintiff Luo viewed (*id.* ¶ 38). Plaintiffs' viewing of products and restaurants in the app does not reveal any message they intended for DoorDash, much less the substance of that communication. *See Yoon*, 549 F. Supp. 3d at 1082–83 (rejecting wiretapping claim based on alleged recording of "pages viewed").

Plaintiffs' cursory reference to the collection of "search terms" cannot save them. Because Plaintiffs do not even identify a single search term they used (if any), they necessarily fail to plead the existence of any "content." *Jones*, 720 F. Supp. 3d at 947; *Heiting v. Taro Pharms. USA, Inc.*, 709 F. Supp. 3d 1007, 1018 (C.D. Cal. 2023). In any event, determining whether search terms qualify as "content" requires a "case-specific analysis" that turns on "how much information would be revealed" by disclosure. *Hammerling*, 615 F. Supp. 3d at 1092. Here, Plaintiffs cannot plausibly allege that their (unspecified) searches for food items were protected content.

***No Allegations About Communications "In Transit."*** Plaintiffs also fail to plausibly allege, as they must, that their communications were "stop[ped], seize[d], or interrupt[ed] in progress or course before arrival." *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002); *Lau v. Gen Digit. Inc.*, 2024 WL 1880161, at *1 (N.D. Cal. Apr. 3, 2024) (wiretapping concerns "the unauthorized *interception* of communications, not any subsequent storage and/or use"). Plaintiffs cannot meet their pleading burden by repeating labels like "interception" or "in real time," yet that is all they do. Specifically, in the FAC, Plaintiffs repeatedly assert that the alleged interception occurred "in real time" and at "substantially the same time" as when DoorDash received the communication. FAC ¶¶ 17-19, 73. But these boilerplate statements are devoid of any facts "regarding the method, or nature, of [the] interception," *Heiting v. Taro Pharms. USA, Inc.*, 2024 WL 1626114, at *9 (C.D. Cal. Apr. 2, 2024). They are also implausible in light of Plaintiffs'

---

[12] Even if Plaintiffs could assert an "unauthorized connection" claim (they cannot), the device setting data they allege for that claim (FAC ¶ 72) is automatically generated "record information," not "content." *S.D. v. Hytto Ltd.*, 2019 WL 8333519, at *6–7 (N.D. Cal. May 15, 2019).

allegation that the SDK is code incorporated into the app itself. *See Cody v. Ring LLC*, 718 F. Supp. 3d 993, 1001 (N.D. Cal. 2024) (vague allegation that software was "plugged into" website, and that chats were routed through the software, was insufficient because it "fail[ed] to explain how the software works or how the interception occurs"). Similarly, their claim that the SDK collects information "intended for the mobile app" "in real-time" (FAC ¶ 20, 74) fails to allege that Amplitude accessed *Plaintiffs'* data *before* it reached the app. Courts have rejected vague allegations like these. *See Lau*, 2024 WL 1880161, at *1 (allegation that defendant "catalogued and stored" data); *Rodriguez v. Google LLC*, 2022 WL 214552, at *1–2 (N.D. Cal. Jan. 25, 2022) (references to "intercepted" and "simultaneous"); *Swarts*, 689 F. Supp. 3d at 746 (similar); *Cody*, 718 F. Supp. 3d at 1001 (similar).

> b.  *Plaintiffs Allege That DoorDash Consented To The Use Of Amplitude's SDK, Barring Their Federal Wiretapping Claim*

Plaintiffs' federal wiretapping claim fails for all the same reasons as their California claim—and more. *See supra* Section III.B.3.a; *M.G. v. Therapy Match, Inc.*, 2024 WL 4219992, at *3 (N.D. Cal. Sept. 16, 2024) (analysis for CIPA the same as federal Wiretap Act). Unlike CIPA, one party's consent is a complete defense under the Federal Wiretap Act. *See* 18 U.S.C. § 2511(2)(d). DoorDash consented to the use of Amplitude's SDK by installing it in its app. Plaintiffs' own allegations indicate that DoorDash *chose* to "embed[]" the SDK in its app (FAC ¶¶ 34, 38), which is fatal. *See, e.g.*, *Doe I v. Google LLC*, 2023 WL 6882766, at *2 (N.D. Cal. Oct. 18, 2023); *Rodriguez v. Google LLC*, 2021 WL 2026726, at *6 (N.D. Cal. May 21, 2021); *Roe v. Amgen Inc.*, 2024 WL 2873482, at *6 (C.D. Cal. June 5, 2024).

