LATHAM & WATKINS LLP
Michael H. Rubin (Bar No. 214636)
 *michael.rubin@lw.com*
Melanie M. Blunschi (Bar No. 234264)
 *melanie.blunschi@lw.com*
Francis J. Acott (Bar No. 331813)
 *francis.acott@lw.com*
505 Montgomery St., Suite 2000
San Francisco, CA 94111
Telephone: +1.415.391.0600

*Attorneys for Defendant Amplitude, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| KYLE ATKINS and MICHAEL LUO, individually and on behalf of all others similarly situated,<br><br>          Plaintiffs,<br><br>     v.<br><br>AMPLITUDE, INC., a Delaware corporation,<br><br>          Defendant. | Case No. 3:24-cv-04913-RFL<br><br>**DEFENDANT AMPLITUDE, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS THE FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>Hearing: May 13, 2025<br>Time:  10:00 a.m.<br>Location: Courtroom 15—18th Floor<br>Judge: Hon. Rita F. Lin |

## TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................................ 1

II.  ARGUMENT .................................................................................................................... 2

    A.  Plaintiffs Lack Article III Standing ........................................................................ 2

        1.  Plaintiffs Cannot Demonstrate A Privacy Injury ....................................... 2

        2.  Plaintiffs Consented To DoorDash's Collection And Sharing Of Their Information With "Analytics Services" Like Amplitude .............................................................................................. 3

        3.  Plaintiffs Do Not Allege A Concrete, Particularized Harm Traceable To Amplitude On The Face Of The Complaint ....................... 4

        4.  Plaintiffs Lack Standing To Pursue Injunctive Relief .............................. 5

    B.  Plaintiffs Have Not Stated Any Claim Against Amplitude .................................... 5

        1.  Plaintiffs Cannot State Any Claim Because They Consented To The Collection And Sharing Of Their Information With "Analytics Services" ........................................................ 5

        2.  Plaintiffs Do Not State A Claim For Wiretapping ................................... 5

        3.  Plaintiffs Do Not State A Pen Register Claim .......................................... 8

        4.  Plaintiffs Do Not State A CDAFA Claim ................................................ 9

III.  CONCLUSION ............................................................................................................... 10

**Table of Authorities**

**CASES**

*Brown v. Google, LLC*,
   525 F. Supp. 3d 1049 (N.D. Cal. 2021) ......................................................................... 4, 8, 10

*Bui-Ford v. Tesla, Inc.*,
   2024 WL 694485 (N.D. Cal. Feb. 20, 2024) ........................................................................ 10

Campbell v. Facebook,
   77 F. Supp. 3d 836 (N.D. Cal. 2014) ..................................................................................... 4

*Cottle v. Plaid*,
   536 F. Supp. 3d 461 (N.D. Cal. 2021) .................................................................................. 10

*Doe I v. Google LLC*,
   741 F. Supp. 3d 828 (N.D. Cal. 2024) ....................................................................... 6, 8, 10

*Doe v. Fullstory, Inc.*,
   712 F. Supp. 3d 1244 (N.D. Cal. 2024) .................................................................................. 4

*Ellenberger v. Alphabet, Inc.*,
   2021 WL 4808590 (N.D. Cal. July 19, 2021) ....................................................................... 10

*Graham v. Noom, Inc.*,
   533 F. Supp. 3d 823 (N.D. Cal. 2021) .................................................................................... 5

*Greenley v. Kochava, Inc.*,
   684 F. Supp. 3d 1024 (S.D. Cal. 2023) ....................................................................... 7, 9, 10

*Heiting v. Pharmaceuticals USA, Inc.*, 7
   09 F. Supp. 3d 1007 (C.D. Cal. 2023) .................................................................................... 7

*hiQ Labs, Inc. v. LinkedIn Corp.*,
   31 F. 4th 1180 (9th Cir. 2022) ............................................................................................... 10

*In re Carrier IQ, Inc.*,
   78 F. Supp. 3d 1051 (N.D. Cal. 2015) .................................................................................. 10

*In re Facebook, Inc. Consumer Priv. User Profile Litig.*,
   402 F. Supp. 3d 767 (N.D. Cal. 2019) .................................................................................... 4

