LATHAM & WATKINS LLP
Michael H. Rubin (Bar No. 214636)
 *michael.rubin@lw.com*
Melanie M. Blunschi (Bar No. 234264)
 *melanie.blunschi@lw.com*
Francis J. Acott (Bar No. 331813)
 *francis.acott@lw.com*
505 Montgomery St., Suite 2000
San Francisco, CA 94111
Telephone: +1.415.391.0600

*Attorneys for Defendant Amplitude, Inc.*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| KYLE ATKINS and MICHAEL LUO, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AMPLITUDE, INC., a Delaware corporation,<br><br>Defendant. | Case No. 3:24-cv-04913-RFL<br><br>**DEFENDANT AMPLITUDE, INC.'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing: June 3, 2025<br>Time:  10:00 a.m.<br>Location: Courtroom 15—18th Floor<br>Judge: Hon. Rita F. Lin |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

### NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION

### TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on June 3, 2025 at 10 a.m., or as soon thereafter as the parties may be heard, before the Honorable Rita F. Lin, United States District Court, Courtroom 15, 18th Floor, 450 Golden Gate Ave., San Francisco, California, Defendant Amplitude, Inc. ("Amplitude") will and hereby does move to compel arbitration of the claims brought against it by Plaintiffs and to stay this action pending resolution of arbitration.

Amplitude respectfully submits this Motion pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq*. Plaintiffs entered into valid and enforceable arbitration agreements with non-party DoorDash, Inc. ("DoorDash") when they used the DoorDash app and agreed to the DoorDash Terms and Conditions. That arbitration agreement applies here and Amplitude is entitled to enforce it under the doctrine of equitable estoppel.

This Motion is based on the accompanying Memorandum of Points and Authorities, the Declaration of Brian Cramer, the pleadings, records, and papers on file, and such argument and evidence as may be presented in connection with the hearing on this Motion.

Amplitude previously filed a Motion to Dismiss the First Amended Complaint. Dkt. 30. That Motion is fully briefed and noticed for hearing on May 13, 2025. *See* Dkts. 33, 35. For the sake of efficiency and to conserve judicial resources, Amplitude believes that the Motion to Compel Arbitration should be heard on the same day as the Motion to Dismiss, or before should the Court wish. Because the Court's scheduling notes state that May 13, 2025 is currently closed for further setting, Amplitude intends to separately request that the hearing on the Motion to Dismiss be reset.

### STATEMENT OF RELIEF SOUGHT

Amplitude seeks an order compelling Plaintiffs to arbitrate their claims on an individual basis and staying this action pending resolution of that arbitration for the reasons set forth herein.

AMPLITUDE'S MOTION TO
COMPEL ARBITRATION
CASE NO. 3:24-CV-04913-RFL

Dated: April 8, 2025

Respectfully submitted,

LATHAM & WATKINS LLP

By  /s/ *Michael H. Ruibin*
  Michael H. Rubin (Bar No. 214636)
   *michael.rubin@lw.com*
  Melanie M. Blunschi (Bar No. 234264)
   *melanie.blunschi@lw.com*
  Francis J. Acott (Bar No. 331813)
   *francis.acott@lw.com*
  505 Montgomery St., Suite 2000
  San Francisco, CA 94111
  Telephone: +1.415.391.0600

  *Attorneys for Defendant Amplitude, Inc.*

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ........................................................................................................... 1

II. BACKGROUND .............................................................................................................. 2

    A. DoorDash's Terms & Conditions Include A Binding Arbitration
       Agreement............................................................................................................... 2

    B. Plaintiffs Agreed to Arbitrate This Dispute On An Individual Basis ................... 4

    C. Notwithstanding The Arbitration Agreement, Plaintiffs Filed Suit
       And Asserted Claims Related To Their Use Of DoorDash ................................. 5

III. LEGAL STANDARD........................................................................................................ 6

IV. ARGUMENT .................................................................................................................... 7

    A. Plaintiffs Assented To DoorDash's Binding Arbitration
       Agreement, Including Its Delegation Clause ........................................................ 8

    B. Plaintiffs Clearly And Unmistakably Delegated Any Arbitrability
       Questions To The Arbitrator .................................................................................. 9

    C. Even If There Were No Delegation Clause, The Court Should Still
       Find That The Arbitration Agreement Encompasses Plaintiffs'
       Claims ................................................................................................................. 10

    D. Amplitude Is Entitled To Enforce Plaintiffs' Arbitration
       Agreements Under California's Doctrine Of Equitable Estoppel....................... 11

       1. Plaintiffs' Claims Against Amplitude Are Intertwined With
          DoorDash's T&C And Privacy Policy....................................................... 12

       2. Plaintiffs Allege That DoorDash And Amplitude Engaged
          In Concerted Conduct That Invaded Their Privacy ............................... 14

V. CONCLUSION............................................................................................................... 15

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

AMPLITUDE'S MOTION TO
COMPEL ARBITRATION
CASE NO. 3:24-cv-04913-RFL

# TABLE OF AUTHORITIES

**Cases**

*Alkutkar v. Bumble Inc.*,
2022 WL 16973253 (N.D. Cal. Nov. 16, 2022) ........................................................................ 7

*Arkin v. DoorDash*,
2020 WL 4937825 (E.D.N.Y. Aug. 24, 2020) ........................................................................ 8, 9

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) .................................................................................................................. 6

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022) ..................................................................................................... 8

*Brennan v. Opus Bank*,
796 F.3d 1125 (9th Cir. 2015) ................................................................................................... 6

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
207 F.3d 1126 (9th Cir. 2000) ................................................................................................. 11

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985) .................................................................................................................. 6

*Dekker v. Vivint Solar, Inc.*,
611 F. Supp. 3d (N.D. Cal. 2019), *vacated on other grounds*, 479 F. Supp. 3d
834 (N.D. Cal. 2020) ................................................................................................................. 9

*Duval v. Costco Wholesale Corp.*,
2023 WL 3852694 (N.D. Cal. June 5, 2023) ............................................................................ 6

