Rafey Balabanian (SBN 315962)
rbalabanian@edelson.com
Jared Lucky (SBN 354413)
jlucky@edelson.com
EDELSON PC
150 California Street, 18th Floor
San Francisco, California 94111
Tel: 415.212.9300
Fax: 415.373.9435

Schuyler Ufkes*
sufkes@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Pro hac vice admission to be sought

Counsel for Plaintiffs and the Putative Classes

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| KYLE ATKINS and MICHAEL LUO, individually and on behalf of all others similarly situated, | Case No.: 3:24-cv-04913-RFL |
| *Plaintiffs*, | **PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION** |
| v. | |
| AMPLITUDE, INC., a Delaware corporation, | Hon. Rita F. Lin |
| *Defendant*. | |

# TABLE OF CONTENTS

INTRODUCTION..................................................................................................................1

BACKGROUND .................................................................................................................1

ARGUMENT.......................................................................................................................2

I.      AMPLITUDE CANNOT INVOKE THE DOORDASH ARBITRATION
        AGREEMENT TO WHICH IT IS NOT A PARTY. ..............................................3

        A.    Amplitude is not a party to the DoorDash Arbitration Agreement........................3

        B.    Amplitude does not otherwise possess the right to enforce the DoorDash Arbitration
              Agreement...............................................................................................................4

              1.    This Court—not an arbitrator—decides the equitable estoppel issue.................4

              2.    Amplitude cannot enforce the DoorDash Arbitration Agreement through equitable
                    estoppel.....................................................................................................5

                    a.    The traditional elements of equitable estoppel are not met here. ...................5

                    b.    Amplitude improperly invokes an arbitration-specific version of equitable estoppel.....7

                    c.    Amplitude fails to satisfy even the arbitration-specific version of equitable estoppel. ...9

II.     THE ARBITRATION AGREEMENT IS UNCONSCIONABLE AND
        UNENFORCEABLE. ..........................................................................................13

        A.    The delegation clause is procedurally unconscionable...........................................14

        B.    The delegation clause is substantively unconscionable..........................................15

        C.    The DoorDash Arbitration Agreement is unconscionable and unenforceable. ......17

III.    PLAINTIFFS' CLASS ACTION "MUST BE LITIGATED" UNDER THE CLASS
        WAIVER PROVISION.........................................................................................18

CONCLUSION ................................................................................................................21

**TABLE OF AUTHORITIES**

**U.S. Supreme Court Cases**

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) ..................................................................................................19

*Arthur Andersen LLP v. Carlisle*,
    556 U.S. 624 (2009) ................................................................................................5, 8

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011) ..................................................................................................20

*First Options of Chi., Inc. v. Kaplan*,
    514 U.S. 938 (1995) ....................................................................................................4

*Morgan v. Sundance, Inc.*,
    596 U.S. 411 (2022) ............................................................................................7, 8, 9

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) ........................................................................................................7

**California Supreme Court Cases**

*Alameda Cnty. Deputy Sherriff's Ass'n v. Alameda Cnty. Emps.' Ret. Ass'n*,
    9 Cal. 5th 1032 (2020) .............................................................................................5, 6

*Discover Bank v. Superior Court*,
    36 Cal. 4th 148 (2005) ...................................................................................19, 20, 21

*Ford Motor Warranty Cases*,
    532 P.3d 270 (Cal. 2023) .............................................................................................8

*Quach v. Cal. Commerce Club, Inc.*,
    16 Cal. 5th 562 (2024) .................................................................................................7

**U.S. Court of Appeals Cases**

*Herrera v. Cathay Pacific Airways Ltd.*,
    104 F.4th 702 (9th Cir. 2024) ......................................................................................8

*Heckman v. Live Nation Ent., Inc.*,

120 F.4th 670 (9th Cir. 2024 ..............................................................................*Passim*

*Hoffman v. Pulido*,

928 F.3d 1147 (9th Cir. 2019) ...........................................................................................2

*Homedics, Inc. v. Valley Forge Ins. Co.*,

315 F.3d 1135 (9th Cir. 2003) ...........................................................................................5

*Kramer v. Toyota Motor Corp.*,

705 F.3d 1122 (9th Cir. 2013) ...................................................................................*Passim*

*Murphy v. DirecTV, Inc.*,

724 F.3d 1218 (9th Cir. 2013) .........................................................................................10

*Namisnak v. Uber Techs., Inc.*,

971 F.3d 1088 (9th Cir. 2020) ....................................................................................9, 10

*Ngo v. BMW of N. Am., LLC*,

23 F.4th 942 (9th Cir. 2022) ..............................................................................................9

*Rahmany v. T-Mobile USA Inc.*,

717 F. App'x 752 (9th Cir. 2018) ....................................................................................11

*Ronderos v. USF Reddaway, Inc.*,

114 F.4th 1080 (9th Cir. 2024) .......................................................................................18

*United States v. Kirilyuk*,

29 F.4th 1128 (9th Cir. 2022) ............................................................................................8

**California Court of Appeal Cases**

*Ballesteros v. Ford Motor Co.*,

331 Cal. Rptr. 3d 232 (2025) ....................................................................................7, 8, 9

*City of Hollister v. Monterey Ins. Co.*,

165 Cal. App. 4th 455 (2008) ............................................................................................6

*Davis v. Nissan N. Am., Inc.*,

100 Cal. App. 5th 825 (2024) ............................................................................................7

*Goldman v. KPMG, LLP*,

173 Cal. App. 4th 209 (2009) ...................................................................................................10

*Young v. Horizon W., Inc.*,

220 Cal. App. 4th 1122 (2013) ...................................................................................................6

**U.S. District Court Cases**

*Calhoun v. Google LLC*,

526 F. Supp. 3d 605 (N.D. Cal. 2021) .....................................................................................10

*Faucett v. Move, Inc.*,

No. 22-cv-04948-ODW, 2024 WL 2106727 (C.D. Cal. Apr. 22, 2024), *aff'd*, No. 24-2631, 2025

WL 1112935 (9th Cir. Apr. 15, 2025) ......................................................................................10

*Greenley v. Kochava, Inc.*,

684 F. Supp. 3d 1024 (S.D. Cal. 2023) ....................................................................................10

*Houghton v. Leshner*,

No. 22-cv-07781-WHO, 2024 WL 5154071 (N.D. Cal. Nov. 25, 2024)............................5, 11, 12

*Hunt v. Check Recovery Sys., Inc.*,

241 F.R.D. 505 (N.D. Cal. 2007) .............................................................................................20

*In re Wade*,

No. 14-cv-03453-LHK, 2014 WL 5088258 (N.D. Cal. Oct. 9, 2014), *aff'd*, 671 F. App'x 669

(9th Cir. 2016) ...........................................................................................................................2