> 4.  <u>Plaintiffs' Section 638.51 Claim Should Be Dismissed Because Amplitude's SDK Is Not A Pen Register</u>

Plaintiffs seek to upend the software industry's reliance on SDKs by asserting that Amplitude is liable because its SDK—which DoorDash integrated in its own app—is a "pen register" used to track their information under § 638.51. *See* FAC ¶ 59. This claim fails.

*First*, Plaintiffs do not allege that Amplitude "install[ed] or use[d]" the SDK, as required. Cal. Penal Code § 638.51(a). To the contrary, they allege that *DoorDash* installed and used the

SDK when *DoorDash* embedded the SDK in its app, and the SDK was used by that app to collect data. FAC ¶¶ 22, 34, 38. That Amplitude is alleged to have developed the SDK makes no difference because § 638.51 only applies to the *installation* and *use* of the pen register. In an attempt to dress up Plaintiffs' deficient allegations, and in response to Amplitude's prior motion to dismiss, Plaintiffs added a single conclusory allegation in the FAC that Amplitude "contracted with DoorDash to provide its SDK to be embedded in the" DoorDash app. *Id.* ¶ 21. But that still falls short because it confirms that DoorDash installed the SDK, not Amplitude.

*Second*, Plaintiffs lack statutory standing to assert their pen register (or any CIPA[13]) claim because they have not alleged that they were injured by DoorDash's use of the SDK in its app. Under CIPA's remedy provision, a plaintiff must have been "injured by" a violation of CIPA to bring an action. Cal. Penal Code § 637.2(a). Plaintiffs were not. As explained *supra* Sections III.A and III.B.2, Plaintiffs have not plausibly alleged (and cannot establish) a privacy injury given that DoorDash disclosed its data collection practices (including the use of "software development kits") and that DoorDash may share personal information with its "service providers," including "analytics services" like Amplitude. Cramer Decl., Exs. A-B at § V.

*Third*, Plaintiffs do not plausibly allege that the SDK is a pen register. Under CIPA, a pen register is defined as "a device or process that records or decodes dialing, routing, addressing, or signaling information, . . . but not the contents of a communication." § 638.50(b). As an initial matter, rather than plead facts, the FAC simply parrots the statutory language, claiming the SDK is a "pen register" because it is a "device or process that records addressing or signaling information." FAC ¶ 59. That is circular and conclusory, and reason enough to dismiss the claim. *See Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 955 n.9 (9th Cir. 2011). And Plaintiffs' broader allegations about the categories of data received by the SDK confirm that the SDK is not a pen register. Simply put, the "location and personal information" that Plaintiffs allege is recorded by the SDK (FAC ¶ 59) is not "addressing or signaling information" distinct from some other communication, as required by § 638.50(b). To the contrary, Plaintiffs allege that their geolocation

---

[13] For the same reason, Plaintiffs' California wiretapping claim (CIPA § 631) should be dismissed.

and personal information[14] was among the supposedly "sensitive information" collected by the SDK. *See, e.g.*, FAC ¶¶ 3-5, 17, 21. This is in contrast to the allegations in *Shah v. Fandom, Inc.*, where the website trackers were alleged to have recorded a user's IP address, but not the accompanying HTTP request to load the website that was associated with the IP address. 2024 WL 4539577, at *2 (N.D. Cal. Oct. 21, 2024). Because Plaintiffs fail to plausibly allege that the SDK records addressing or signaling information, they have not stated a pen register claim.[15]

### 5. Plaintiffs' CDAFA Claim Fails On Multiple Grounds

Plaintiffs' CDAFA claim fares no better. Not only have Plaintiffs failed to allege that Amplitude acted "without permission" (*see supra* Section III.B.2), but their CDAFA claim is entirely conclusory, Plaintiffs lack statutory standing to assert it, and they do not allege that Amplitude accessed their devices or knew Plaintiffs supposedly did not consent.