*In re Google Assistant Priv. Litig.*,
   457 F. Supp. 3d 797 (N.D. Cal. 2020) .................................................................................... 8

*In re Meta Healthcare Pixel*
   713 F. Supp. 3d 650 (N.D. Cal. 2024) ............................................................................. 9, 10

*Khoja v. Orexigen Therapeutics, Inc.*,
    899 F.3d 988 (9th Cir. 2018) .................................................................................... 5

*Konop v. Hawaiian Airlines, Inc.*,
    302 F.3d 868 (9th Cir. 2002) .................................................................................... 7

*Mastel v. Miniclip SA*,
    549 F. Supp. 3d 1129 (E.D. Cal. 2021) ...................................................................... 8

*Rodriguez v. Autotrader.com, Inc.*,
    2025 WL 65409 (C.D. Cal. Jan. 8, 2025) .................................................................. 9

*Rodriguez v. Google LLC*,
    2021 WL 2026726 (N.D. Cal. May 21, 2021) ............................................................ 4

*Silver v. Stripe Inc.*,
    2021 WL 3191752 (N.D. Cal. July 28, 2021) ......................................................... 3, 5

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021) ................................................................................................ 1

*Valenzuela v. Nationwide Mut. Ins. Co.*,
    686 F. Supp. 3d 969 (C.D. Cal. 2023) ...................................................................... 7

*Yockey v. Salesforce, Inc.*,
    745 F. Supp. 3d 945 (N.D. Cal. 2024) ...................................................................... 7

*Yoon v. Lululemon USA, Inc.*,
    549 F. Supp. 3d 1073 (C.D. Cal. 2021) ..................................................................... 7

**STATUTES**

18 U.S.C. § 2511 ............................................................................................................ 8

Cal. Penal Code § 502 .................................................................................................. 10

**RULES**

Fed. R. Civ. P. 12 ...................................................................................................... 3, 5

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

iii

AMPLITUDE'S REPLY ISO MOT. TO DISMISS
FIRST AM. CLASS ACTION COMPL.
CASE NO. 3:24-cv-04913-RFL

## I.    INTRODUCTION

Plaintiffs' Opposition (Dkt. 33) resorts to rhetorical gimmicks and fearmongering in an effort to avoid dismissal.[1] Plaintiffs abandon multiple claim theories, add entirely new ones unsupported by the FAC, ask the Court to create new law, and misstate their own allegations and the facts. This scattershot approach is designed to distract from the fundamental flaw in their case: that they agreed to DoorDash's Privacy Policy. Plaintiffs do not dispute that agreement, or that it disclosed the very collection and sharing of information with "analytics services" (like Amplitude) they complain about here. *That alone warrants dismissal*—it defeats any privacy injury and all of their claims. Plaintiffs cannot bury their head in the sand and conjure up hyperbolic assertions about "digital dossiers," selling data to "ad networks," and using Plaintiffs' data to "train AI models" to avoid dismissal: Amplitude does none of those things. Amplitude is an analytics service provider that simply allows customers (like DoorDash) to analyze *their own data*. Plaintiffs' truly shameless effort to spin Amplitude's provision of run-of-the-mill analytics services as a privacy violation while actively ignoring their own consent to the arrangement should be rejected.

*First*, Plaintiffs lack Article III standing. Plaintiffs try to lower their burden by arguing that the Court need not consider whether they suffered a privacy intrusion, but they misstate the law and ignore Supreme Court precedent requiring them to identify a historical privacy tort analogue. *See TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021). Plaintiffs do not (and cannot) explain how they had a reasonable expectation of privacy when they agreed to DoorDash's Privacy Policy.

*Second*, Plaintiffs fail to plead facts sufficient to sustain any of their claims. Beyond their consent to the very conduct at issue, Plaintiffs' claims suffer from incurable pleading deficiencies.

No Wiretapping. Plaintiffs abandon their claims that Amplitude made an "unauthorized connection" with their devices and collected their "specific input events" (*e.g.*, page views). Their remaining theory that Amplitude collected and used unspecified "search terms" fails multiple times over, including because Amplitude was a party to the communication.