*Fli-Lo Falcon, LLC v. Amazon.com, Inc.*,
97 F.4th 1190 (9th Cir. 2024) ............................................................................................... 6, 10

*Franklin v. Cmty. Reg'l Med. Center*,
998 F.3d 867 (9th Cir. 2021) ............................................................................................... 11, 12

*Fries v. Wells Fargo Bank*,
2024 WL 1816931 (C.D. Cal. Feb. 22, 2024) .......................................................................... 7

*Ghazazideh v. Coursera, Inc.*,
737 F. Supp. 3d 911 (N.D. Cal. 2024) ...................................................................................... 7

*Goldman v. KPMG, LLP*,
173 Cal. App. 4th 209 (2009) .................................................................................................. 12

*Green Tree Fin. Corp.-Ala v. Randolph*,
531 U.S. 79 (2000) .................................................................................................................... 7

*Hansen v. LMB Mortg. Servs., Inc.*,
   1 F.4th 667 (9th Cir. 2021) ................................................................................... 7

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
   586 U.S. 63 (2019) ........................................................................................... 6, 9

*Herrera v. Cathay Pac. Airways Ltd.*,
   104 F.4th 702 (9th Cir. 2024) ......................................................................... 2, 13

*Hunt v. Meta Platforms, Inc.*,
   735 F. Supp. 3d 1133 (N.D. Cal. 2024) ................................................... 11, 13, 14

*In re Pac. Fertility Ctr. Litig.*,
   814 F. App'x 206 (9th Cir. 2020) .......................................................................... 12

*In re Uber Text Messaging*,
   2019 WL 2509337 (N.D. Cal. Jun. 18, 2019) ......................................................... 6

*Keebaugh v. Warner Bros. Entm't Inc.*,
   100 F.4th 1005 (9th Cir. 2024) .............................................................................. 8

*Kramer v. Toyota Motor Corp.*,
   705 F.3d 1122 (9th Cir. 2013) .............................................................................. 11

*Kum Tat Ltd. v. Linden Ox Pasture, LLC*,
   845 F.3d 979 (9th Cir. 2017) ................................................................................. 6

*Lomeli v. Midland Funding, LLC*,
   2019 WL 4695279 (N.D. Cal. Sept. 26, 2019) ........................................................ 7

*Metalclad Corp. v. Ventana Env't Organizational P'ship*,
   109 Cal. App. 4th 1705 (2003) ............................................................................. 11

*Micheli & Shel, LLC v. Grubhub Inc.*,
   588 F. Supp. 3d 483 (S.D.N.Y. 2022) ................................................................. 8, 9

*Mohamed v. Uber Techs., Inc.*,
   848 F.3d 1201 (9th Cir. 2016) ............................................................................... 9

*Nguyen v. Barnes & Noble Inc.*,
   763 F.3d 1171 (9th Cir. 2014) ............................................................................... 8

*Norcia v. Samsung Telecomms. Am., LLC*,
   845 F.3d 1279 (9th Cir. 2017) ............................................................................... 6

*Perry-Hudson v. Twilio, Inc.*,
   2024 WL 4933332 (N.D. Cal. Dec. 2, 2024) ......................................... 2, 12, 13, 15

*Peter v. DoorDash, Inc.*,
   445 F. Supp. 3d 580 (N.D. Cal. 2020) .................................................................... 8

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

AMPLITUDE'S MOTION TO
COMPEL ARBITRATION
CASE NO. 3:24-cv-04913-RFL

*Rent-A-Center, West, Inc. v. Jackson*,
  561 U.S. 63 (2010) ................................................................................................ 6, 9

*Sanders v. Swift Transp. Co. of Arizona, LLC*,
  843 F. Supp. 2d 1033 (N.D. Cal. 2012) ..................................................................... 14

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*,
  549 U.S. 422 (2007) ................................................................................................... 7

*Smith v. Spizzirri*,
  601 U.S. 472 (2024) ................................................................................................... 7

*Wheeler v. LG Elecs. USA, Inc.*,
  2024 WL 51353 (E.D. Cal. Jan. 4, 2024) ..................................................................... 7

*Wynn Resorts, Ltd. v. Atl.-Pac. Cap., Inc.*,
  497 F. App'x 740 (9th Cir. 2012) .............................................................................. 10

**Statutes**

18 U.S.C. § 2511 ........................................................................................................... 13

9 U.S.C. §§ 1-16 ................................................................................................ 5, 6, 7, 16

Cal. Penal Code § 502 ..................................................................................................... 13

Cal. Penal Code § 631 ..................................................................................................... 13

Cal. Penal Code § 638.51 ................................................................................................ 13

**ISSUES TO BE DECIDED**

1.    Whether Plaintiffs entered into a valid arbitration agreement when they signed up to use DoorDash and agreed to the DoorDash Terms and Conditions ("T&C").

2.    Whether Plaintiffs agreed to delegate arbitrability questions to the arbitrator when they agreed through the T&C that the "arbitrator, and not any federal, state, provincial or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of this Arbitration Agreement."

3.    Whether Plaintiffs' claims against Amplitude are either (a) "intimately founded in and intertwined with" the DoorDash T&C and Privacy Policy, or (b) based on "substantially interdependent and concerted" conduct by Amplitude and DoorDash that relates to the DoorDash T&C and Privacy Policy.

## I.  INTRODUCTION

Plaintiffs' First Amended Complaint ("FAC," Dkt. 23) is flawed for many reasons, as explained in Amplitude, Inc.'s ("Amplitude's") Motion to Dismiss. Dkt. 30. New Plaintiff-specific evidence from DoorDash has now confirmed another fundamental problem with the FAC: Plaintiffs affirmatively agreed that any disputes related to their "use" of the DoorDash app would be resolved in binding, individual arbitration. DoorDash confirmed Plaintiffs' records and use of the DoorDash app and provided a declaration (attached to this Motion) detailing their agreement— multiple times—to the arbitration agreement in DoorDash's Terms and Conditions (the "T&C"). Because this case is about Plaintiffs' use of the DoorDash app and whether they agreed to the collection and sharing of their information with service providers like Amplitude through DoorDash's Privacy Policy (which is expressly incorporated into the T&C), the Court should compel Plaintiffs to arbitration and stay all proceedings.