*Ireland-Gordy v. Tile, Inc.*,

No. 23-cv-04119-RFL, 2024 WL 5162413 (N.D. Cal. Dec. 19, 2024), *appeal filed*,

No. 25-403 (9th Cir. Jan. 21, 2025).........................................................................13, 14, 15, 16

*MacClelland v. Cellco P'ship*,

609 F. Supp. 3d 1024 (N.D. Cal. 2022).....................................................................................18

*Mance v. Mercedes-Benz USA*,

901 F. Supp. 2d 1147 (N.D. Cal. 2012).....................................................................................12

*Matera v. Google Inc.*,

   No. 15-CV-04062-LHK, 2016 WL 5339806 (N.D. Cal. Sept. 23, 2016) .....................................10

*Nutanix, Inc. v. Tessell, Inc.*,

   No. 24-cv-01729-AMO, 2025 WL 793652 (N.D. Cal. Mar. 12, 2025) ...........................................4

*Wiedenbeck v. United Educ. Inst.*,

   No. SACV 15-00810-CJC, 2015 WL 12743599 (C.D. Cal. Dec. 15, 2015)............................10, 12

*Young v. ByteDance, Inc.*,

   700 F. Supp. 3d 808 (N.D. Cal. 2023)......................................................................................4, 5

*Young v. Solana Labs., Inc.*,

   No. 22-cv-03912-RFL, 2024 WL 4023087 (N.D. Cal. Sept. 3, 2024)..............................3, 4, 5, 9

**<u>Federal Statutes</u>**

18 U.S.C. § 2520(c)(2)(B) ...............................................................................................................19

**<u>State Statutes</u>**

Cal. Civ. Code § 1668......................................................................................................................19

Cal. Civ. Code § 1670.5(a) ..............................................................................................................17

Cal. Penal Code § 637.2(a)(1)..........................................................................................................19

**<u>Other Authorities</u>**

Myriam Gilles, *Arbitration's Unraveling*,

   172 U. Pa. L. Rev. 1063 (2024)....................................................................................................7

**INTRODUCTION**

Plaintiffs Kyle Atkins and Michael Luo filed a class action complaint against Defendant Amplitude, Inc., for using a software development kit ("SDK") embedded in tens of thousands of different mobile apps to surreptitiously intercept sensitive personal information—including real-time location—from millions of consumers. Amplitude has moved to compel arbitration of Plaintiffs' claims based on an arbitration agreement in the terms and conditions of one of those apps, DoorDash. But as a nonparty to the DoorDash Arbitration Agreement, Amplitude is not entitled to enforce it, nor can it invoke equitable estoppel to do so. Regardless, even if Amplitude were entitled to enforce the DoorDash Arbitration Agreement, that agreement is procedurally and substantively unconscionable for a host of reasons and ultimately unenforceable. Finally, even if Amplitude were entitled to enforce the DoorDash Arbitration Agreement, and even if the DoorDash Arbitration Agreement were not unconscionable and unenforceable, the agreement contains a class waiver provision that expressly states that, in the circumstances presented here, Plaintiffs' class action "must be litigated."

For all these reasons, and as explained more fully below, Amplitude's Motion to Compel Arbitration should be denied.

**BACKGROUND**

Amplitude is a data analytics company whose business model depends on collecting sensitive information from consumers and sharing it with advertising networks and data warehouses. (First Am. Compl. ¶ 13, Dkt. 23 ("FAC").) Amplitude gathers this information by integrating its SDK into over 40,000 mobile apps used by consumers for, among other things, shopping, productivity, dating, and gaming. (*Id.* ¶¶ 14–16.) As consumers use these apps, Amplitude's SDK surreptitiously intercepts sensitive personal information about their in-app activities, including name, email address, real-time location, search terms, page requests, products viewed, and shopping cart contents. (*Id.* ¶¶ 17–26.) Amplitude uses the data it collects across tens of

thousands of apps to create detailed digital dossiers about consumers containing their precise movement patterns, likes and interests, shopping histories, and other activities. (*Id*. ¶¶ 27–32.)

Plaintiffs filed a four-count First Amended Class Action Complaint against Amplitude alleging that its surreptitious data collection violates various wiretapping and privacy statutes. (*Id*. ¶¶ 48–78.) On January 7, 2025, Amplitude filed a motion to dismiss that complaint, arguing, among other things, that Plaintiffs lack Article III standing to pursue their claims in federal court. (Def.'s Mot. to Dismiss, Dkt. 30.) That motion is fully briefed and pending before this Court. Four months later, on April 8, 2025, Amplitude moved to compel arbitration based on an arbitration agreement in the Terms & Conditions of DoorDash, one of the 40,000 apps containing Amplitude's SDK. (Def.'s Mot. to Compel Arb., Dkt. 36 ("Mot.").) DoorDash is a food-delivery app that both Plaintiffs have used. (FAC ¶¶ 33–40.)

## ARGUMENT

Amplitude's motion to compel arbitration should be denied for three reasons, each of which alone is sufficient: First, as a nonparty to the DoorDash Arbitration Agreement, Amplitude has no authority to enforce it, nor can it invoke equitable estoppel to do so. Second, the DoorDash Arbitration Agreement—including its delegation clause—is unconscionable and therefore unenforceable. Third, by the express terms of the DoorDash Arbitration Agreement's class waiver provision, Plaintiffs' class action "must be litigated."[1]

---

[1] Amplitude suggests that the Court resolve its motion to compel arbitration before addressing the Article III standing argument in its Motion to Dismiss. (Mot. at 7.) "However, it is well-established that a federal court only has jurisdiction over a petition to compel arbitration pursuant to the FAA if the federal court would have jurisdiction over the underlying substantive dispute." *In re Wade*, No. 14-cv-03453-LHK, 2014 WL 5088258, at *4 (N.D. Cal. Oct. 9, 2014), *aff'd*, 671 F. App'x 669 (9th Cir. 2016). As Article III standing is a necessary element of subject matter jurisdiction, *Hoffman v. Pulido*, 928 F.3d 1147, 1152 (9th Cir. 2019), this Court should not rule on the Motion to Compel Arbitration without first confirming that Plaintiffs have Article III standing. As explained in their response to Amplitude's Motion to Dismiss, dkt. 33, they do.

## I. AMPLITUDE CANNOT INVOKE THE DOORDASH ARBITRATION AGREEMENT TO WHICH IT IS NOT A PARTY.

"Generally, the contractual right to compel arbitration may not be invoked by one who is not a party to the agreement and does not otherwise possess the right to compel arbitration." *Young v. Solana Labs., Inc.*, No. 22-cv-03912-RFL, 2024 WL 4023087, at *3 (N.D. Cal. Sept. 3, 2024) (quoting *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1126 (9th Cir. 2013)). Amplitude is not a party to the DoorDash Arbitration Agreement, nor does it otherwise possess the right to invoke it. For that reason alone, Amplitude's motion to compel arbitration should be denied.