***Parroting the Statute Is Not Enough.*** The CDAFA prohibits the "tampering, interference, damage, and unauthorized access to lawfully created computer data and computer systems." Cal. Penal Code § 502(a). Plaintiffs invoke three subsections of § 502(c), *see* FAC ¶¶ 63-65, but merely parrot the statutory language and allege no facts. That alone warrants dismissal. *See Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1090 (N.D. Cal. 2018).

***No Cognizable Loss.*** Plaintiffs lack statutory standing, which requires "damage or loss by reason of a violation" of the statute. Cal. Penal Code § 502(e).[16] Courts narrowly construe "loss" under the CDAFA "to encompass costs related to fixing a computer, lost revenue, or other consequential damages incurred due to an interruption of computer services." *Pratt v. Higgins*,

---

[14] The FAC does not identify the specific "personal information" underlying the pen register claim, but DoorDash's Privacy Policy discloses the collection and sharing of "Personal Information," which includes "Account and Profile Information," "Activity and Transactions," "Device Information," and "Geolocation Information." Cramer Decl., Ex. A at § V. As explained in Section III.B.3, Plaintiffs have not stated a wiretapping claim based on this information either.

[15] Amplitude disputes that § 638.51 applies to the software alleged here, or that a pen register encompasses technology that captures the originating information of an outbound communication, *see People v. Larkin*, 194 Cal. App. 3d 650, 653 n.2 (1987), but reserves these arguments in light of the Court's decision in *Fandom*.

[16] Courts typically apply the definitions of "damage" and "loss" from the federal Computer Fraud and Abuse Act ("CFAA") to the CDAFA. *See NovelPoster v. Javitch Canfield Grp.*, 140 F. Supp. 3d 938, 950 (N.D. Cal. 2014) (no damage or loss under CDAFA "for the same reason" as CFAA).

2023 WL 4564551, at *9 (N.D. Cal. July 17, 2023) (improper access to medical information not a loss); *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1082 (N.D. Cal. Sep. 7, 2023) (privacy violation not a loss); *Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461, 487–88 (N.D. Cal. 2021) (similar); *Wesch v. Yodlee, Inc.*, 2021 WL 1399291, at *6–7 (N.D. Cal. Feb. 16, 2021) (similar).

The FAC includes a grab bag of deficient CDAFA loss theories. Plaintiffs' leading claim is that Amplitude "was unjustly enriched with the data it obtained." FAC ¶ 67(4). This theory appears to be based on *In re Facebook Internet Tracking*, an outlier case where the CDAFA loss allegations were based on plaintiffs' claim to profits from the unauthorized sale of their data for advertising. 956 F.3d at 600. But there, the defendant was alleged to have earned revenue directly from the sale of the plaintiffs' data, bringing the allegations within the ambit of lost revenue. *See In re Zoom Video Commc'ns Inc. Priv. Litig.*, 525 F. Supp. 3d 1017, 1044 (N.D. Cal. 2021) (distinguishing *Facebook Internet Tracking* on that basis). Here, there is no allegation (nor could Plaintiffs make one in good faith) that Amplitude sold Plaintiffs' data or used it for advertising. *See Amgen Inc.*, 2024 WL 2873482, at *7. Nor do Plaintiffs allege a market for their DoorDash data. Put simply, Plaintiffs have not alleged that Amplitude was unjustly enriched.