No Pen Register Under CIPA. Plaintiffs abandon their claim that Amplitude installed the SDK, arguing instead that it *used* the SDK. But the result is the same: the FAC still alleges that

---

[1] All defined terms have the same meaning as in the Motion to Dismiss (Dkt. 30) ("Mot.").

*DoorDash* used the SDK, and Plaintiffs still fail to explain how the SDK is a pen register.

No CDAFA Violation. Plaintiffs abandon their unjust enrichment theory of CDAFA loss, and their device storage and cellular data theories are conclusory and insufficient. Plaintiffs also fail to explain how Amplitude "accessed" their devices or allege that it knew it lacked consent.

## II.    ARGUMENT

### A.    Plaintiffs Lack Article III Standing

#### 1.    Plaintiffs Cannot Demonstrate A Privacy Injury

Plaintiffs try to lower their burden of demonstrating an Article III privacy harm by arguing that the mere interception of a communication suffices for standing under Article III—regardless of whether they had any expectation of privacy. Their argument fails: Plaintiffs concede that Article III requires an injury analogous to a "harm traditionally recognized as providing a basis for a lawsuit," Opp. at 5 (citing *TransUnion*, 594 U.S. at 417)), and that they claim a privacy harm, but then argue that the Court can ignore whether this case *actually* involves a historically recognized privacy violation. They cite no case with that holding.[2] Opp. at 5-6. And the cases they do cite show that standing was predicated on an underlying "[v]iolation[] of the right to privacy." *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1117–18 (9th Cir. 2020) (analogizing to unreasonable intrusion upon seclusion claim); *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020) (plaintiffs "adequately alleged harm to [] privacy interests").

Plaintiffs must establish that this case involves a violation of traditionally-recognized privacy rights. Plaintiffs cannot rely solely on a violation of their statutory rights; they must identify a "close historical or common-law analogue for their asserted injury."[3] *TransUnion*, 594 U.S. at 424, 426 (rejecting notion that plaintiff "automatically satisfies" Article III when they have "a statutory right"). The Opposition does not even try to identify such a claim (nor could it).

---

[2] Indeed, the only post-*TransUnion* decision Plaintiffs cite in their standing section is *Hammerling v. Google, LLC*, 2024 WL 937247 (9th Cir. Mar. 5, 2024), which they argue is distinguishable as a non-standing decision. Opp. at 5. But *Hammerling* negates any expectation of privacy where, as here, the data collection practices are "expressly disclosed." 2024 WL 937247, at *3.

[3] Plaintiffs' invented distinction between injuries similar in "kind" versus "degree" is a red herring. Opp. at 6. Article III does not require an identical cause of action at common law, but that "is not an open-ended invitation" to avoid its injury-in-fact requirement. *TransUnion*, 594 U.S. at 424-25.

Because the closest analogues are intrusion upon seclusion and disclosure of private information, Plaintiffs must demonstrate (and they do not) that they had a "reasonable expectation of privacy" and that any intrusion was "highly offensive."[4] *In re Facebook Internet Tracking*, 956 F.3d at 601.

2.   Plaintiffs Consented To DoorDash's Collection And Sharing Of Their Information With "Analytics Services" Like Amplitude

Tellingly, Plaintiffs do not dispute their agreement to DoorDash's Privacy Policy or what it discloses.[5] Plaintiffs thus concede that they lacked any reasonable expectation (of privacy or otherwise) that information disclosed in the policy would not be shared with Amplitude, much less that such a disclosure could be a "highly offensive" intrusion.