*First*, Plaintiffs entered into a valid and binding arbitration agreement. As detailed in the accompanying Declaration of Brian Cramer, DoorDash's records show that Plaintiffs repeatedly agreed to DoorDash's T&C, which require arbitration of "any dispute or claim arising out of or relating in any way to the subject matter of the [T&C]" (including DoorDash's Privacy Policy) or to "access or use" of the DoorDash app. Decl. of Brian Cramer dated Apr. 8, 2025 ("Cramer Decl.") ¶¶ 6-16, 20-33 & Ex. B § 14(a).[1] Neither Plaintiff exercised their right to opt out of the arbitration agreement. *See* Cramer Decl. ¶¶ 18, 35.

*Second*, Plaintiffs entered into a valid and binding delegation agreement providing that the arbitrator (ADR Services, Inc.) shall decide any arbitrability questions. Plaintiffs agreed through the T&C that "[t]he arbitrator, and not any federal, state, provincial, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of this Arbitration Agreement." Ex. B § 14(d). Thus, should Plaintiffs raise any challenges to the arbitration agreement, those are questions for the arbitrator to decide.

*Third*, Amplitude is entitled to enforce Plaintiffs' arbitration agreement under the doctrine

---

[1] All citations to exhibits are to Exs. A-I of the Cramer Declaration.

of equitable estoppel. Equitable estoppel permits a nonsignatory (like Amplitude) to enforce an arbitration agreement against a signatory (like Plaintiffs) in two circumstances: "(1) "when the claims against the nonsignatory are intimately founded in and intertwined with the underlying contract"; *or* (2) "when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and the allegations of interdependent misconduct are founded in or intimately connected with the obligations of the underlying agreement." *Herrera v. Cathay Pac. Airways Ltd.*, 104 F.4th 702, 707 n.5, 712 (9th Cir. 2024) (citations omitted and cleaned up). Both circumstances are present: (1) Plaintiffs' claims are intertwined with their use of DoorDash's app and the disclosures in the T&C and Privacy Policy, and (2) Plaintiffs allege interdependent conduct by DoorDash and Amplitude related to the app's use of Amplitude's SDK. Plaintiffs thus cannot skirt their agreement by suing only Amplitude.

Notably, Judge Chhabria recently compelled arbitration of substantially similar claims under the doctrine of equitable estoppel in *Perry-Hudson v. Twilio, Inc.*, 2024 WL 4933332 (N.D. Cal. Dec. 2, 2024). There, as here, the plaintiff alleged that a data-analytics provider (Twilio) collected his information through software installed in the website of non-party Keeps, asserting wiretapping and other privacy claims. Judge Chhabria permitted Twilio to enforce the arbitration agreement in Keeps' terms because the claims turned on whether the plaintiff consented to the disclosure of his information as detailed in the terms, and the plaintiff alleged that Twilio and Keeps worked together to install code on Keeps' website. *See id.* at *2-3. The Court should do the same and prevent Plaintiffs from sidestepping their agreement with DoorDash by suing Amplitude.

## II.    BACKGROUND

### A.    DoorDash's Terms & Conditions Include A Binding Arbitration Agreement

DoorDash users agree to DoorDash's T&C and Privacy Policy when they sign up for the app. Cramer Decl. ¶¶ 8, 23. The T&C govern "use of the Technology and Services," Ex. B (May 16, 2024 T&C) § 1, which includes "install[ing] or us[ing] the DoorDash [] mobile application" and "access[ing] or us[ing] any information, function, feature, or service made available or enabled

by DoorDash." *Id.* § 2; *see also* Ex. G (Jan. 11, 2024) §§ 1-2.[2] The T&C explicitly incorporate the Privacy Policy and state that, "[b]y using or accessing" the DoorDash app, users "agree to be bound by [the T&C] and acknowledge and agree to the collection, use, and disclosure of [their] personal information in accordance with DoorDash's Privacy Policy." Ex. B § 4; Ex. G § 4.

When Plaintiffs agreed to the T&C, they also agreed to arbitrate "any dispute or claim arising out of or relating in any way to the subject matter of the [T&C]" or to their "access or use of the Services as a User of the Services." Ex. B § 14(a); Ex. G § 14(a). The arbitration agreement is prominently disclosed in the introduction to the T&C in bold text. *See* Ex. B at p.1. The T&C provide users with the right to use DoorDash *without* being bound by the arbitration agreement if they opt out within 30 days of their first acceptance. *Id.* at p.1 & § 14(h); *see also* Ex. G § 14(h).

The T&C also contain a delegation agreement providing that the "arbitrator, and not any federal, state, provincial or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of this Arbitration Agreement." Ex. B § 14(d); Ex. G § 14(d). The T&C further identify ADR Services, Inc. ("ADR Services") as the arbitrator of claims involving California residents, and state that the ADR Services Rules will govern any such arbitration. Ex. B § 14(c)(i); Ex. G § 14(c)(i). The T&C also include a class waiver, requiring users to expressly waive the right to resolve any claims on a class basis. Ex. B §§ 14(a), (f); Ex. G §§ 14(a), (f).

As the T&C contemplate, DoorDash has updated the T&C from time to time. While these updates have occasionally included modifications to the arbitration agreement, every version of the T&C in place since Plaintiffs created their DoorDash accounts included (a) an agreement that all disputes like this one must be resolved through arbitration, (b) the ability for users to opt out of the arbitration agreement, (c) an agreement to delegate arbitrability questions to the arbitrator, and (d) a class action waiver. *See* Ex. A (Apr. 3, 2018) § 12; Ex. B (May 16, 2024) § 14; Ex. C (Feb.