### A. Amplitude is not a party to the DoorDash Arbitration Agreement.

The DoorDash Arbitration Agreement expressly applies only to DoorDash and its customers—not Amplitude. The first page of the DoorDash Terms & Conditions states that they constitute a legal agreement "BETWEEN YOU AND DOORDASH," that they contain provisions governing resolution of claims "THAT YOU AND WE HAVE AGAINST EACH OTHER," and that they include an Arbitration Agreement requiring arbitration of disputes "BETWEEN US." (Dkt. 36-3 at 2 (T&C Preamble).)[2] The Arbitration Agreement itself, Section 14 of the Terms & Conditions, likewise makes clear that it applies only to DoorDash and its customers. The Arbitration Agreement states that any and all claims "between you and DoorDash" are to be resolved by binding arbitration, *id*. at 20 (T&C § 14), that "[y]ou and DoorDash" agree to engage in good-faith informal efforts to resolve disputes, *id*. at 21 (T&C § 14(b)), that arbitration will decide the rights and liabilities "of you and DoorDash," *id*. at 23 (T&C § 14(d)), that an arbitrator's decision is final and binding "on you and DoorDash," *id*. at 24 (T&C § 14(d)), that "[y]ou and DoorDash" elect to have all disputes resolved by arbitration," *id*. (T&C § 14(e)), and that "YOU AND DOORDASH" agree to waive any right to proceed as a class action, *id*. (T&C § 14(f)). As a

---

[2]    The DoorDash Terms & Conditions have been modified several times since Plaintiffs began using the app. Unless otherwise noted, all references to the DoorDash Terms & Conditions ("T&C") refer to the May 16, 2024, version, dkt. 36-3, the version in effect when this suit was originally filed.

non-party to the DoorDash Arbitration Agreement, Amplitude cannot invoke it against Plaintiffs here.[3]

**B.    Amplitude does not otherwise possess the right to enforce the DoorDash Arbitration Agreement.**

To circumvent its non-party status, Amplitude argues that it is entitled to enforce the DoorDash Arbitration Agreement under a theory of equitable estoppel. Amplitude is wrong.

**1.    This Court—not an arbitrator—decides the equitable estoppel issue.**

As a preliminary matter, by pointing to language in the DoorDash Arbitration Agreement purporting to delegate arbitrability questions to an arbitrator, Amplitude makes the somewhat circular suggestion that whether it can use equitable estoppel to invoke the Arbitration Agreement as a nonparty is itself a question for arbitration. (Mot. at 9.) But "[c]ontrolling Ninth Circuit authority provides that the court, not the arbitrator, decides questions of arbitrability involving judicial doctrines and non-signatories." *Nutanix, Inc. v. Tessell, Inc.*, No. 24-cv-01729-AMO, 2025 WL 793652, at *4 (N.D. Cal. Mar. 12, 2025) (citing *Kramer*, 705 F.3d at 1127). Indeed, as another court in this district has explained, "it's not clear how a nonparty to an arbitration agreement could ever invoke a delegation provision when seeking to compel arbitration based only on equitable estoppel." *Young v. ByteDance, Inc.*, 700 F. Supp. 3d 808, 812–13 (N.D. Cal. 2023). "By definition, there is no contract formed between a party to the contract and a nonparty asserting equitable estoppel, and so the nonparty cannot invoke the delegation provision." *Id*. at 813.

Furthermore, even if a nonparty *could* invoke a delegation provision as a general matter, the provision must provide "a clear and unmistakable agreement to arbitrate arbitrability with nonsignatories." *Solana*, 2024 WL 4023087, at *5 (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). Here, because the DoorDash Terms & Conditions (including the Arbitration Agreement) are expressly limited to DoorDash and its customers, no such clear and unmistakable

---

[3]    Amplitude does not argue that it is a subsidiary, affiliated company, or assignee of DoorDash under DoorDash's Consumer Terms & Conditions. (*See* dkt. 36-3 at 2–3, 34 (T&C §§ 1, 24(g)).)

delegation agreement is present. *See id*. at *4–6 ("Although Young may have agreed to arbitrate arbitrability with Exodus, Defendants have not provided clear and unmistakable evidence that Young agreed to arbitrate arbitrability with *them* as nonsignatories."); *ByteDance*, 700 F. Supp. 3d at 812–13 ("[E]ven if one were to adopt the assumption that a third party asserting equitable estoppel could in some cases invoke a delegation provision, TikTok cannot do so here, because the only reasonable interpretation of this particular delegation provision is that the parties intended it to apply only to disputes between Velez and Telus."); *Houghton v. Leshner*, No. 22-cv-07781-WHO, 2024 WL 5154071, at *4–5 (N.D. Cal. Nov. 25, 2024) (holding, based on similar contractual language to *Solana*, *ByteDance*, and here, that "the question of arbitrability with nonsignatories rests with me, not an arbitrator"). It is thus a question for this Court—not a question delegated to an arbitrator—whether Amplitude can invoke equitable estoppel to enforce the DoorDash Arbitration Agreement against Plaintiffs. As explained below, Amplitude cannot.

### 2. Amplitude cannot enforce the DoorDash Arbitration Agreement through equitable estoppel.

A litigant can enforce an arbitration agreement to which it is not a party "if the relevant state contract law allows" it. *Kramer*, 705 F.3d at 1128 (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009)). Here, Amplitude argues that California principles of equitable estoppel allow it to enforce the DoorDash Arbitration Agreement. While Plaintiffs agree that California provides the relevant state contract law, Amplitude's equitable estoppel argument fails for several reasons.[4]

### a. The traditional elements of equitable estoppel are not met here.

First, equitable estoppel—as it is traditionally understood in California and elsewhere—is simply inapplicable here. The doctrine of equitable estoppel "provides that a person may not deny the existence of a state of facts if he intentionally led another to believe a particular circumstance to be true and to rely upon such belief to his detriment." *Alameda Cnty. Deputy Sherriff's Ass'n v.*

---

[4]    California law governs questions of state law in this Court absent a party identifying a meaningful conflict between California law and the law of another state. *Homedics, Inc. v. Valley Forge Ins. Co.*, 315 F.3d 1135, 1138 (9th Cir. 2003).

*Alameda Cnty. Emps.' Ret. Ass'n*, 9 Cal. 5th 1032, 1072 (2020). In other words, "[e]quitable estoppel generally must be premised on some type of representation, ordinarily false, about a set of circumstances." *Id*. Thus, "[a]pplication of the doctrine . . . requires, at a minimum, an actionable statement—that is, an affirmative representation or act by the [party sought to be estopped] that is intended to induce reliance by the [party invoking estoppel]." *Id*. at 1073 (quotations omitted); *see also Young v. Horizon W., Inc.*, 220 Cal. App. 4th 1122, 1131–32 (2013) (holding equitable estoppel not available where "the critical threshold element is missing: Plaintiff did not represent or conceal any fact"). "The classic example is the assertion of a procedural bar, such as a statute of limitations, after the defendant has induced plaintiff not to file suit within the allotted time." *City of Hollister v. Monterey Ins. Co.*, 165 Cal. App. 4th 455, 487 (2008).