In the FAC, Plaintiffs also added three new theories—that the SDK reduced their devices' storage space, used their cellular data, and used computer resources. *See* FAC ¶ 67(1)-(3). But Plaintiffs offer no supporting factual allegations about their device storage or data use, or how the SDK supposedly impacted the devices. Nor do they allege any costs they incurred to fix such issues. That is fatal, as Plaintiffs must allege that they incurred some costs to remedy the alleged improper access. *See Doe I*, 2024 WL 3490744, at *8–9 (reduced storage, disk space, and device performance not a CDAFA loss); *Bui-Ford v. Tesla, Inc.*, 2024 WL 694485, at *4–5 (N.D. Cal. Feb. 20, 2024) (plaintiffs that did not repair or replace batteries did not incur a CDAFA loss despite diminished battery allegations); *see also* Cal. Penal Code § 502(e)(1) ( "compensatory damages").

***No Allegation Regarding Access.*** The subsections of § 502(c) at issue require Plaintiffs to allege that Amplitude "accessed" their device. Cal. Penal Code §§ 502(c)(1)-(2), (c)(7). But instead of alleging facts supporting that element, the FAC simply quotes the statutory provisions. *See* FAC ¶ 65. If anything, the FAC repeatedly concludes (without facts) that the SDK *intercepted*

the information while it was "in transit," not that the SDK accessed Plaintiffs' devices. *See, e.g.*, *Meta Platforms, Inc. v. BrandTotal Ltd.*, 605 F. Supp. 3d 1218, 1260–62 (N.D. Cal. 2022) (collection and logging of data during "normal use" of website was not "access" under CDAFA). Nor have Plaintiffs alleged that Amplitude circumvented technical barriers (*i.e.*, hacked) their devices. *See Bui-Ford*, 2024 WL 694485, at *5 (plaintiff must plead circumvention of technical barriers for subsections of CDAFA that require access be "without permission").

***No Allegation Regarding Amplitude's Knowledge.*** Plaintiffs fail to allege that Amplitude "knowingly" accessed their devices "without permission."[17] Cal. Penal Code §§ 502(c)(1)-(2), (c)(7). In fact, the FAC is silent as to Amplitude's knowledge. Plaintiffs assert that Amplitude "contracted with DoorDash to provide its SDK" and "designed the SDK" to collect data without requiring consent from the users. FAC ¶ 21. But they do not allege that Amplitude knew DoorDash supposedly lacked permission to share their data—not surprising, given DoorDash's public Privacy Policy disclosing that information may be shared with analytics services. Nor have Plaintiffs plausibly alleged that Amplitude accessed their device with the intent to "wrongfully control or obtain money, property, or data," as required by § 502(c)(7). *See Local Ventures & Invs., LLC v. Open Found.*, 2019 WL 7877936, at *8–10 (N.D. Cal. May 13, 2019).

## IV.    CONCLUSION

For the foregoing reasons, Amplitude respectfully requests dismissal of the FAC.

Dated: January 7, 2025

Respectfully submitted,

LATHAM & WATKINS LLP

By: */s/ Michael H. Rubin*
Michael H. Rubin (Bar No. 214636)
 *michael.rubin@lw.com*
Melanie M. Blunschi (Bar No. 234264)

---

[17] CDAFA is a criminal statute, and "[a]bsent indication of contrary purpose in the language or legislative history [], [courts] ordinarily read a phrase in a criminal statute that introduces the elements of a crime with the word 'knowingly' as applying that word to each element." *United States v. Olson*, 856 F.3d 1216, 1220 (9th Cir. 2017) (citations omitted). Thus, to state a CDAFA claim, Plaintiffs must not only allege that Amplitude lacked permission, but that it *knew* it lacked permission. *Id.*

*melanie.blunschi@lw.com*
Francis J. Acott (Bar No. 331813)
*francis.acott@lw.com*
505 Montgomery St., Suite 2000
San Francisco, CA 94111
Telephone: +1.415.391.0600

*Attorneys for Defendant Amplitude, Inc.*