Instead, Plaintiffs quibble with the policy's language, arguing that it did not "explicitly notify" them about Amplitude or the "specific" practice at issue. Opp. at 8. That is sophistry. The Privacy Policy disclosed the very conduct at issue: it stated that DoorDash may share Plaintiffs' information with its "service providers," including those providing "analytics services that help [DoorDash] understand usage of [its] Services." Cramer Decl. (Dkt. 30-4), Ex. A at § V. It went on to identify the specific information Plaintiffs allege was collected here, and explained that the "service providers may access, store and process your personal information." *Id.* That Amplitude was not specifically identified makes no difference because the disclosure (and thus Plaintiffs' consent) related to the *act* itself. Plaintiffs' argument was rejected in *Silver v. Stripe Inc.*, where the court dismissed similar claims against Stripe based on Instacart's disclosure that unspecified "partners" may "collect information" about users' online activity. 2021 WL 3191752, at *4 (N.D. Cal. July 28, 2021). And even the case law Plaintiffs cite frames the issue as whether the plaintiff consented "to the particular conduct, or to substantially the same conduct," *Calhoun v. Google,*

---

[4] Courts repeatedly hold that traditional common-law privacy injuries must occur in a manner "highly offensive to a reasonable person." *See, e.g.*, *Phillips v. U.S. Customs & Border Protection*, 74 F.4th 986, 996 (9th Cir. 2023) (access not "highly offensive to a reasonable person"); *Ji v. Naver Corp.*, 2023 WL 6466211, at *4 (N.D. Cal. Oct. 3, 2023) ("reasonable expectations of privacy" and "highly offensive" intrusion were "the threshold elements required to confer standing under a privacy harm theory"); *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1049 (N.D. Cal. 2022) (analyzing whether disclosure would be "highly offensive to a reasonable person").

[5] Plaintiffs do not directly respond to the factual standing challenge, but try to address the arguments under Rule 12(b)(6) (Opp. at 6-9) in an effort to avoid their burden for standing.

*LLC*, 113 F.4th 1141, 1147 (9th Cir. 2024), and here the answer is clearly yes.

Plaintiffs' suggestion that the Privacy Policy did not "put a reader on notice of Amplitude's conduct" strains credibility. Opp. at 8. Plaintiffs do not identify a single case finding similar disclosures insufficient, much less supporting their radical assertion that the policy needed to state that the sharing of data with service providers would involve "real-time interceptions of a user's communications and location." *Id.* Plaintiffs cite *Campbell v. Facebook* (Opp. at 7), but that case is distinguishable: the court held that there was a disconnect between the disclosure (that Facebook "'may use the information we received about you' for 'data analysis'") and the claims (related to "scanning of the content of [] messages"). 77 F. Supp. 3d 836, 847 (N.D. Cal. 2014).[6] In contrast, the policy here specifically discloses that the very information at issue (*e.g.*, geolocation, device, and account information) would be collected "automatically from [users'] device[s]" (including via "software development kits"), and that "service providers" may receive the information.

Plaintiffs offer a grab-bag of other arguments but none have merit. Plaintiffs cannot invent an Article III injury by claiming they did not read the Privacy Policy and "had no idea" Amplitude received their information. Opp. at 7. Nor can Plaintiffs duck the evidentiary record by arguing that their consent to the Privacy Policy is a "defense on the merits," not a standing issue. *Id.* at 4. Plaintiffs must establish an actual privacy injury to proceed in federal court (*see* Section II.A.1), and they lack a "reasonable expectation of privacy" because they agreed to the Privacy Policy.

### 3. Plaintiffs Do Not Allege A Concrete, Particularized Harm Traceable To Amplitude On The Face Of The Complaint

The Opposition does not even try to defend the FAC's deficient allegations, instead relying entirely on the flawed argument that they do not need to allege a privacy harm in the first place (*see supra* Section II.A.1). Even without the Privacy Policy, Plaintiffs would still lack standing because they do not plausibly allege that they suffered a concrete privacy harm. Mot. at 7-9.

---

[6] The other cases Plaintiffs cite are similarly distinguishable. Several cases found factual disputes based on other, potentially conflicting disclosures. *See Calhoun*, 113 F.4th at 1150–51; *Brown v. Google, LLC*, 525 F. Supp. 3d 1049, 1064 (N.D. Cal. 2021); *Rodriguez v. Google LLC*, 2021 WL 2026726, at *4 (N.D. Cal. May 21, 2021); *Doe v. FullStory, Inc.*, 712 F. Supp. 3d 1244, 1255 (N.D. Cal. 2024). And the disclosure in *In re Facebook, Inc. Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 793–94 (N.D. Cal. 2019), post-dated plaintiffs' account creation.