---

[2] Unless otherwise stated, all references to the DoorDash T&C are to the May 16, 2024 version, which were in effect when this action was filed on August 8, 2024. The DoorDash T&C have been updated since Plaintiffs first signed up for the DoorDash app, but all versions in effect during the relevant period are substantially the same in all relevant respects. Similarly, all references to the Privacy Policy are to the version effective July 1, 2024 (Dkt. 30-5), unless stated otherwise.

3, 2023) § 14; Ex. E (Jan. 1, 2020) § 12; Ex. F (Mar. 29, 2021) § 12; Ex. G (Jan. 11, 2024) § 14.

### B.    Plaintiffs Agreed to Arbitrate This Dispute On An Individual Basis

Plaintiffs Kyle Atkins and Michael Luo agreed to the T&C, including its arbitration agreement, on multiple occasions. Plaintiffs first agreed to the T&C when they signed up with DoorDash on February 25, 2019 and May 5, 2020, respectively. Cramer Decl. ¶¶ 6, 20. The sign-up process was materially the same: they had to click a button presented alongside a disclosure stating: "By clicking Sign up, Continue with Facebook, or Continue with Google, you agree to our Terms and Conditions and Privacy Statement."[3] *Id.* ¶¶ 7-9, 21-24; *see also id.* ¶ 22 ("By clicking Sign up, Continue with Facebook, Continue with Google or Continue with Apple, you agree to our Terms and Conditions and Privacy Statement."). The words "Terms and Conditions" and "Privacy Statement" were highlighted in red or blue font, underlined, and hyperlinked to the then-current T&C and Privacy Statement. *Id.* Plaintiffs each manifested their consent by clicking one of the identified buttons. *Id.* ¶¶ 8-9, 23-24. Plaintiffs did not opt out of the arbitration agreement. *Id.* ¶¶ 18, 35.

Plaintiffs agreed to subsequent versions of the T&C as well. Plaintiffs signed up for DoorDash's subscription service, DashPass, multiple times, including on April 12, 2023 (Luo) and June 6, 2024 (Atkins). *Id.* ¶¶ 11-13, 26-29. In doing so, each Plaintiff re-affirmed their consent to be bound by the then-operative T&C by tapping a "Get DashPass" button that required them to affirm that they "agree to the Terms." *Id.* ¶¶ 12-13, 28-29. The word "Terms" was bolded, in darker font, underlined, and hyperlinked to the T&C in effect at the relevant time. *Id.* ¶¶ 11, 26.

Plaintiffs re-affirmed their consent to the T&C (and Privacy Policy) when they signed into their DoorDash accounts. *Id.* ¶¶ 14-16, 30-33. DoorDash's records show that Plaintiffs signed into the DoorDash app multiple times leading up to the filing of this case, including on February 4, 2024 (Luo) and July 3, 2024 (Atkins). *Id.*; *see also* FAC ¶¶ 33, 37. On each occasion, Plaintiffs had to tap a button attesting that they agreed to "DoorDash's Terms & Conditions and Privacy Policy." The words "Terms & Conditions" and "Privacy Policy" were in blue font, underlined, and

---

[3] DoorDash used the title "Privacy Statement" for early iterations of its Privacy Policy. *See, e.g.*, Cramer Decl. ¶¶ 7, 14, 22, 30.

hyperlinked to the T&C in effect at the relevant time. *See* Cramer Decl. ¶¶ 14-15, 30-31.

Plaintiffs also agreed to be bound by subsequent versions of the T&C and Privacy Policy as a condition of using the DoorDash app. The T&C include a modification provision that provided that DoorDash would notify users by email of "any material changes" to the T&C and made subsequent versions of the T&C effective upon their posting on DoorDash's website. Ex. B § 3; Ex. G § 3. Plaintiffs agreed to this provision when they agreed to the T&C. *See* Cramer Decl. ¶¶ 14-17, 26-33. DoorDash posted the latest version of the T&C on its website every time they were updated, including the May 2024 and August 2024 T&C. *Id.* ¶¶ 16, 32, 33; Exs. B, H. DoorDash's records confirm that Plaintiffs have continued to use the DoorDash app to place orders while the updated T&C were in effect, including as recently as July 2024 (Atkins) and August 2024 (Luo). *Id.* ¶¶ 15, 33.

### C. Notwithstanding The Arbitration Agreement, Plaintiffs Filed Suit And Asserted Claims Related To Their Use Of DoorDash

Plaintiffs filed this action despite agreeing to arbitrate any claims related to "use" of the DoorDash app and DoorDash's services.[4] The crux of Plaintiffs' claims is that DoorDash "embedded" a software development kit ("SDK") developed by Amplitude in the DoorDash app, allowing Amplitude to collect their information. *See* FAC ¶ 34. Plaintiffs allege that neither DoorDash nor Amplitude informed them that DoorDash's app used Amplitude's SDK or that Amplitude would obtain their information. *Id.* ¶¶ 5, 36, 40.

Plaintiffs' claims directly implicate DoorDash's T&C, which govern "use of" the DoorDash app and any function, feature, or service enabled by DoorDash. Ex. B §§ 1, 2; Ex. G §§ 1, 2. They also implicate DoorDash's Privacy Policy, which is incorporated into the T&C and discloses the collection of specific information from users, including through "software development kits." Dkt. 30-5 (July 1, 2024) § III. The Privacy Policy also discloses that DoorDash may share specific information with "service providers," including "analytics services." *Id.* § V.

---

[4] Plaintiff Atkins filed the original Complaint on August 8, 2024. Plaintiff Luo was added in the FAC on November 15, 2024. *See* Dkts. 1, 23.

## III.    LEGAL STANDARD

The Federal Arbitration Act ("FAA") governs the enforcement of arbitration agreements. 9 U.S.C. §§ 1-16; *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).[5] Section 2 of the FAA provides that any written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 4 allows a party aggrieved by the failure of another to arbitrate to seek "an order directing that . . . arbitration proceed in the manner provided for in such agreement." *Id.* § 4.