Here, Plaintiffs made no representation and engaged in no conduct intended to induce Amplitude into believing that Plaintiffs would arbitrate any disputes that might arise between them. Indeed, Plaintiffs had no pre-existing relationship with Amplitude, or "even know who or what Amplitude is." (FAC ¶ 22.) Nor does Amplitude claim that it held such a mistaken belief or that it took any action in detrimental reliance on such a belief. Amplitude does not (nor could it seriously) assert, for example, that it never would have engaged in the surreptitious data collection at issue if it knew it would have to litigate, rather than arbitrate, any claims against it arising out of that conduct. In fact, Amplitude has been actively litigating in this Court for over four months, filing and fully briefing its Rule 12(b)(1) and 12(b)(6) motions, without even mentioning an arbitration agreement. (Dkts. 30, 35.) Amplitude cannot now seriously claim it held a mistaken belief about or acted in reliance on an arbitration clause that it obviously didn't know or care about until now. Traditional principles of equitable estoppel—which bar litigants from denying facts they previously induced their opponent to detrimentally rely on—do not bar Plaintiffs from asserting that Amplitude cannot enforce the DoorDash Arbitration Agreement to which it is expressly not a party.

**b.      Amplitude improperly invokes an arbitration-specific version of equitable estoppel.**

Effectively conceding that traditional principles of equitable estoppel do not help it here, Amplitude instead invokes an arbitration-specific version of the doctrine: that a nonsignatory can enforce an arbitration agreement "(1) when the 'claims [against the nonsignatory] are intimately founded in and intertwined with the underlying contract'; or (2) 'when the signatory alleges substantially interdependent misconduct by the nonsignatory and another signatory and the allegations of the interdependent misconduct are founded in or intimately connected with the obligations of the underlying agreement.'" (Mot. at 11 (alteration in original) (emphasis omitted) (quoting *Kramer*, 705 F.3d at 1128–29).) The Supreme Court recently made clear, however, that courts may not "invent special, arbitration-preferring" rules. *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418–19 (2022) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24 (1983)); *see also Quach v. Cal. Commerce Club, Inc.*, 16 Cal. 5th 562, 583 (2024) (holding that courts should not "apply[] any special rules based on a policy favoring arbitration") (citing *Morgan,* 596 U.S. at 418). But that's exactly what has happened here. California appellate courts created two strains of equitable estoppel—one for nonsignatories attempting to enforce arbitration agreements and one for all other situations. Acknowledging this distinction, one of those courts has noted "the term 'equitable estoppel' may be a bit of a misnomer [in the arbitration clause nonsignatory context], because the theory justifying enforcement of an arbitration provision by a nonsignatory does not require the nonsignatory's detrimental reliance on the signatory's words or conduct, as traditional equitable estoppel would." *Ballesteros v. Ford Motor Co.*, 331 Cal. Rptr. 3d 232, 239 n.2 (2025); *see also Davis v. Nissan N. Am., Inc.*, 100 Cal. App. 5th 825, 835 n.3 (2024) ("In the arbitration context, California courts have not applied the four traditional elements for equitable estoppel . . . ."). In other words, California appellate courts did what *Morgan* (and *Quach*) now explicitly forbid—they created "a bespoke rule of [equitable estoppel] for arbitration." *Morgan*, 596 U.S. at 417. This arbitration-specific version of equitable estoppel on which Amplitude relies does not survive *Morgan*. *See* Myriam Gilles, *Arbitration's Unraveling*, 172 U. Pa. L. Rev. 1063, 1094

(2024) ("[T]he entire edifice of state-law estoppel principles supporting nonsignatory arbitration should, by all logic, come crumbling down in the wake of *Morgan*.").

Amplitude relies heavily on *Herrera v. Cathay Pacific Airways Ltd.*, 104 F.4th 702 (9th Cir. 2024), which is the only Ninth Circuit case post-*Morgan* applying California appellate courts' arbitration-specific version of equitable estoppel. That decision, however, does not cite or discuss *Morgan* or *Quach*, nor was the issue raised by the parties in their briefs. Consequently, *Herrera* is not binding on this Court as to whether the arbitration-specific equitable estoppel rule survives *Morgan* and *Quach*. *See United States v. Kirilyuk*, 29 F.4th 1128, 1134 (9th Cir. 2022) ("[C]ases are not precedential for propositions not considered.") (quotations omitted).

Finally, Plaintiffs note that further guidance on this issue should be coming soon, as there is a nonsignatory equitable estoppel case currently pending before the California Supreme Court and awaiting ruling. *Ford Motor Warranty Cases*, 532 P.3d 270 (Cal. 2023) (granting review). Respondents and amici in that case have argued that "many of the decisions applying equitable estoppel to compel arbitration are erroneous because they treat arbitration agreements differently from other contracts by failing to require detrimental reliance." *Ballesteros*, 331 Cal. Rptr. 3d at 239 n.2; *Ford Motor Warranty Cases*, 2024 WL 2272883, at *3 (amici curiae brief submitting that "[n]ot only is the arbitration-specific form wholly divorced from the traditional form that is well-accepted by this Court—and centuries of caselaw—it also conflicts with United States Supreme Court precedent interpreting the Federal Arbitration Act that forbids courts from adopting arbitration-specific rules (*Morgan v. Sundance Inc.* (2022) 596 U.S. 411) and using non-state law principles to permit arbitration by nonsignatories (*Arthur Anderson LLP v. Carlisle* (2009) 556 U.S. 624.)"). The California Supreme Court heard oral augment on April 8, 2025, and will likely provide crucial guidance on this issue soon. At minimum, this Court should await ruling on Amplitude's motion until a decision is issued in *Ford Motor Warranty Cases*, No. S279969.

### c.    Amplitude fails to satisfy even the arbitration-specific version of equitable estoppel.

In any case, even under the *Morgan*-abrogated arbitration-specific rule of nonsignatory equitable estoppel, Amplitude's argument fails. The first prong of that rule allows a nonsignatory to invoke equitable estoppel to enforce an arbitration agreement "when a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory or the claims are intimately founded in and intertwined with the underlying contract." *Kramer*, 705 F.3d at 1128–29 (quotations omitted). "These circumstances are limited." *Ballesteros*, 331 Cal. Rptr. 3d at 240. There "must be actual reliance on the terms of the agreement, and the causes of action must premise liability on duties *imposed by the agreement* itself." *Id*. (quotations and citations omitted). As the Ninth Circuit has explained:

> [W]here allegations reveal no claim of any violation of any duty, obligation, term or condition imposed by the [relevant] agreements and there is no claim founded in or even tangentially related to any duty, obligation, term or condition imposed by the [relevant] agreements, the claims are fully viable without reference to the terms of those agreements and equitable estoppel does not apply.