4.    Plaintiffs Lack Standing To Pursue Injunctive Relief

Plaintiffs do not identify any future, imminent harm. They speculate that their information will be collected *if* they use DoorDash's app again, Opp. at 6, but they do not even allege that they intend to use the app again. *See Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 836 (N.D. Cal. 2021).

**B.    Plaintiffs Have Not Stated Any Claim Against Amplitude**

1.    Plaintiffs Cannot State Any Claim Because They Consented To The Collection And Sharing Of Their Information With "Analytics Services"

Plaintiffs argue that the Privacy Policy is insufficient to establish consent and that the Court cannot consider the DoorDash materials on this Motion. Opp. at 6-8. Plaintiffs' arguments about the scope of the policy are meritless and were largely rejected in *Silver*. *See* 2021 WL 3191752, at *4 (dismissing similar claims against Stripe). Plaintiffs agreed through the policy to the collection and sharing of their personal and device information with "analytics services" like Amplitude. *See* Section II.A.2. Their argument that the policy needed to specifically identify Amplitude by name is unsupported and, in any event, would upend the entire software industry and economy.

This Court can consider the Privacy Policy and the DoorDash app welcome screen and sign up page in ruling on the Rule 12(b)(6) motion. Plaintiffs do not oppose Amplitude's Request for Judicial Notice. Dkt. 34. Because the DoorDash materials are incorporated by reference in the FAC, *see* Dkt. 31, the Court "may assume [their] contents are true" on this Motion. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1003 (9th Cir. 2018). Privacy policies can establish consent where, as here, they disclose the challenged conduct. *See Silver*, 2021 WL 3191752, at *2.

2.    Plaintiffs Do Not State A Claim For Wiretapping

a.    *Plaintiffs Do Not Allege That Amplitude Wiretapped Their Phones Or Eavesdropped On Their Communications Under CIPA*

Plaintiffs abandon their claim that the SDK "made an unauthorized connection" with their devices (Mot. at 12) and replace it with a new claim for "use" of intercepted communications under the third clause of § 631(a). Opp. at 9. The result is the same. Their § 631(a) claim still fails to allege that Amplitude (1) engaged in willful conduct, (2) is a third-party eavesdropper, (3) intercepted any "contents" while (4) "in transit," or (5) "used" their communications.

***No Willful Conduct.*** Plaintiffs argue that Amplitude "designed its SDK" so that it could "intercept" communications shared with "an app in real time." Opp. at 10 (citing FAC ¶ 21). But that does not suggest Amplitude "consciously and deliberately" received their information without consent. *Doe I v. Google LLC*, 741 F. Supp. 3d 828, 840 (N.D. Cal. 2024). Instead, *DoorDash* embedded the SDK in its app (FAC ¶¶ 21, 34, 38), and Plaintiffs consented to the Privacy Policy.

***No Eavesdropping.*** Plaintiffs argue that Amplitude should not be considered a "party" to the communication because Amplitude was supposedly "capable of using the data it obtains for its own purposes." Opp. at 11. Plaintiffs rely on the so-called "capability" test, which asks whether the third party (Amplitude) "has the *capability* to use its record of the interaction for any other purpose . . . other than to furnish information relating to those communications to" a party (DoorDash). *Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 745 (N.D. Cal. 2023). Plaintiffs fail to address the proper question: whether Amplitude acted as an extension of DoorDash. *See* Mot. at 12-13 (citing cases). Under that framework, Amplitude is considered a party because the FAC reflects that Amplitude merely performed functions for DoorDash. And Plaintiffs fail under their "capability" test. They argue that Amplitude "use[s] what it learns from intercepted communications for its own purposes," including "improving [its] analytics offerings, sharing the data with third-party advertisers, and training its AI." Opp. at 11 (citing FAC ¶¶ 29-31). Plaintiffs appear to deliberately mischaracterize Amplitude's services (without factual basis): Amplitude is in fact prohibited "from utilizing the personal data it receives from customers for any purpose other than providing the services identified in those agreements." Wang Decl. (Dkt. 30-7) ¶ 6. But even at face value, their allegations are insufficient to render Amplitude an eavesdropper. The FAC does not allege that Amplitude uses Plaintiffs' data to "improv[e]" offerings. And while the FAC alleges that Amplitude "has created a platform that allows the sharing of the data" through integrations with marketing and advertising platforms (tools for Amplitude's customers to use) (*id.* ¶ 30), and has "developed artificial intelligence tools to analyze the data" (*id.* ¶ 31), there is no allegation that Amplitude uses the data for its own purposes (it does not), much less that Amplitude sells data or uses it for advertising (it does not). Nor does Amplitude even have the ability to do so—its Data Processing Addendum states that "Amplitude shall not retain, use, or disclose Personal Data for