In ruling on a motion to compel arbitration, the district court's role is generally limited to determining whether there is an agreement to arbitrate between the parties that covers the dispute. *See Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). "If an agreement exists, the FAA 'leaves no place for the exercise of discretion by a district court.'" *Fli-Lo Falcon, LLC v. Amazon.com, Inc.*, 97 F.4th 1190, 1193-94 (9th Cir. 2024) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)). However, the parties may agree to delegate "'gateway' questions of 'arbitrability'" to an arbitrator. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63 (2019) (citation omitted). Where such an agreement is "clear and unmistakable," *id.* at 69, only two issues are left to the court's decision: (i) whether the parties "entered into a contract in the first place," *In re Uber Text Messaging*, 2019 WL 2509337, at *6 (N.D. Cal. Jun. 18, 2019); and (ii) any challenges to "the validity of the delegation provision in particular," *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 74 (2010). A party may not seek judicial resolution of the validity of the arbitration agreement as a whole in the face of a delegation provision. *See Kum Tat Ltd. v. Linden Ox Pasture, LLC*, 845 F.3d 979, 983 (9th Cir. 2017) (distinguishing "challenges to the validity of a contract with an arbitration clause" from "challenges to the very existence of the contract").

The party seeking arbitration must prove the existence of an agreement by a preponderance of the evidence, *see Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017), and "the party resisting arbitration bears the burden of proving that the claims at issue are

---

[5] The T&C state that they are governed by the FAA. *See* Ex. B § 14(c)(i). Plaintiffs' use of DoorDash's app also involves interstate commerce, and thus the FAA would apply even if the T&C were silent. *See Duval v. Costco Wholesale Corp.*, 2023 WL 3852694, at *2 (N.D. Cal. June 5, 2023) (applying FAA to dispute involving Instacart services).

unsuitable for arbitration," *Green Tree Fin. Corp.-Ala v. Randolph*, 531 U.S. 79, 91 (2000). When reviewing a motion to compel arbitration, courts apply a summary judgment standard. *See Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021); *see also Alkutkar v. Bumble Inc.*, 2022 WL 16973253, at *1-2 (N.D. Cal. Nov. 16, 2022) (distinguishing between burden of proof and standard of review for arbitration motion). The court may consider "affidavits, declarations, or other competent evidence" in determining whether an agreement to arbitrate exists. *Lomeli v. Midland Funding, LLC*, 2019 WL 4695279, at *4 (N.D. Cal. Sept. 26, 2019). Where a dispute is subject to arbitration, the district court "shall on application of one of the parties stay the trial of the action until arbitration has been had." 9 U.S.C. § 3; *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024).

## IV.    ARGUMENT

Plaintiffs' FAC does not belong in this Court for several reasons: (1) this case belongs in arbitration, (2) Plaintiffs suffered no concrete, particularized harm and thus lack Article III standing, and (3) Plaintiffs failed to state any claim against Amplitude.[6] Because Plaintiffs agreed to arbitrate this dispute, this case must be compelled to arbitration, obviating the need for the Court to address Amplitude's challenges in the Motion to Dismiss. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431-32 (2007) (noting that "[a] federal court has leeway to choose among threshold grounds for denying audience to a case on the merits" (cleaned up)); *Ghazazideh v. Coursera, Inc.*, 737 F. Supp. 3d 911, 921 (N.D. Cal. 2024). Courts in this Circuit routinely address requests to compel arbitration first, and only turn to jurisdictional and merits challenges if necessary. *See, e.g.*, *Wheeler v. LG Elecs. USA, Inc.*, 2024 WL 51353, at *8 (E.D. Cal. Jan. 4, 2024); *Fries v. Wells Fargo Bank*, 2024 WL 1816931, at *3 (C.D. Cal. Feb. 22, 2024).

Amplitude therefore respectfully requests that the Court address the issues raised by this Motion and its Motion to Dismiss in the following order: (1) arbitration, (2) Article III standing, (3) failure to state a claim.

---

[6] Amplitude moved to dismiss the FAC on January 7, 2025, and that motion is fully briefed. *See* Dkts. 30, 33-34.

### A.    Plaintiffs Assented To DoorDash's Binding Arbitration Agreement, Including Its Delegation Clause

Plaintiffs entered into a valid arbitration agreement when they agreed to DoorDash's T&C containing the arbitration provision. In answering the threshold question of whether there is an agreement to arbitrate, "federal courts 'apply ordinary state-law principles that govern the formation of contracts.'" *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) (citation omitted). Under California law, the formation of a contract requires a mutual manifestation of assent.[7] *See Keebaugh v. Warner Bros. Entm't Inc.*, 100 F.4th 1005, 1014 (9th Cir. 2024). Where a user agrees to terms by signing into an app, the agreement is enforceable if "(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Id.* (quoting *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022)).

These requirements are satisfied here. As explained in Section II.A, DoorDash provides users with conspicuous notice of the T&C and their arbitration agreement. To create an account and use the app, Plaintiffs were presented with an uncluttered screen which informed them, in clear, contrasting font with hyperlinks to the relevant documents, that by clicking or tapping particular buttons, Plaintiffs agreed to the T&C and Privacy Policy. *See* Cramer Decl. ¶¶ 14, 31. To proceed, Plaintiffs had to affirmatively click a button and assent to the T&C. *Id*. The T&C provided clear notice that they included an arbitration requirement. *See* Ex. B at p.1 & § 14. Courts routinely enforce similar agreements, *see Keebaugh,* 100 F.4th 1005 at 1021, including the arbitration agreement in DoorDash's T&C. Indeed, because DoorDash provides consumers reasonable notice of the T&C, courts have consistently compelled individual consumers to arbitrate their disputes with DoorDash pursuant to the T&C. *See Peter v. DoorDash, Inc.*, 445 F. Supp. 3d 580, 587 (N.D. Cal. 2020); *Arkin v. DoorDash, Inc.*, 2020 WL 4937825, at \*5 (E.D.N.Y. Aug. 24, 2020); *Micheli & Shel, LLC v. Grubhub Inc.*, 588 F. Supp. 3d 483, 490 (S.D.N.Y. 2022)

---

[7] Because Plaintiffs allege that they are residents of California, California law applies to the question of whether they entered into an agreement to arbitrate. *See Nguyen*, 763 F.3d at 1175.