*Namisnak v. Uber Techs., Inc.*, 971 F.3d 1088, 1095 (9th Cir. 2020) (quotations and citations omitted). "The purpose of equitable estoppel is to 'prevent a plaintiff from having it both ways by seeking to hold a non-signatory liable for obligations imposed by an agreement, while at the same time repudiating the arbitration clause of that very agreement.'" *Solana*, 2024 WL 4023087, at *6 (quoting *Ngo v. BMW of N. Am., LLC*, 23 F.4th 942, 949 (9th Cir. 2022)).

Here, Plaintiffs are not trying to "hav[e] it both ways," *id*., because they do not seek to hold Amplitude liable for obligations imposed by the DoorDash Terms & Conditions. The duties and obligations that Plaintiffs allege Amplitude violated arise out of one federal statute (the Wiretap Act) and three California statutes (the Invasion of Privacy Act, the Comprehensive Computer Data Access and Fraud Act, and the California Wiretap Act). None of Plaintiffs' four claims premise liability on any duties imposed on Amplitude by the DoorDash Terms & Conditions—indeed, the DoorDash Terms & Conditions don't impose any duties at all on Amplitude because it is not a party to those terms. In other words, all of Plaintiffs' claims "are fully viable without reference to" the

DoorDash Terms & Conditions. *Namisnak*, 971 F.3d at 1095 (quoting *Goldman v. KPMG, LLP,* 173 Cal. App. 4th 209, 92 (2009)).

Amplitude argues that Plaintiffs' claims "cannot be adjudicated without the Privacy Policy"—a document referenced in the DoorDash Terms & Conditions and in which Plaintiffs purportedly consented to Amplitude's surreptitious data collection. (Mot. at 12–14.) But "the equitable estoppel doctrine looks at whether a Plaintiff's claims rely on an underlying agreement, not whether a party's defense relies on such an agreement." *Faucett v. Move, Inc.*, No. 22-cv-04948-ODW, 2024 WL 2106727, at *6 (C.D. Cal. Apr. 22, 2024) (citing *Murphy v. DirecTV, Inc.,* 724 F.3d 1218, 1230 (9th Cir. 2013)), *aff'd*, No. 24-2631, 2025 WL 1112935 (9th Cir. Apr. 15, 2025). And consent is an affirmative defense to all of Plaintiffs' claims. *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 619 (N.D. Cal. 2021) (stating consent is an affirmative defense to all plaintiffs' claims, including under the federal Wiretap Act, the California Wiretap Act, and the California Invasion of Privacy Act, among others); *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1048 (S.D. Cal. 2023) ("[T]he Defendant carries the ultimate burden of proving a consent defense" to a claim under the Comprehensive Computer Data Access and Fraud Act."); *Matera v. Google Inc.*, No. 15-CV-04062-LHK, 2016 WL 5339806, at *17 (N.D. Cal. Sept. 23, 2016) ("[A]s the party seeking the benefit of the exception, it is Google's burden to prove consent.") (quotation omitted). As explained above, Plaintiffs' claims rely on one federal and three state statutes, not the DoorDash Terms & Conditions. Thus, because only Amplitude's consent defense—not Plaintiffs' claims—rely on the DoorDash Terms & Conditions, equitable estoppel does not apply. *Faucett*, 2024 WL 2106727, at *5–6 (refusing to apply equitable estoppel where plaintiff's claims were based on federal statute, even though nonsignatory asserted consent defense based on contract containing arbitration clause); *Wiedenbeck v. United Educ. Inst.*, No. SACV 15-00810-CJC, 2015 WL 12743599, at *4–5 (C.D. Cal. Dec. 15, 2015) ("This Court . . . declines to expand the reach of the equitable estoppel doctrine to the situation presented here: where the plaintiff's claims against the nonsignatory to the arbitration agreement do not rely on or depend on the agreement to which the plaintiff is a

signatory, though the nonsignatory's defense to those claims depends on the agreement to which the plaintiff is a signatory."); *Rahmany v. T-Mobile USA Inc.*, 717 F. App'x 752, 753 (9th Cir. 2018) (reversing district court's granting of nonsignatory's motion to compel arbitration because "although [nonsignatory's] affirmative defense of express consent may require the district court to analyze the Wireless Agreement, [plaintiff's] *claims* do not rely on the terms of the [Wireless Agreement]") (quotations omitted).

Nor does the second prong of the arbitration-specific equitable estoppel test help Amplitude. That prong allows a nonsignatory to enforce an arbitration agreement "when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and the allegations of interdependent misconduct are founded in or intimately connected with the obligations of the underlying agreement." *Kramer*, 705 F.3d at 1128–29 (quotation omitted). Plaintiffs do not allege substantially interdependent and concerted misconduct by Amplitude and DoorDash. Amplitude argues that "Plaintiffs' core theory is that Amplitude and DoorDash collaborated to collect their information via Amplitude's SDK." (Mot. at 14.) But that's not correct. Plaintiffs' core theory is that Amplitude integrated its SDK into 40,000 mobile apps to surreptitiously collect sensitive data from consumers and create digital dossiers on them to support its advertising and AI business model. (FAC ¶¶ 13–32.) The only reason that anyone is talking about DoorDash here is because DoorDash happens to be one of the Amplitude-SDK-containing apps used by Plaintiffs. Plaintiffs would have the exact same claims against Amplitude if they had used any of the other 39,999 apps into which Amplitude's SDK was integrated. (Indeed, Plaintiffs are seeking to represent a class composed of users of all those other apps. (*Id.* ¶ 41.)

Those are not allegations of substantially interdependent and concerted misconduct. In *Houghton*, for example, a cryptocurrency creator that was being sued for securities violations tried to invoke equitable estoppel to enforce an arbitration agreement between plaintiffs and the trading platform on which plaintiffs had purchased defendant's cryptocurrency. The court held that the defendant and the trading platform did not engage in substantially interdependent and concerted

misconduct—and thus, equitable estoppel did not apply—because "plaintiffs could have purchased [defendant's cryptocurrency] on any exchange and . . . alleged the exact same claim against [defendant]." *Houghton*, 2024 WL 5154071, at *6. Plaintiffs here aren't alleging substantially interdependent and concerted misconduct between Amplitude and DoorDash because they aren't alleging any misconduct by DoorDash. *See Wiedenbeck*, 2015 WL 12743599, at *5 (no equitable estoppel where "[plaintiff] is not alleging any misconduct whatsoever against [signatory], let alone alleging 'interdependent misconduct' concerning [signatory] and [defendant nonsignatory]"); *Mance v. Mercedes-Benz USA*, 901 F. Supp. 2d 1147, 1157 (N.D. Cal. 2012) (interdependent and concerted misconduct prong of equitable estoppel does not apply where plaintiff "does not bring any claims against [signatory]").