any purpose other than providing the Amplitude Services under the Terms."[7] And Plaintiffs do not even allege that Amplitude provided any of these services to DoorDash.

*No "Content" at Issue.*  Plaintiffs concede that they cannot state a wiretapping claim based on their "specific input events" (FAC ¶ 71), leaving their "searches within the app" as the only "content." Opp. at 12-13. But the FAC does *not* allege any search terms—contrary to Plaintiffs' assertion, the FAC describes "thermometer" and "halal burgers" as "restaurants and products" that Plaintiffs "viewed," not searched. FAC ¶¶ 34, 38. Products viewed in an app are not "contents" of a communication (as Plaintiffs concede in dropping their claim based on page views). *See Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082–83 (C.D. Cal. 2021). And the FAC's references to unspecified search terms are insufficient to plead "content." Mot. at 15. Plaintiffs claim they need not identify "specific" searches, Opp. at 13, but they must allege facts supporting a "contextual, case-specific analysis" that searches are "contents."[8] *Hammerling*, 615 F. Supp. 3d at 1092. They do not, and their theory is implausible in a case about a food delivery app. Mot. at 14.

*No Allegations About Communications "In Transit."* Plaintiffs argue that the FAC's references to "real time" interception are sufficient, and that cases rejecting such conclusory allegations are "inconsistent" with their pleading burden. Opp. at 13-14. Plaintiffs are wrong on the law,[9] and they do not plausibly allege that communications were "stop[ped], seize[d], or interrupt[ed] in progress or course before arrival." *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868,

---

[7] Data Processing Add. for Terms of Service (June 4, 2024), https://amplitude.com/terms/dpa. Plaintiffs try to cherry-pick Amplitude's Master Service Agreement to suggest that Amplitude nevertheless may use data for its own purposes, Opp. at 12, but that is contradicted by the express terms of the Data Processing Addendum for Terms of Service.

[8] This is nothing like the out-of-District cases Plaintiffs cite, which involved allegedly sensitive personal information. *See Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1035, 1047 (S.D. Cal. 2023) (data broker subject to FTC investigation allegedly collected geolocation showing visits to "sensitive locations," payment methods, purchase decisions, and "customer emails," and shared that information with third parties for advertising); *Valenzuela v. Nationwide Mut. Ins. Co.*, 686 F. Supp. 3d 969, 972–73 (C.D. Cal. 2023) (insurer collected "sensitive personal data").

[9] The cases Plaintiffs cite involved more detailed allegations than those here. *See, e.g.*, *Yockey v. Salesforce, Inc.*, 745 F. Supp. 3d 945, 952 (N.D. Cal. 2024) (allegations about "transient electronic storage"). And to the extent courts have split on the types of allegations sufficient to satisfy the "in transit" requirement, the approach recognized by *Heiting v. Pharms. USA, Inc.* is the better approach as it avoids "parroting" the statute. 709 F. Supp. 3d 1007, 1009 (C.D. Cal. 2023).

878 (9th Cir. 2002) (citation omitted). The SDK is incorporated into DoorDash's app (FAC ¶¶ 34, 38), so it makes no sense that it would intercept a communication "before it reache[s]" the DoorDash app. *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1137 (E.D. Cal. 2021).