(considering DoorDash's T&C).

### B.     Plaintiffs Clearly And Unmistakably Delegated Any Arbitrability Questions To The Arbitrator

To the extent Plaintiffs raise any questions regarding the validity, enforceability or applicability of the arbitration agreement, those questions are reserved for the arbitrator. Where, as here, the parties to an arbitration agreement "clearly and unmistakably" agree that an arbitrator will decide gateway issues such as the validity, enforceability, or applicability of the arbitration agreement, it is for the arbitrator to decide those issues. *Rent-A-Center*, 561 U.S. at 68-70; *see also Henry Schein*, 586 U.S. at 69. The Supreme Court has made clear that courts must enforce an "agreement to arbitrate threshold issues." *Rent-A-Center*, 561 U.S. at 68-70. "When the parties' contract delegates the arbitrability question to an arbitrator, . . . a court possesses no power to decide the arbitrability issue . . . even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Henry Schein*, 586 U.S. at 68.

Here, Plaintiffs "clearly and unmistakably" agreed to delegate issues of arbitrability to the arbitrator. The arbitration agreement in DoorDash's T&C states that "[t]he arbitrator, and not any federal, state, provincial or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of this Arbitration Agreement." Ex. B § 14(d); Ex. G § 14(d). This is a clear agreement to delegate to an arbitrator any questions (aside from a challenge to the delegation provision itself) regarding whether the arbitration agreement can be enforced or whether it applies to the dispute. *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1208 (9th Cir. 2016) (acknowledging that "clear and unmistakable evidence" might include "an express agreement" to arbitrate arbitrability (citation omitted)). The delegation agreement "is plain on the face of the arbitration agreement and must be observed." *Dekker v. Vivint Solar, Inc.*, 611 F. Supp. 3d 898, 904 (N.D. Cal. 2019), *vacated on other grounds*, 479 F. Supp. 3d 834 (N.D. Cal. 2020). Plaintiffs agreed to this provision, *see* Section II.B; Cramer Decl. ¶¶ 9, 11, 14, 24, 26, 30, and the Court should enforce it. *See Arkin*, 2020 WL 4937825, at *2 (enforcing delegation agreement in DoorDash's T&C); *Micheli & Shel*, 588 F. Supp. 3d at 490 (same).

### C.    Even If There Were No Delegation Clause, The Court Should Still Find That The Arbitration Agreement Encompasses Plaintiffs' Claims

Even if Plaintiffs had not agreed to delegate arbitrability questions (they did), the Court should still compel arbitration because Plaintiffs' claims fall squarely within the scope of the arbitration agreement. In the absence of a delegation clause, courts consider whether "(1) a valid agreement to arbitrate exists between the parties and (2) the scope of the agreement encompasses the claims." *Fli-Lo Falcon.*, 97 F.4th at 1194; *Ghazizadeh*, 2024 WL 3091968, at *2 (similar). Both requirements are met because Plaintiffs agreed to the arbitration agreement in the T&C (*see* Section IV.A) and the claims in the FAC are the exact claims Plaintiffs agreed to arbitrate.

Plaintiffs' arbitration agreement applies broadly to "any dispute or claim arising out of or relating in any way to the subject matter of the [T&C]" or to Plaintiffs' "access or use of the Services," Ex. B § 14(a), which includes using the DoorDash app or any feature or service "enabled by DoorDash," *id.* § 2. The Ninth Circuit has recognized that arbitration agreements containing language such as "arising out of" and "relating to" are "broad" and enforceable, and that the presumption of arbitrability "applies with particular force" to such agreements. *Wynn Resorts, Ltd. v. Atl.-Pac. Cap., Inc.*, 497 F. App'x 740, 743 (9th Cir. 2012).

Here, Plaintiffs' claims are based on their use of the DoorDash app and the SDK allegedly enabled by DoorDash, and are thus within the scope of the arbitration agreement. Plaintiffs allege that Amplitude collected their data when they "used" the DoorDash app because DoorDash allegedly "embedded" Amplitude's SDK in the app.[8] FAC ¶¶ 33-34, 37-38. Plaintiffs also allege that DoorDash contracted with Amplitude to "provide its SDK to be embedded in the DoorDash" app, that Amplitude "designed the SDK" to collect data from DoorDash users, and that Amplitude collected specific information through Plaintiffs' use of the app. *See, e.g.*, FAC ¶¶ 21, 27-40. These claims relate to Plaintiffs' "access or use of the Services," Ex. B § 14(a), because they involve allegations of Plaintiffs' use of the app and purported app functionality enabled by DoorDash.

Plaintiffs' claims also arise out of and relate to DoorDash's T&C, which explicitly

---

[8] While not relevant to this Motion, Amplitude notes that Plaintiffs mischaracterize Amplitude's SDK and how DoorDash uses it in the DoorDash app.

incorporate the Privacy Policy. *Id.* § 4. Plaintiffs allege that neither DoorDash nor Amplitude disclosed the data collection practices alleged here, including in DoorDash's "notices or disclosures." FAC ¶ 41. DoorDash's Privacy Policy is part of the "app's notices [and] disclosures," and it is presented to users when they sign up for and sign into the app. *See* Section II.B; Cramer Decl. ¶¶ 9, 11, 14, 24, 26, 30. The Privacy Policy also contains relevant disclosures that DoorDash collects and shares data with service providers. *See* Dkt. 30-5 at § I (disclosing that the policy "describes" how DoorDash and its affiliates "collect, process, retain, and disclose your Personal Information when providing its services"). Accordingly, Plaintiffs' claims arise out of or relate to the T&C. *See Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000) (holding that dispute arose out of contract where the "[r]esolution of the dispute would require an analysis of the [contract terms]"); *see also Hunt v. Meta Platforms, Inc.*, 735 F. Supp. 3d 1133, 1137 (N.D. Cal. 2024) (compelling arbitration of claims related to privacy policy).