Furthermore, even if Plaintiffs had alleged substantially interdependent and concerted misconduct between Amplitude and DoorDash, such allegations, "standing alone, are not enough." *Kramer*, 705 F.3d at 1133 (quotation omitted). The concerted misconduct still "must be founded in or intimately connected with the obligations of the" DoorDash Terms & Conditions. *Id*. (quotation omitted). But here, the alleged (and supposedly concerted) misconduct—surreptitious data collection to create digital dossiers on consumers—is not bound up with obligations imposed by the DoorDash Terms & Conditions—an agreement governing a food-delivery app. If existing at all, any concerted misconduct between Amplitude and DoorDash would be founded in obligations imposed by whatever separate agreement or arrangement they may have entered into with each other. (*See* FAC ¶ 21 (alleging that Amplitude contracted with DoorDash to have its SDK embedded in the DoorDash app).) And, as with the first equitable estoppel prong, Amplitude's purported consent defense based on the DoorDash Privacy Policy does not mean that any concerted misconduct between Amplitude and DoorDash is intimately connected with the DoorDash Terms & Conditions. *See Wiedenbeck*, 2015 WL 12743599, at *5 (rejecting argument that "the second basis for finding equitable estoppel applies since the key issue in this litigation is whether [nonsignatory defendant]

had sufficient prior express consent to call [plaintiff], and this defense depends entirely on whether [signatory] obtained sufficient consent from [plaintiff]").

Because Amplitude is not a signatory to the DoorDash Arbitration Agreement nor can it use equitable estoppel to invoke it, Amplitude's motion to compel arbitration should be denied.

## II.     THE ARBITRATION AGREEMENT IS UNCONSCIONABLE AND UNENFORCEABLE.

Even if Amplitude could invoke the DoorDash Arbitration Agreement as a nonsignatory, an additional reason to deny its motion to compel arbitration is the agreement's unconscionability. "A court 'may declare an arbitration agreement unenforceable' where a generally applicable state contract defense applies, including unconscionability." *Ireland-Gordy v. Tile, Inc.*, No. 23-cv-04119-RFL, 2024 WL 5162413, at *8 (N.D. Cal. Dec. 19, 2024) (quoting *Heckman v. Live Nation Ent., Inc.*, 120 F.4th 670, 680 (9th Cir. 2024)), *appeal filed*, No. 25-403 (9th Cir. Jan. 21, 2025). A small wrinkle in the analysis arises because the DoorDash Arbitration Agreement delegates enforceability questions to the arbitrator. (Dkt. 36-3 at 23–24 (T&C § 14(d).) Thus, before assessing the unconscionability of the DoorDash Arbitration Agreement, this Court must first look to whether the delegation clause itself is unconscionable. *Heckman*, 120 F.4th at 680. In doing so, however, the Court's assessment of the delegation clause "is not limited to the bare text of the clause." *Id*. In evaluating an unconscionability challenge to a delegation clause, "a court must be able to interpret the provision in the context of the agreement as a whole, which may require examining the underlying arbitration agreement as well." *Id*. at 681 (quotation omitted). "If a court cannot look through the delegation provision to the rest of the contract, a court would fail to see how delegating questions of arbitrability to an arbitrator was unconscionable." *Id*. (quotation omitted).

"Under California law, a contract is unconscionable if one of the parties lacked a meaningful choice in deciding whether to agree and the contract contains terms that are unreasonably favorable to the other party." *Ireland-Gordy*, 2024 WL 5162413, at *8 (quotation omitted). In order to establish unconscionability, Plaintiffs must demonstrate both procedural and substantive unconscionability, although "they need not be present in the same degree." *Id*. (quotations omitted).

Instead, California follows a "sliding scale approach" under which "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id*. (quotations and alteration omitted); *see also Heckman*, 120 F.4th at 681. Here, the delegation clause is both procedurally and substantively unconscionable and therefore unenforceable. Consequently, this Court—not an arbitrator—can decide the unconscionability of the DoorDash Arbitration Agreement. Ultimately it, too, is both procedurally and substantively unconscionable, and thus also unenforceable.

**A.    The delegation clause is procedurally unconscionable.**

"A procedural unconscionability analysis 'begins with an inquiry into whether the contract is one of adhesion, defined as a standardized contract, imposed upon the subscribing party' by the party with superior bargaining strength 'without an opportunity to negotiate terms.'" *Ireland-Gordy*, 2024 WL 5162413, at *10 (quoting *Heckman*, 120 F.4th at 681). Here, it cannot be disputed that the DoorDash Terms & Conditions is such a standardized contract, imposed upon Plaintiffs by DoorDash without an opportunity to negotiate terms (such as the delegation clause). "Because the [delegation clause] is part of a contract of adhesion, it is therefore at least procedurally unconscionable to a low degree, even assuming no other oppression or surprise exists beyond that inherent to any adhesion contract." *Id*.; *see also Heckman*, 120 F.4th at 681 ("Some California courts have held that in itself a finding of a contract of adhesion is essentially a finding of procedural unconscionability.") (quotations and citations omitted).

Beyond the adhesive nature of the DoorDash Terms & Conditions, however, two elements of surprise increase their procedural unconscionability. *See Heckman*, 120 F.4th at 681–82 (noting that "surprise" is a factor in procedural unconscionability). First, the DoorDash Terms & Conditions reserve to DoorDash the unilateral right to modify the terms without prior notice. (Dkt. 36-3 at 4 (T&C § 3).) In fact, DoorDash modified the Terms & Conditions sometime between 2020 and 2022 by adding a Batch Arbitration provision that wasn't part of the terms when Plaintiffs began using DoorDash. (*Compare id*. at 24 (T&C § 14(g) (Batch Arbitration provision)) *with* dkt. 36-2 (April

2018 T&C; no Batch Arbitration provision) *and* dkt. 36-6 (January 2020 T&C; no Batch Arbitration provision). Not only is the Batch Arbitration provision substantively unconscionable as discussed below, but as part of the DoorDash Arbitration Agreement, it applies retroactively to claims arising before it was added. (Dkt. 36-3 at 20 (T&C § 14(a) ("This Arbitration Agreement shall apply, without limitation, to all claims that arose or were asserted before, on, or after the effective date of this Agreement.")).) Contract terms that allow for unilateral, retroactive modification increase the procedural unconscionability of an adhesion contract. *See*, *e.g.*, *Heckman*, 120 F.4th at 682–83.