   ***No "Use" of Communications.***   The FAC did *not* allege a claim for "use" of intercepted communications under the third clause of § 631(a), and the allegations Plaintiffs cite concern whether Amplitude is an extension of DoorDash. Opp. at 9 (citing FAC ¶¶ 75-76)). But even if the FAC did allege a "use" claim, it still fails because Plaintiffs have not alleged the required predicate violation under the second clause of § 631(a), *see In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 827 (N.D. Cal. 2020), nor that Amplitude actually used *Plaintiffs'* intercepted information.

b.     *Plaintiffs Allege That DoorDash Consented To The Use Of Amplitude's SDK, Barring Their Federal Wiretapping Claim*

   Plaintiffs argue that DoorDash did not actually consent to the conduct here because it did not agree to *wiretapping*. Opp. at 14. But Plaintiffs cannot cite a single allegation in support of this argument. The FAC alleges only that "Amplitude contracted with DoorDash to provide its SDK to be embedded in the DoorDash [] app," FAC ¶ 21, and DoorDash's Privacy Policy reflects that DoorDash agreed to share specific information with service providers like Amplitude.[10] *See* Section II.A.2. And Plaintiffs cannot invoke the crime-tort exception under 18 U.S.C. § 2511(2)(d), *see* Opp. at 15, because they do not allege that Amplitude used their data beyond its contracted services, let alone that it acted "for the purpose of" committing a CDAFA violation (which Plaintiffs have not even alleged, *infra* Section II.B.4). *Doe I*, 741 F. Supp. 3d at 843 n.4.

3.     Plaintiffs Do Not State A Pen Register Claim

   The Opposition fails to explain how Amplitude's SDK is a "pen register" under § 638.51. *First*, Plaintiffs concede that Amplitude did not "install" the SDK in the DoorDash app, arguing only that Amplitude "used" the pen register. Opp. at 15. But their "use" theory fares no better. At best, the FAC suggests that Amplitude developed the SDK and receives data from DoorDash via the SDK. *See* FAC ¶¶ 22, 34, 38. But Plaintiffs do not dispute that *DoorDash* operated the app,

---

[10] Plaintiffs ignore the cases cited by Amplitude supporting the dismissal of this claim. Mot. at 15. And the single case they cite is distinguishable because the plaintiff alleged "further use" of the data, unlike here. *Brown*, 525 F. Supp. 3d at 1067.

not Amplitude. *Id.* Plaintiffs' conclusory allegations about Amplitude "collect[ing] data" are insufficient to establish that Amplitude "used" the SDK when it did not operate the app. *Id.* ¶ 17.

*Second*, Plaintiffs do not even attempt to identify an injury they suffered due to DoorDash's use of the SDK in its app, as required for statutory standing. Mot. at 17. Plaintiffs offer only a two-sentence footnote stating that Amplitude's statutory argument is "factually incorrect," Opp. at 17 n.2, without addressing the Privacy Policy or pleading a privacy harm (*see* Section II.A).

*Third*, Plaintiffs fail to explain how the SDK meets the statutory definition of a pen register. Plaintiffs do not even attempt to defend their conclusory and circular allegations that only parrot the statutory language. Mot. at 17. Nor is there any "inconsisten[cy]" in Amplitude's treatment of Plaintiffs' pen register and wiretapping claims, as they suggest. Opp. at 16. The Opposition states that Plaintiffs' wiretapping claim is based on Plaintiffs' "searches within the app," Opp. at 12, whereas their pen register claim is based on their geolocation information, mobile advertising IDs, and device and operating system information, *id.* at 16-17. There is no overlap in the information underlying the pen register and wiretapping claims. And Plaintiffs do not plausibly allege that geolocation or device information was collected *separate* from a communication, as required by § 638.50(b).[11] To the extent there is any inconsistency, it is between the FAC and the Opposition.[12]

### 4. Plaintiffs Do Not State A CDAFA Claim

The Opposition fails to salvage the FAC's deficient allegations about Plaintiffs' losses or explain how Amplitude accessed their devices or knew Plaintiffs supposedly did not consent.