### D. Amplitude Is Entitled To Enforce Plaintiffs' Arbitration Agreements Under California's Doctrine Of Equitable Estoppel

As the service provider that developed the SDK allegedly used by DoorDash in its app, FAC ¶ 21, Amplitude is entitled to invoke the arbitration agreement in DoorDash's T&C against claims stemming from the app's use of the SDK. The doctrine of equitable estoppel allows a non-signatory like Amplitude to enforce an arbitration agreement (1) when the "claims [against the nonsignatory] are intimately founded in and intertwined with the underlying contract"; *or* (2) "when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and the allegations of the interdependent misconduct are founded in or intimately connected with the obligations of the underlying agreement." *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128-29 (9th Cir. 2013) (citation omitted). The doctrine prevents "a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes" by suing a nonsignatory. *Id.* at 1128 (citation omitted); *Metalclad Corp. v. Ventana Env't Organizational P'ship*, 109 Cal. App. 4th 1705, 1714 (2003) (doctrine "prevents a party from playing fast and loose with its commitment to arbitrate, honoring it when advantageous and circumventing it to gain undue advantage"); *Franklin v. Cmty. Reg'l*

*Med. Center*, 998 F.3d 867, 870–71 (9th Cir. 2021) (doctrine allows nonsignatory to enforce agreement "even when a signatory 'attempts to avoid arbitration by suing nonsignatory defendants for claims that are based on the same facts and are inherently inseparable from arbitrable claims against signatory defendants'" (citation omitted)).

Amplitude is entitled to enforce the arbitration agreement under both prongs of equitable estoppel: (1) Plaintiffs' claims are intertwined with the privacy rights and obligations set out in DoorDash's T&C and Privacy Policy, and (2) Plaintiffs allege concerted action by DoorDash and Amplitude that is intimately connected with those T&C.

1.    Plaintiffs' Claims Against Amplitude Are Intertwined With DoorDash's T&C And Privacy Policy

Plaintiffs' claims against Amplitude are "intimately founded in and intertwined with" the rights and obligations that are set out in DoorDash's T&C, including the Privacy Policy.

To determine whether claims are intertwined with an arbitration agreement, courts look to "the relationship between the parties and their connection to the alleged violations." *Perry-Hudson*, 2024 WL 4933332, at *2 (citation omitted); *Franklin*, 998 F.3d at 871. "The question is whether [plaintiffs'] claims are 'fully viable without reference to' the underlying agreement," *Perry-Hudson*, 2024 WL 4933332, at *2 (quoting *Goldman v. KPMG, LLP*, 173 Cal. App. 4th 209, 230 (2009)), or whether the claims "rely or depend on the terms, duties or obligations in the contract containing the arbitration provision." *In re Pac. Fertility Ctr. Litig.*, 814 F. App'x 206, 209 (9th Cir. 2020). Here, Plaintiffs' claims are intertwined with the T&C and Privacy Policy.

Plaintiffs cannot succeed on any of their privacy claims if the Privacy Policy they agreed to (which is incorporated into the T&C) permitted the sharing of their personal information with third-party service providers like Amplitude for analytics services. To prevail on their wiretapping, pen register, and CDAFA claims, Plaintiffs must establish that they did not consent to the conduct at issue.[9] Plaintiffs also allege that neither DoorDash nor Amplitude disclosed the data collection

---

[9] As explained in the Motion to Dismiss, each statute requires a lack of knowledge or consent. *See* Dkt. 30 at 5-7; *see also* Cal. Penal Code § 631(a) ("without the consent of all parties"), § 638.51 (no violation "[i]f the consent of the user . . . has been obtained"), § 502(c) ("without permission"), 18 U.S.C. § 2511(2)(d) (no violation if "prior consent").

AMPLITUDE'S MOTION TO
COMPEL ARBITRATION
CASE NO. 3:24-cv-04913-RFL

and sharing practices alleged here, FAC ¶¶ 24, 36, 40, and their putative class definition turns on whether the "app's notices or disclosures" identified Amplitude. *Id.* ¶ 41. These claims cannot be adjudicated without the Privacy Policy, which is presented to users when they sign up for and into the app (*e.g.*, Cramer Decl. ¶¶ 7, 15, 31) and discloses the types of information collected and shared with third parties in connection with use of the app. *See Herrera*, 104 F.4th at 708 (compelling arbitration where claims against non-signatory were intertwined with non-party's terms).

Courts in this District have found intertwinement on similar facts and compelled arbitration. Judge Chhabria's recent decision in *Perry-Hudson* is particularly instructive. *See* 2024 WL 4933332. In that case, the plaintiff alleged that Twilio, a data-analytics company, collected his data when he used the website of non-party Keeps without his consent. *Id.* at \*1. Twilio moved to compel arbitration based on the arbitration agreement in Keeps' Terms & Conditions, which contained nearly identical language as in DoorDash's T&C. *See* Mot. to Compel Arbitration, No. 24-cv-03741 (N.D. Cal. Aug. 8, 2019), Dkt. 15 (agreement applied to claims "arising out of or relating in any way to the[] Terms"). Judge Chhabria granted the motion, concluding that the plaintiff's "claims are rooted in whether Twilio's use of his personal information was unlawful, and those claims turn on whether [he] consented to disclosure of his personal information to Twilio." 2024 WL 4933332 at \*1. The court reasoned: "[e]ach claim requires [the plaintiff] to plead (and ultimately prove) that he did not consent to Twilio's interception. But Keeps' Privacy Policy discusses disclosure of personal information to third-party vendors." *Id.* at \*2. So too here: Plaintiffs allege that Amplitude's receipt of their information through their alleged use of the DoorDash app was unlawful, which turns on whether they consented to the data collection and sharing practices in DoorDash's Privacy Policy.