Second, DoorDash users—like Plaintiffs—would "be reasonably shocked to learn that creating a [DoorDash] account forces them to arbitrate claims about a third party's use of [DoorDash's] products or services to stalk them." *Ireland-Gordy*, 2024 WL 5162413, at *10. Plaintiffs had no idea who Amplitude was, let alone that Amplitude would use an SDK integrated into DoorDash to surreptitiously collect their personal data (including real-time location) and create digital dossiers on them every time they used the app. (FAC ¶ 22.) That they might be forced to arbitrate claims against Amplitude under the DoorDash Arbitration Clause for Amplitude's stalking of them (including disputes over the arbitrability of such claims under the delegation clause) raises "a strong element of surprise" that "evinces more than a minimal degree of procedural unconscionability." *Ireland-Gordy*, 2024 WL 5162413, at *10 (citation omitted).

**B.    The delegation clause is substantively unconscionable.**

In addition to the high level of procedural unconscionability, the delegation clause also exhibits a high degree of substantive unconscionability. "Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided." *Heckman*, 120 F.4th at 683 (quotations omitted). Several aspects of the DoorDash Arbitration Agreement display such substantive unfairness, harshness, and one-sidedness.

To start, the broad scope of the delegation clause as applied here is substantively unconscionable. "[I]t would be overly harsh, unduly oppressive, or unfairly one-sided to enforce an arbitration provision in Plaintiffs' consumer contracts as applying to claims about [Amplitude's] use

of [DoorDash's] products or services to stalk Plaintiffs." *Ireland-Gordy*, 2024 WL 5162413, at *9 (quotation omitted). Amplitude argues that the scope of the DoorDash Arbitration Agreement is broad enough to cover Plaintiffs' claims against it for surreptitiously collecting sensitive personal information about them in violation of federal and state statutes. (Mot. at 10–11.) But "there is a high degree of substantive unconscionability to the extent the arbitration agreement purportedly encompasses claims relating to third-party conduct using [DoorDash's] products or services for stalking." *Ireland-Gordy*, 2024 WL 5162413, at *9.

The Batch Arbitration provision mentioned above is also substantively unconscionable. That provision states that "similar arbitration demands . . . presented by or with the assistance or involvement of the same law firm or organization," must be grouped into "batches" of up to 100 claimants each. (Dkt. 36-3 at 24 (T&C § 14(g)).) The Batch Arbitration provision further states that "the arbitration provider shall provide for resolution of each batch as a single arbitration with . . . one arbitrator assigned per batch." (*Id.*) In other words, a single arbitrator's decision can bind 100 different claimants without any guarantee that each claimant can participate in the resolution of his or her own claim. The Ninth Circuit has held similar mass arbitration provisions unconscionable. *Heckman*, 120 F.4th at 684–85 ("It is black-letter law that binding litigants to the rulings of cases in which they have no right to participate . . . violates basic principles of due process."); *id.* at 687 (mass arbitration provision calling for single arbitrator to preside over several cases at one time unconscionable).[5]

Finally, the DoorDash Arbitration Agreement includes an appeal provision that is substantively unconscionable. That provision states that "[i]f the arbitration award includes any injunction or monetary award that exceeds $100,000, then either party shall have the right to appeal that award to an arbitration appellate panel." (Dkt. 36-3 at 22 (T&C § 14(c)(i)).) But despite the

---

[5]    The unconscionable mass arbitration provision at issue in *Heckman* was devised with a "remarkable degree of coordination" with Latham & Watkins LLP, Amplitude's counsel here. *Heckman*, 120 F.4th at 677 (quotation omitted).

"either party" language, the provision is not mutual. "As a practical matter, the benefit which the appeals clause confers on claimants is nothing more than a chimera." *Heckman*, 120 F.4th at 686 (quotations and alterations omitted). Arbitration awards including monetary and injunctive relief—the kinds of awards that can be appealed—will almost certainly be in claimants' favor. The kinds of awards that are likely to be in defendants' favor—those *denying* monetary or injunctive relief—are not appealable. These kinds of asymmetrical appeal provisions are substantively unconscionable. *Id*.[6]

### C.    The DoorDash Arbitration Agreement is unconscionable and unenforceable.

"Because the delegation clause is unconscionable and unenforceable, it falls to [this Court] to determine whether the arbitration agreement as a whole is unconscionable and unenforceable." *Heckman*, 120 F.4th at 687. It is. The elements of the DoorDash Terms & Conditions that make the delegation clause unconscionable—their adhesive nature, the unilateral modification provision, the Arbitration Agreement's broad scope covering third-party misconduct, the Batch Arbitration provision, and the asymmetrical appeal provision—also serve to make the DoorDash Arbitration Agreement both procedurally and substantively unconscionable. *See id*. at 688 (holding arbitration agreement unconscionable for same reasons as delegation provision).

California law grants broad leeway to trial courts to remedy unconscionable contracts: they may refuse to enforce the contract, sever an unconscionable clause and enforce the remainder of the contract, or limit the application of an unconscionable clause to avoid an unconscionable result. *Id*. (citing Cal. Civ. Code § 1670.5(a)). Given the number and breadth of unconscionable provisions here, this Court need not attempt to sever them from the DoorDash Terms & Conditions; it should

---

[6]    The unconscionability of the asymmetrical appeal provision supports the unconscionability of the delegation clause. As the Ninth Circuit explained in *Heckman*, plaintiffs challenging the validity of the delegation clause may be seeking an injunction against the unconscionable arbitration provisions in the rest of the agreement or an injunction barring the use of a conflicted arbitrator. 120 F.4th at 687–88. "If the arbitrator denies such requests for injunctive relief, the Terms prohibit appeal of any of the arbitrator's decisions leading to the denial, including the arbitrator's threshold decision under the delegation clause that the parties' dispute is arbitrable." *Id*.

simply hold the entire Arbitration Agreement unenforceable. *See, e.g.*, *id*. at 688–89 (holding district court did not abuse its discretion in declining to sever offending provisions where "unconscionability permeates all aspects of the arbitration agreement"); *Ronderos v. USF Reddaway, Inc.*, 114 F.4th 1080, 1099–104 (9th Cir. 2024) (affirming district court's refusal to sever unconscionable terms from arbitration agreement where "the procedural unconscionability is at least moderate, and the agreement contains at least two substantively unconscionable provisions"); *MacClelland v. Cellco P'ship*, 609 F. Supp. 3d 1024, 1045–46 (N.D. Cal. 2022) (refusing to sever where existence of multiple unconscionable provisions "suggested that the party in the superior bargaining position was trying to impose arbitration not as an alternative to litigation but rather as an inferior forum").