***No Cognizable Loss.*** Plaintiffs abandon their original unjust enrichment theory of CDAFA loss, relying instead on the FAC's new, conclusory theories that the SDK reduced device storage space, and used cellular data and computer resources. *See* Opp. at 17-18. Notably, Plaintiffs do not identify *any* costs incurred to remedy the alleged improper access. Instead, they argue that their allegations are sufficient under *In re Meta Healthcare Pixel*, *id.*, but they do not allege any

[11] In *Greenley* (cited Opp. at 16), the court noted that § 638.50 "is specific as to the type of data a pen register collects." 684 F. Supp. 3d at 1050. Because the defendant did not challenge the addressing or signaling allegations, the court did not rule on that element. *See also Rodriguez v. Autotrader.com, Inc.*, 2025 WL 65409, at *5 (C.D. Cal. Jan. 8, 2025) (similar).

[12] The § 638.51 claim in the FAC is based on geolocation and "personal information" (FAC ¶ 59), not mobile advertising IDs or device and operating system information (Opp. at 16-17).

"measurable impact on their devices," or even explain how the SDK supposedly used storage, resources, or data. 713 F. Supp. 3d 650, 658 (N.D. Cal. 2024). Nor is it even plausible that the SDK "would result in any cognizable reduction in storage, disk space, or performance" apart from the app itself. *Doe I*, 741 F. Supp. 3d at 846 (rejecting similar theories about website cookies). And there is no legal basis for Plaintiffs' request to expand CDAFA loss beyond the analogous federal Computer Fraud and Abuse Act—they acknowledge that courts construe the loss requirements under the CDAFA and CFAA the same (Opp. at 18), and their textual argument holds no water.[13]

***No Allegation Regarding Access.*** Plaintiffs argue that they need not plead circumvention of a technical barrier.[14] Opp. at 20. But a lack of permission is required to establish "access," and Plaintiffs have not alleged (and cannot allege) that Amplitude lacked permission where, as here, they agreed to the Privacy Policy and DoorDash itself installed the SDK. *Supra* Section II.B.1.

***No Allegation Regarding Amplitude's Knowledge.*** Plaintiffs cite nothing in suggesting that knowledge is not required for each element under the criminal CDAFA statute, and otherwise ignore the impact of the Privacy Policy on Amplitude's knowledge. Opp. at 20. And they concede an element of their § 502(c)(7) claim by failing to respond to Amplitude's argument about the lack of allegations indicating intent to "wrongfully control or obtain money, property, or data." Mot. at 20; *see also Ellenberger v. Alphabet, Inc.*, 2021 WL 4808590, at *3 (N.D. Cal. July 19, 2021).

## III.    CONCLUSION

For the foregoing reasons, Amplitude respectfully requests dismissal of the FAC.

---

[13] While "damage or loss" is not defined in the CDAFA, recovery is limited to "[c]ompensatory damages" absent willful violations. Cal. Penal Code § 502(e)(1). The only material difference that courts identify between the loss provisions is the CFAA's $5,000 minimum requirement, which is not expressly imposed on the CDAFA. *See, e.g.*, *Bui-Ford v. Tesla, Inc.*, 2024 WL 694485, at *6 (N.D. Cal. Feb. 20, 2024); *Cottle v. Plaid*, 536 F. Supp. 3d 461, 487–88 (N.D. Cal. 2021).

[14] "[C]ourts in this District have largely adopted this 'overcoming technical or code based barriers' test as the operative test to determine if Defendant acted without permission." *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1099 (N.D. Cal. 2015); *see also hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1201 (9th Cir. 2022) (CFAA). Indeed, all but one of the cases Plaintiffs cite made a finding about overcoming a technical "barrier." *See In re Carrier IQ,* 78 F. Supp. 3d at 1101; *Brown*, 525 F. Supp. 3d at 1075; *Greenley*, 684 F. Supp. 3d at 1049.

Dated: March 4, 2025

Respectfully submitted,

LATHAM & WATKINS LLP

By: /s/ Michael H. Rubin
Michael H. Rubin (Bar No. 214636)
michael.rubin@lw.com
Melanie M. Blunschi (Bar No. 234264)
melanie.blunschi@lw.com
Francis J. Acott (Bar No. 331813)
francis.acott@lw.com
505 Montgomery St., Suite 2000
San Francisco, CA 94111
Telephone: +1.415.391.0600

*Attorneys for Defendant Amplitude, Inc.*