Similarly, in *Hunt*, the plaintiff alleged that Google and Meta Platforms improperly collected his tax information through tracking tools when he used non-party H&R Block's website, asserting racketeering claims based on alleged misrepresentations about H&R Block's privacy and data security policy. *See* 735 F. Supp. 3d at 1135. Google and Meta sought to enforce the arbitration agreement in H&R Block's Online Services Agreement, which governs the use of H&R Block's services and includes H&R Blocks' privacy and data security policy. *Id.* at 1135-36. Judge

Pitts granted the motion, concluding that the plaintiff's claims were "closely intertwined with his agreement with H&R Block." *Id.* at 1137. "Because H&R Block's 'privacy and data security policy' is set forth in part in its Online Services Agreement, [the plaintiff's] mail and wire fraud claims against Google and Meta depend on that agreement and whether it was fraudulent," and thus the claims were "intimately intertwined" with the arbitration agreement. *Id.* at 1137-38. Similarly, here, Plaintiffs allege they did not know about or consent to Amplitude's purported receipt of their DoorDash app data. As in *Hunt*, these claims are closely intertwined with the T&C and Privacy Policy, and thus Amplitude is entitled to enforce the T&C's arbitration agreement.

### 2. Plaintiffs Allege That DoorDash And Amplitude Engaged In Concerted Conduct That Invaded Their Privacy

Amplitude is separately entitled to enforce Plaintiffs' arbitration agreements because they allege concerted conduct by Amplitude and DoorDash that is related to DoorDash's T&C and Privacy Policy. Plaintiffs' effort to transform a routine relationship between an app developer and a data-analytics provider into a privacy invasion only confirms that this case belongs in arbitration.

The doctrine of equitable estoppel permits Amplitude to enforce Plaintiffs' agreement if they allege "substantially interdependent and concerted misconduct by" Amplitude and DoorDash that is "founded in or intimately connected with the obligations of" DoorDash's T&C. *Kramer*, 705 F.3d at 1128-29. This species of estoppel is appropriate where, as here, a plaintiff alleges that a signatory and nonsignatory have acted "jointly in furtherance of a common scheme," and the legality of that scheme cannot be resolved without looking to the terms of the contract. *Sanders v. Swift Transp. Co. of Arizona, LLC*, 843 F. Supp. 2d 1033, 1038 (N.D. Cal. 2012).

Plaintiffs' core theory is that Amplitude and DoorDash collaborated to collect their information via Amplitude's SDK. Plaintiffs allege that "Amplitude contracted with DoorDash to provide its SDK" for DoorDash's app, that DoorDash embedded the SDK into its app, that Amplitude collected Plaintiffs' information via the SDK, and that Plaintiffs were not informed about this data collection by anyone. FAC ¶¶ 21, 24, 34, 36, 38, 40. Though Plaintiffs have not asserted claims against DoorDash directly, the FAC alleges that Amplitude and DoorDash acted jointly in deploying the SDK. *See Sanders*, 843 F. Supp. 2d at 1037-38 (applying equitable

estoppel where defendant and non-party "acted jointly"). It would have been impossible for Amplitude to engage in the conduct alleged here without DoorDash's purported involvement—DoorDash allegedly engaged Amplitude, allegedly installed the SDK in its own app, and provided the Privacy Policy. *See* FAC ¶¶ 21-24. Amplitude disputes that it did anything wrong—it is an analytics service provider that simply allows its customers to analyze their own data, and the conduct alleged here was disclosed in the Privacy Policy. But even at face value, Plaintiffs allege coordinated action by DoorDash and Amplitude related to DoorDash's app and its T&C.

*Perry-Hudson* is, again, instructive. *See* 2024 WL 4933332. In compelling arbitration of similar claims against non-signatory Twilio, Judge Chhabria held that the plaintiff's privacy claims—based on Twilio's collection of information via software embedded in Keeps' website—involved "allegations of interdependent and concerted misconduct" by Twilio (the data-analytics provider) and Keeps (the website operator) that was "intimately connected" with Keeps' Terms & Conditions. *Id.* at *3. As here, the plaintiff alleged that Twilio "contracts with Keeps to enable" its code to be installed on Keeps' website, which allowed Twilio to supposedly intercept plaintiff's data without consent. *See* Compl., No. 24-cv-3741 (N.D. Cal. June 21, 2024), Dkt. 1 ¶¶ 3-7, 52-56. Because the plaintiff alleged "that he did not consent for his data to be shared with Twilio, and those assertions form the bases of his privacy claims, his allegations of misconduct are intimately connected with the obligations Keeps imposed on itself in the Privacy Policy related to obtaining consent and the scope of any disclosure of data." 2024 WL 4933332, at *3. The same is true here.

At bottom, Plaintiffs' effort to circumvent DoorDash's T&C and Privacy Policy by suing Amplitude should be rejected. Like in *Perry-Hudson*, Plaintiffs sued Amplitude in an effort to sidestep their agreement with DoorDash. *See id.* (plaintiff should not be permitted "to skirt its agreement with Keeps by suing only Twilio"). Equitable estoppel allows Amplitude to invoke the arbitration agreement in DoorDash's T&C to prevent an end-run around Plaintiffs' agreement.

## V.    CONCLUSION

For the foregoing reasons, Amplitude respectfully requests that the Court (1) compel Plaintiffs to arbitrate their claims, and (2) stay this action. *See* 9 U.S.C. § 3.

Dated: April 8, 2025

Respectfully submitted,

LATHAM & WATKINS LLP

By: */s/ Michael H. Rubin*
Michael H. Rubin (Bar No. 214636)
*michael.rubin@lw.com*
Melanie M. Blunschi (Bar No. 234264)
*melanie.blunschi@lw.com*
Francis J. Acott (Bar No. 331813)
*francis.acott@lw.com*
505 Montgomery St., Suite 2000
San Francisco, CA 94111
Telephone: +1.415.391.0600

*Attorneys for Defendant Amplitude, Inc.*

LATHAM & WATKINS LLP
ATTORNEYS AT LAW

AMPLITUDE'S MOTION TO
COMPEL ARBITRATION
CASE NO. 3:24-cv-04913-RFL