The fact that the DoorDash Arbitration Agreement contains a severability clause, Dkt. 36-3 at 25 (T&C § 14(l)), does not affect the analysis. *See MacClelland*, 609 F. Supp. 3d at 1045 ("The existence of the severability clauses does not change the fact that where an agreement is permeated by unconscionability, a court will not sever the unlawful provisions."); *Heckman*, 120 F.4th at 688–89 (affirming district court's refusal to sever despite existence of severability clause); *Ronderos*, 114 F.4th at 1103 (same, noting that "California courts have frequently held that a trial court did not abuse its discretion in declining to sever unconscionable provisions, even though the agreement contained a severability clause"). Indeed, "[i]f the Court were to sever the numerous unconscionable provisions in a case such as this, companies could be incentivized to retain unenforceable provisions designed to chill customers' vindication of their rights, then simply propose to sever these provisions in the rare event that they are challenged successfully in court." *MacClelland*, 609 F. Supp. 3d at 1046 (citation omitted); *Heckman*, 120 F.4th at 688 (quoting *MacClelland*).

## III.    PLAINTIFFS' CLASS ACTION "MUST BE LITIGATED" UNDER THE CLASS WAIVER PROVISION.

Finally, in addition to Amplitude's status as a nonsignatory to the DoorDash Arbitration Agreement and the agreement's unconscionability, a third reason to deny Amplitude's motion to

compel arbitration can be found in the agreement's class waiver provision. That provision, which ostensibly bars class actions, states that "[i]n any case in which (1) the dispute is filed as a class, collective, or representative action and (2) a civil court of competent jurisdiction finds all or part of the [class waiver] is unenforceable, the class, collective, or representative action must be litigated in a civil court of competent jurisdiction." (Dkt. 36-3 at 24 (T&C § 14(f)).) The class waiver provision further states that "[n]otwithstanding any other provision in this Agreement [i.e., the delegation clause], any claim that all or part of the waivers set forth in Section 14(f) [the class waiver provision] is unenforceable, unconscionable, void, or voidable may be determined only by a court of competent jurisdiction and not by an arbitrator." (*Id.*) In other words, where a case is brought as a class action, a court (not an arbitrator) must decide whether the class waiver provision is unenforceable, and, if so, the class action "must be litigated," not sent to arbitration. (*Id.*)

The class waiver here is unenforceable. Under California law, class waivers in consumer contracts of adhesion are unconscionable when they "operate effectively as exculpatory contract clauses that are contrary to public policy." *Discover Bank v. Superior Court*, 36 Cal. 4th 148, 160–61 (2005) (citing Cal. Civ. Code § 1668).[7] That is exactly the case here. Plaintiffs seek relief for intangible privacy harms that are difficult to value and thus subject to modest individual statutory damages amounts. *See*, *e.g.*, 18 U.S.C. § 2520(c)(2)(B); Cal. Penal Code § 637.2(a)(1). "[S]mall recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Discover Bank*, 36 Cal. 4th at 156–57 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997)).[8] The lack of incentive to bring individual actions to rein in Amplitude's bad behavior is exacerbated by the surreptitious nature of its misconduct. *See Hunt v. Check Recovery Sys., Inc.*, 241 F.R.D. 505, 514 (N.D. Cal. 2007) (noting that "the likelihood of individual actions is

---

[7]   California Civil Code § 1668 states that contracts that "directly or indirectly . . . exempt any one from responsibility for his own . . . willful injury to the person or property of another . . . are against the policy of the law."

[8]   The potential availability of prevailing party attorneys' fee awards does not solve this problem. *Id.* at 162.

remote" where consumers are "unaware of their rights"). Consequently, a class action is "the only effective way to halt and redress" Amplitude's wrongdoing. *Discover Bank*, 36 Cal. 4th at 161 (quotation omitted). The class waiver thus "operate[s] to insulate [Amplitude] from liability that would otherwise be imposed" and is therefore unconscionable. *Id.*

The Supreme Court has held that, "[b]ecause it stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress, California's *Discover Bank* rule is pre-empted by the FAA [Federal Arbitration Act, 9 U.S.C. §§ 1–16]." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 352 (2011) (quotations and citation omitted). But as the Ninth Circuit recently clarified, the FAA preempts the *Discover Bank* rule only when applied to class waivers in arbitration agreements that otherwise call for bilateral arbitration (i.e., one-on-one); the FAA does not preempt application of the *Discover Bank* rule to class waivers in arbitration agreements providing for mass arbitration—such as the Batch Arbitration clause in the DoorDash Arbitration Agreement here. *Heckman*, 120 F.4th at 689–90. As Judge VanDyke explained in a concurrence, "a threshold issue in analyzing FAA obstacle preemption has to be whether the arbitration agreement under consideration is one that shares the attributes of bilateral arbitration as understood in 1925— the only form of arbitration conceived of by Congress at the time." *Id.* at 691 (VanDyke, J., concurring). "[A]rbitration novelties includ[ing] . . . 'batch proceedings'" are "outside the bounds of the norm of bilateral arbitration as [Supreme Court] precedents conceive of it." *Id.* at 692 (VanDyke, J., concurring) (quotations omitted). "State laws that interfere with . . . agreements . . . that lack the fundamental attributes of bilateral arbitration—are not obstacles to accomplishing Congress's goals in the FAA and are therefore not preempted." *Id.* (VanDyke, J., concurring). Thus, where an arbitration agreement "fundamentally differs from bilateral arbitration, the FAA has no preemptive effect . . . [and] California's *Discover Bank* rule springs back to life." *Id.* (VanDyke, J., concurring); *see also id.* at 689 ("We agree with our concurring colleague that the FAA simply does not apply to and protect the mass arbitration model set forth in Ticketmaster's Terms and New Era's Rules.").

Because the DoorDash Arbitration Agreement fundamentally differs from bilateral arbitration by calling for batch proceedings, the FAA does not preempt application of the *Discover Bank* rule here, and the class waiver provision in the DoorDash Arbitration Agreement is unconscionable and unenforceable. Accordingly, Plaintiffs' class action "must be litigated in a civil court." (Dkt. 36-3 at 24 (T&C § 14(f)).)

## CONCLUSION

Amplitude's motion to compel arbitration should be denied.

Respectfully submitted,

**KYLE ATKINS and MICHAEL LUO,** individually and on behalf of all others similarly situated,

Dated: May 6, 2025

By: */s/ Jared Lucky*
*One of Plaintiffs' Attorneys*

Rafey Balabanian (SBN 315962)
rbalabanian@edelson.com
Jared Lucky (SBN 354413)
jlucky@edelson.com
EDELSON PC
150 California Street, 18th Floor
San Francisco, California 94111
Tel: 415.212.9300
Fax: 415.373.9435

Schuyler Ufkes*
sufkes@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Pro hac vice admission to be sought*

*Counsel for Plaintiffs and the Putative Classes*