LATHAM & WATKINS LLP
Michael H. Rubin (Bar No. 214636)
 *michael.rubin@lw.com*
Melanie M. Blunschi (Bar No. 234264)
 *melanie.blunschi@lw.com*
Francis J. Acott (Bar No. 331813)
 *francis.acott@lw.com*
505 Montgomery St., Suite 2000
San Francisco, CA 94111
Telephone: +1.415.391.0600

*Attorneys for Defendant Amplitude, Inc.*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| KYLE ATKINS and MICHAEL LUO, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AMPLITUDE, INC., a Delaware corporation,<br><br>Defendant. | Case No. 3:24-cv-04913-RFL<br><br>**DEFENDANT AMPLITUDE, INC.'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION**<br><br>Hearing: June 3, 2025<br>Time:  10:00 a.m.<br>Location: Courtroom 15—18th Floor<br>Judge: Hon. Rita F. Lin |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

i

**TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION .................................................................................................... 1

II.  ARGUMENT .......................................................................................................... 3

    A.  Amplitude Can Enforce The Arbitration Agreement............................................ 3

        1.  Amplitude Can Enforce Plaintiffs' Arbitration Agreement Under California's Doctrine Of Equitable Estoppel................................ 4

        2.  The Court Should Not—And Cannot—Ignore Binding Precedent From the Ninth Circuit And California Courts of Appeals To Create A New Test For Equitable Estoppel .......................... 9

    B.  The Arbitration Agreement Is Enforceable............................................................ 13

        1.  Plaintiffs' Arguments Are Barred By The Delegation Agreement.................................................................................... 13

        2.  Plaintiffs Cannot Demonstrate Unconscionability.................................. 14

    C.  The Class Waiver Provision Does Not Save Plaintiffs ........................................ 18

III.  CONCLUSION........................................................................................................ 20

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011)......................................................................................................19

*Ballesteros v. Ford Motor Co.*,
109 Cal. App. 5th 1196 (2025) ...............................................................................9, 10, 13

*Bielski v. Coinbase, Inc.*,
87 F.4th 1003 (9th Cir. 2023) .......................................................................................14

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021) .............................................................................7

*Cir. City Stores, Inc. v. Ahmed*,
283 F.3d 1198 (9th Cir. 2002) .......................................................................................15

*Coinmint, LLC v. DX Corr Design, Inc.*,
2023 WL 9595893 (N.D. Cal. Apr. 24, 2023) ...............................................................12

*CoreCivic, Inc. v. Candide Grp., LLC*,
46 F.4th 1136 (9th Cir. 2022) .......................................................................................11

*Doe I v. Google LLC*,
2023 WL 6882766 (N.D. Cal. Oct. 18, 2023).................................................................6

*Esguerra-Aguilar, Inc. v. Shapes Franchising, LLC*,
2020 WL 3869186 (N.D. Cal. July 9, 2020)...................................................................4

*Faucett v. Move, Inc.*,
2024 WL 2106727 (C.D. Cal. Apr. 22, 2024) .................................................................7

*Felisilda v. FCA US LLC*,
53 Cal. App. 5th 486 (2020) ..........................................................................................13

*Ford Motor Warranty Cases*,
532 P.3d 270 (Cal. 2023) ...............................................................................................12

*Ford Motor Warranty Cases*,
89 Cal. App. 5th 1324 (2023) ........................................................................................12

*Franklin v. Cmty. Reg'l Med. Ctr.*,
998 F.3d 867 (9th Cir. 2021) .......................................................................................8, 9

*Freeman v. 3Commas Techs. OU*,
2024 WL 4049864 (N.D. Cal. Sept. 3, 2024) .................................................................9

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

iii

AMPLITUDE'S REPLY ISO MOTION TO
COMPEL ARBITRATION
CASE NO. 3:24-cv-04913-RFL

*Ghazizadeh v. Coursera, Inc.*,
737 F. Supp. 3d 911 (N.D. Cal. 2024) ...................................................................................3

*Goldman v. KPMG, LLP*,
173 Cal. App. 4th 209 (2009) ..........................................................................................2, 10

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023) ................................................................................7

*Guisinger v. Keystone RV Co.*,
2024 WL 3384211 (9th Cir. July 12, 2024)........................................................................12

*Gutierrez v. FriendFinder Networks, Inc.*,
2019 WL 1974900 (N.D. Cal. May 3, 2019)......................................................................15

*Heckman v. Live Nation Ent. Inc.*,
120 F.4th 670 (9th Cir. 2024) ...........................................................................17, 18, 19

*Heckman. Silva v. WhaleCo, Inc.*,
2024 WL 4487421 (N.D. Cal. Oct. 10, 2024)................................................................17, 20

*Herrera v. Cathay Pac. Airways Ltd.*,
104 F.4th 702 (9th Cir. 2024) .............................................................................1, 9, 10, 12

*Houghton v. Leshner*,
2024 WL 5154071 (N.D. Cal. Nov. 25, 2024) ...................................................................8

*Hu v. Whaleco, Inc.*,
2024 WL 4481439 (E.D.N.Y. Oct. 1, 2024).......................................................................20

*Hunt v. Meta Platforms, Inc.*,
735 F. Supp. 3d 1133 (N.D. Cal. 2024) .............................................................................2, 5

*I.C. v. Zynga, Inc.*,
2021 WL 3271187 (N.D. Cal. July 30, 2021)......................................................................3

*In re Apple Inc. Sec. Litig.*,
678 F. Supp. 3d 1147 (N.D. Cal. 2023) .............................................................................3

*In re BAM Trading Servs. Inc. Sec. Litig.*,
733 F. Supp. 3d 854 (N.D. Cal. 2024) ...............................................................................4

*In re Juul Labs, Inc., Antitrust Litig.*,
555 F. Supp. 3d 932 (N.D. Cal. 2021) ...............................................................................15

*In re Pac. Fertility Ctr. Litig.*,
814 F. App'x 206 (9th Cir. 2020) ...................................................................................5, 9

*Ireland-Gordy v. Tile, Inc.*,
760 F. Supp. 3d 946 (N.D. Cal. 2024) ...........................................................................16, 17

*James v. Venture Home Solar, LLC*,
715 F. Supp. 3d 203 (D. Conn. 2024)................................................................11

*Jones v. Starz Ent. Inc.*,
129 F.4th 1176 (9th Cir. 2025) ................................................................17, 18, 20

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) ................................................................6

*Kohler v. Whaleco, Inc.*,
757 F. Supp. 3d 1112 (S.D. Cal. 2024)................................................................17

*Kramer v. Toyota Motor Corp.*,
705 F.3d 1122 (9th Cir. 2013) ................................................................4

*Lair v. Bullock*,
697 F.3d 1200 (9th Cir. 2012) ................................................................11

*Loewen v. Lyft, Inc.*,
129 F. Supp. 3d 945 (N.D. Cal. 2015)................................................................15

*Mance v. Mercedes-Benz USA*,
901 F. Supp. 2d 1147 (N.D. Cal. 2012) ................................................................8

*Matera v. Google Inc.*,
2016 WL 5339806 (N.D. Cal. Sept. 23, 2016) ................................................................7

*McKay v. JPMorgan Chase Bank*,
2016 WL 11755601 (C.D. Cal. Mar. 8, 2016)................................................................18

*Miller v. Gammie*,
335 F.3d 889 (9th Cir. 2003) ................................................................11

*Mohamed v. Uber Techs., Inc.*,
848 F.3d 1201 (9th Cir. 2016) ................................................................14, 15, 16, 19

*Morgan v. Sundance, Inc.*,
596 U.S. 411 (2022)................................................................2, 9, 10

*Munoz v. Conduent State & Local Solns., Inc.*,
2025 WL 799482 (10th Cir. Mar. 13, 2025)................................................................11

*Nutanix, Inc. v. Tessell, Inc.*,
2025 WL 793652 (N.D. Cal. Mar. 12, 2025)................................................................12, 17

*Opperman v. Path, Inc.*,
87 F. Supp. 3d 1018 (N.D. Cal. 2014) ................................................................6

*Patrick v. Running Warehouse, LLC*,
93 F.4th 468 (9th Cir. 2024) ................................................................15

*Perry-Hudson v. Twilio, Inc.*,
   2024 WL 4933332 (N.D. Cal. Dec. 2, 2024)...................................................................... *passim*

*Peskin v. Phinney*,
   182 Cal. App. 2d 632 (1960) ...................................................................................................10

*Quach v. California Commerce Club*,
   16 Cal. 5th 562 (2024) ...........................................................................................................10

*Rahmany v. T-Mobile USA Inc.*,
   717 F. App'x 752 (9th Cir. 2018) .............................................................................................7

*Rent-A-Ctr., W., Inc. v. Jackson*,
   561 U.S. 63 (2010).............................................................................................................13, 14

*Rodriguez v. AT & T Mobility Servs. LLC*,
   728 F.3d 975 (9th Cir. 2013) .................................................................................................11

*Ronderos v. USF Reddaway, Inc.*,
   114 F.4th 1080 (9th Cir. 2024) ..............................................................................................14

*Sanchez v. Valencia Holding Co., LLC*,
   61 Cal. 4th 899 (2015) ...........................................................................................................18

*Sanders v. Swift Transp. Co. of Arizona, LLC*,
   843 F. Supp. 2d 1033 (N.D. Cal. 2012) ...................................................................................5

*Shierkatz Rllp v. Square, Inc.*,
   2015 WL 9258082 (N.D. Cal. Dec. 17, 2015)........................................................................15

*Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*,
   549 U.S. 422 (2007)..................................................................................................................3

*Szetela v. Discover Bank*,
   97 Cal. App. 4th 1094 (2002) ...........................................................................................19, 20

*Torres v. Nissan N. Am., Inc*,
   2022 WL 14147528 (Cal. Super. Ct. Aug. 17, 2022) ............................................................12

*Turing Video Tech., Inc. v. AGI7 Inc.*,
   2025 WL 579190 (N.D. Cal. Feb. 21, 2025) .....................................................................12, 17

*Van De Hey v. EPAM Sys., Inc.*,
   2025 WL 829604 (N.D. Cal. Feb. 28, 2025) .........................................................................14

*Wiedenbeck v. United Educ. Inst.*,
   2015 WL 12743599 (C.D. Cal. Dec. 15, 2015) ...................................................................7, 8

*Young v. Solana Labs, Inc.*,
   2024 WL 4023087 (N.D. Cal. Sept. 3, 2024) ..........................................................................9

**STATUTES**

9 U.S.C. § 3 ..........................................................................................................................20

California Arbitration Act ....................................................................................................10

Telephone Consumer Protection Act .....................................................................................7

**TREATISES**

13 Witkin, Summary of California Law, Equity § 212 (11th ed. 2024) .......................................10

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

vii

AMPLITUDE'S REPLY ISO MOTION TO
COMPEL ARBITRATION
CASE NO. 3:24-cv-04913-RFL

## I.   INTRODUCTION

Plaintiffs' Opposition (Dkt. 40) is a transparent effort to avoid the facts and the law. Despite conceding that they agreed multiple times to the DoorDash Terms & Conditions ("T&C"), which contain an arbitration and delegation agreement, Plaintiffs take a kitchen-sink approach to arguing that Amplitude cannot enforce the agreement. Plaintiffs ignore their own allegations in the First Amended Complaint ("FAC"), ignore recent decisions applying equitable estoppel to substantially similar claims, ask the Court to set aside the test for equitable estoppel applied by the Ninth Circuit and California courts, misstate the T&C in an effort to claim it is unconscionable, and resort to mischaracterizations about Amplitude's services.[1] These efforts confirm that this case belongs in arbitration. Because there is no dispute Plaintiffs agreed to the T&C, the only remaining questions are whether Amplitude can enforce the arbitration agreement and whether the delegation agreement is enforceable. The answer to both is yes.

*First*, Amplitude is entitled to invoke the arbitration agreement in DoorDash's T&C against claims stemming from the DoorDash app's use of Amplitude's technology. As the service provider that developed the SDK allegedly used by DoorDash in its app, Amplitude meets both independent grounds for equitable estoppel under California law: (1) Plaintiffs' claims against Amplitude "are intimately founded in and intertwined with" the T&C, and (2) Plaintiffs allege "substantially interdependent and concerted misconduct by" Amplitude and DoorDash, and those "allegations of interdependent misconduct are founded in or intimately connected with" the T&C. *Herrera v. Cathay Pac. Airways Ltd.*, 104 F.4th 702, 707 n.5, 712 (9th Cir. 2024) (citations omitted and cleaned up). Plaintiffs argue that neither prong is met because they do not allege that Amplitude violated the T&C, but that is not the relevant inquiry—and Plaintiffs' own allegations confirm that the Privacy Policy (which is incorporated into the T&C) provides the basis for their claim that neither DoorDash nor Amplitude disclosed or obtained their consent to the data collection and sharing practices alleged here. And Plaintiffs' request that the Court create a new test for equitable

---

[1] All defined terms have the same meaning as in Amplitude's Motion to Compel Arbitration (Dkt. 36) ("Mot."). Citations to "Opp." refer to Plaintiffs' Opposition (Dkt. 40), and citations to exhibits are to Exs. A-I of the Cramer Declaration (Dkt. 36-1).

estoppel and ignore binding Ninth Circuit and California Court of Appeal precedent is based on a misreading of the Supreme Court's decision in *Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022).

This is exactly the type of case that equitable estoppel is meant to address: Plaintiffs seek to "have it both ways" by alleging that DoorDash and Amplitude failed to disclose that Amplitude would receive their data, while also trying to avoid the Privacy Policy that contained those disclosures. *Goldman v. KPMG, LLP*, 173 Cal. App. 4th 209, 220 (2009). The Opposition does not even acknowledge recent decisions from courts in this District applying equitable estoppel under substantially similar circumstances, such as Judge Chhabria's decision in *Perry-Hudson v. Twilio, Inc.*, 2024 WL 4933332, at *3 (N.D. Cal. Dec. 2, 2024) (equitable estoppel allowed service provider to compel arbitration of privacy claims based on non-party website operator's terms). *See also Hunt v. Meta Platforms, Inc.*, 735 F. Supp. 3d 1133, 1138–39 (N.D. Cal. 2024) (similar).

*Second*, the arbitration agreement in the DoorDash T&C is enforceable. Plaintiffs try to skirt their agreement by arguing that it is unconscionable, but that is an enforceability dispute they agreed would be resolved by an *arbitrator*. There is no basis to disregard the delegation agreement. And, in any event, Plaintiffs still cannot establish that the arbitration agreement is procedurally or substantively unconscionable: DoorDash users can opt-out of the arbitration requirement, the agreement is limited to claims related to their "use" of the DoorDash app (as alleged here), and users have an opportunity to appeal certain arbitration awards to an appellate panel.

*Finally*, with no basis for avoiding arbitration, Plaintiffs engage in logical gymnastics to manufacture a dispute over the validity of the T&C's class action waiver. Plaintiffs suggest that this case should remain in federal court because their Opposition disputes the enforceability of the class action waiver and the T&C provides that any disputes regarding the waiver must be resolved by a court (not an arbitrator). But that gets them nowhere. Plaintiffs have not asserted any claim that the class action waiver is unenforceable, and no court has held that it is such. The waiver is neither procedurally nor substantively unconscionable, and even if it were, the T&C make clear that Plaintiffs' individual claims would still be subject to arbitration.

For these reasons, the Court should compel Plaintiffs' claims to arbitration and stay this case—and do so before reaching the challenges in Amplitude's Motion to Dismiss (Dkt. 30).

Contrary to Plaintiffs' assertion, "there is no mandatory sequencing of nonmerits issues," and a "court has leeway to choose among threshold grounds for denying audience to a case on the merits." *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 423 (2007) (citation omitted and cleaned up). Indeed, courts regularly decide motions to compel arbitration prior to or simultaneously with deciding motions to dismiss challenging jurisdiction. *See, e.g., Ghazizadeh v. Coursera, Inc.*, 737 F. Supp. 3d 911, 919 (N.D. Cal. 2024) (granting motion to compel arbitration without deciding motion to dismiss); *I.C. v. Zynga, Inc.*, 2021 WL 3271187, at *1 (N.D. Cal. July 30, 2021) (compelling arbitration of claims by certain plaintiffs and granting motion to dismiss as to other plaintiffs for lack of Article III standing). Because Plaintiffs agreed to arbitrate this dispute, the most efficient means of resolving this matter is to compel arbitration.

## II.    ARGUMENT

Plaintiffs make no effort to respond to the evidence from DoorDash detailing their repeated agreement to DoorDash's T&C, including its arbitration agreement. They do not dispute (and thus concede[2]) that they agreed to the T&C multiple times, that the T&C require arbitration of "any dispute[s] or claim[s]" related to the T&C and Privacy Policy or Plaintiffs' "use" of the DoorDash app, that the T&C contain a delegation agreement, or that DoorDash provided conspicuous notice of the T&C. *See* Mot. at 7-9; Cramer Decl. (Dkt. 36-1) ¶¶ 6-35. Nor do Plaintiffs dispute that their claims relate to their "use" of the DoorDash app and DoorDash's services. *See* Mot. at 10.

Instead, Plaintiffs raise three arguments in an effort to avoid their arbitration agreements: (1) that Amplitude cannot enforce the arbitration agreement because it is a third party and equitable estoppel does not apply, (2) that the arbitration and delegation agreements in DoorDash's T&C are unconscionable and thus enforceable, and (3) that this case must be litigated in federal court because Plaintiffs argue in their Opposition that the T&C's class action waiver is unenforceable.

### A.    Amplitude Can Enforce The Arbitration Agreement

The Opposition raises two arguments in an effort to prevent Amplitude from enforcing Plaintiffs' arbitration agreement: (1) that Amplitude does not meet the test for equitable estoppel

---

[2] *See In re Apple Inc. Sec. Litig.*, 678 F. Supp. 3d 1147, 1157 (N.D. Cal. 2023) (failure to respond to party's argument deemed a "concession").

set by the Ninth Circuit and California appellate courts, and (2) that the Court should create a new test for enforcement of an arbitration agreement by a nonsignatory under equitable estoppel, arguing that the rule traditionally used by the Ninth Circuit and California courts was implicitly overruled by the Supreme Court's decision in *Morgan*.[3] Plaintiffs are wrong on both counts.

1.    Amplitude Can Enforce Plaintiffs' Arbitration Agreement Under California's Doctrine Of Equitable Estoppel

California appellate and Ninth Circuit precedent allows nonsignatories like Amplitude to enforce an arbitration agreement against a signatory in two alternative scenarios: (1) when the claims against the nonsignatory "are intimately founded in and intertwined with the underlying contract," or (2) when the plaintiff "alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and the allegations of the interdependent misconduct are founded in or intimately connected with the obligations of the underlying agreement." *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128–29 (9th Cir. 2013) (citation omitted).

The Opposition argues that the claims here do not meet this test because Plaintiffs do not allege that Amplitude directly violated the T&C or that DoorDash and Amplitude engaged in any joint misconduct.[4] Plaintiffs are wrong; both prongs of equitable estoppel apply.

a.    *Plaintiffs' Claims Are Intertwined With The Privacy Policy*

Plaintiffs argue that their claims are not "intertwined with" the DoorDash T&C because "they do not seek to hold Amplitude liable for obligations imposed by" the T&C. Opp. at 9. But Plaintiffs take an overly narrow view of equitable estoppel and their own allegations. Equitable

---

[3] The Opposition also has a section arguing that Amplitude cannot enforce the arbitration agreement because "Amplitude is not a party" to the T&C and the T&C refer to "you and DoorDash." Opp. at 3-4. Amplitude never suggested that it was a party, and the entire premise of equitable estoppel is that a *nonsignatory* is seeking to enforce an arbitration clause. Courts have applied equitable estoppel even where the arbitration agreement contains similar language. *See In re BAM Trading Servs. Inc. Sec. Litig.*, 733 F. Supp. 3d 854, 867 (N.D. Cal. 2024); *Esguerra-Aguilar, Inc. v. Shapes Franchising, LLC*, 2020 WL 3869186, at *4 (N.D. Cal. July 9, 2020).

[4] Contrary to the Opposition (Opp. at 4-5), Amplitude never argued that the arbitrator must decide whether equitable estoppel applies. *See* Mot. at page (v) (listing issues to be decided); *id.* 9 & 12-13 (addressing the delegation agreement and equitable estoppel separately). Though the Court must decide whether equitable estoppel applies, threshold issues related to the enforceability of the agreement (like Plaintiffs' unconscionability arguments) are delegated. *See In re BAM Trading*, 733 F. Supp. 3d at 867 (considering equitable estoppel but delegating other issues to arbitrator).

estoppel is not limited to allegations that the defendant violated a term or condition of the container contact—the claims must simply be "intimately founded in and intertwined with the underlying contract obligations."[5] *In re Pac. Fertility Ctr. Litig.*, 814 F. App'x 206, 209 (9th Cir. 2020). Courts consider whether the allegations "rely or depend on the terms, duties, or obligations in the contract containing the arbitration provision," and "whether the allegations 'are in any way founded in or bound up with the terms or obligations' in the contract." *Id.* at 209–10. This case meets that test. Plaintiffs allege that DoorDash and Amplitude failed to inform or disclose to them that Amplitude would allegedly receive their information when they used the DoorDash app—allegations that plainly depend on the terms and disclosures governing their use of the app, and thus require consideration of the Privacy Policy setting out how DoorDash may collect and share information.

The cases that Plaintiffs carefully avoid in their Opposition prove the point. *Perry-Hudson* involved an almost identical set of allegations: the plaintiff alleged that Twilio (a data-analytics company) collected his data without his consent through software installed on a non-party's website. 2024 WL 4933332, at *1. Twilio sought to enforce the arbitration agreement in the website's terms. *Id.* at *1–2. Judge Chhabria compelled arbitration because the privacy claims were "rooted in whether Twilio's use of his personal information was unlawful," which was a question that "turn[s] on whether [the plaintiff] consented to disclosure of his personal information to Twilio." *Id.* at *2. Similarly, in *Hunt*, the plaintiff alleged that Google and Meta collected his tax information while he used non-party H&R Block's website. 735 F. Supp. 3d at 1135. Google and Meta sought to enforce the arbitration agreement in H&R Block's Online Services Agreement. *Id.* at 1135–36. Judge Pitts granted the motion, reasoning that since "H&R Block's 'privacy and data security policy' is set forth in part in its Online Services Agreement, [the plaintiff's] mail and wire fraud claims against Google and Meta depend on that agreement and whether it was fraudulent," and thus the claims were "intimately intertwined" with the agreement. *Id.* at 1137–38.

---

[5] Plaintiffs' argument would effectively limit equitable estoppel to contractual-based claims, but courts have applied the doctrine more broadly. *See, e.g.*, *Perry-Hudson*, 2024 WL 4933332, at *3 (privacy claims against service provider related to website's terms); *Hunt*, 735 F. Supp. 3d 1133, 1138–39 (similar); *cf. Sanders v. Swift Transp. Co. of Ariz., LLC*, 843 F. Supp. 2d 1033, 1038 (N.D. Cal. 2012) (labor law claims related to independent contractor agreement).

Plaintiffs' assertion that their claims are not "intimately founded in and intertwined with" the T&C cannot be squared with their position on the Motion to Dismiss that the Privacy Policy (which is part of the T&C) is incorporated into the FAC by reference. As explained in Amplitude's Request for Judicial Notice ("RJN") (Dkt. 31), a document is incorporated by reference in two situations: (1) "the plaintiff refers extensively to the document," or (2) "the document forms the basis of the plaintiff's claim." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018). Because Plaintiffs avoided referencing the Privacy Policy in their FAC, the only basis for incorporation by reference was that the Privacy Policy forms the basis of their claims. *See* RJN at 3-5. And Plaintiffs conceded that the Privacy Policy was incorporated into the FAC. *See* Dkt. 34 (Statement of Non-Opposition).[6] Because the Privacy Policy is part of the T&C, Plaintiffs cannot now claim that it is irrelevant.

Plaintiffs also attempt to sow confusion by claiming that the Privacy Policy is relevant only to Amplitude's affirmative defenses, not their causes of action. Opp. at 10. Plaintiffs argue that they assert statutory claims and that "only Amplitude's consent defense—not Plaintiffs' claims—rely on the DoorDash Terms & Conditions." *Id.* But Plaintiffs misstate their own allegations: the FAC alleges that Plaintiffs were not informed about and did not "consent" to Amplitude receiving their information. *See* FAC ¶¶ 5, 21-23, 25, 29, 31, 39-40. And lack of consent is required for liability under the applicable statutes. *See, e.g.*, *Perry-Hudson*, 2024 WL 4933332, at *2 (stating that "[e]ach claim requires [plaintiff] to plead (and ultimately prove) that he did not consent to Twilio's interception" and that "consent is an element to each claim"); *Doe I v. Google LLC*, 2023 WL 6882766, at *2 (N.D. Cal. Oct. 18, 2023) (failure to plead lack of consent was fatal to federal wiretap claim); *Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018, 1054 (N.D. Cal. 2014) (similar for failure to plead lack of permission under CDAFA); *see also* Mot. at 12 n.9 (citing statutory requirements).[7] In any event, regardless of whether framed as an element or defense, Plaintiffs'

---

[6] Plaintiffs also argued at length about the proper interpretation of the Privacy Policy and whether it disclosed the alleged conduct in opposing the Motion to Dismiss. *See* Dkt. 33 at 7-9.

[7] Plaintiffs cite a handful of cases that refer generally to a "consent defense" and note that it is the defendant's burden to establish lack of consent, but the statutes at issue require a lack of consent

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

allegations place their consent at issue, and their privacy claims are "intimately founded in and intertwined with" the data collection and sharing disclosures in the Privacy Policy.[8]

b.    *Plaintiffs Allege Concerted Conduct By Amplitude And DoorDash Connected With The Privacy Policy*

Amplitude is also entitled to enforce the arbitration agreement because Plaintiffs allege substantially interdependent conduct by DoorDash and Amplitude that is founded in and intimately connected with the DoorDash T&C. Plaintiffs allege that DoorDash contracted with Amplitude and embedded Amplitude's SDK into its app, allowing Amplitude to collect their information.

In an effort to downplay the allegations about DoorDash and Amplitude, the Opposition attempts to frame this case as broader than DoorDash's alleged use of Amplitude's SDK. Opp. at 11-12. Plaintiffs argue that their "core theory is that Amplitude integrated its SDK into 40,000 mobile apps" and that Plaintiffs "would have the exact same claims against Amplitude if they had used any of the other 39,999 apps into which Amplitude's SDK was integrated." *Id.* at 11. That counterfactual is irrelevant. Plaintiffs assert claims based solely on their use of the DoorDash app. Though the FAC includes an overbroad class definition not limited to DoorDash users (FAC ¶ 41), their individual claims against Amplitude are limited to their use of the app—Plaintiffs do not allege that Amplitude collected their information through any other means. *See id.* ¶¶ 33-40. The "only reason that anyone is talking about DoorDash here" is because Plaintiffs assert claims based on their use of the app and allege DoorDash worked with Amplitude to have its SDK embedded into the app. *See id.* ¶ 34. As the FAC acknowledges, Amplitude could not receive their data on its own: DoorDash allegedly engaged Amplitude and embedded Amplitude's SDK into its app, which allegedly sent Amplitude their data. *Id.* ¶ 21. Plaintiffs also allege that DoorDash (and Amplitude)

for a legal violation. *See Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 619 (N.D. Cal. 2021); *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1048 (S.D. Cal. 2023); *Matera v. Google Inc.*, 2016 WL 5339806, at *17 (N.D. Cal. Sept. 23, 2016).

[8] The cases Plaintiffs cite involving the Telephone Consumer Protection Act ("TCPA") are not applicable, including because they state that consent "is an affirmative defense" under that statute, *Rahmany v. T-Mobile USA Inc.*, 717 F. App'x 752, 753 (9th Cir. 2018), and the claims were not intertwined with the agreement (unlike here). *See Faucett v. Move, Inc.*, 2024 WL 2106727, at *5 (C.D. Cal. Apr. 22, 2024), *aff'd on other grounds*, 2025 WL 1112935 (9th Cir. Apr. 15, 2025); *Wiedenbeck v. United Educ. Inst.*, 2015 WL 12743599, at *4 (C.D. Cal. Dec. 15, 2015).

did not inform them that Amplitude would receive their information. *Id.* ¶¶ 24, 36, 40.

That distinguishes this case from *Houghton v. Leshner*. *See* Opp. at 11-12; 2024 WL 5154071 (N.D. Cal. Nov. 25, 2024), *appeal filed sub nom*, *Houghton v. AH Cap. Mgmt. LLC*, No. 24-7243 (9th Cir. Dec. 2, 2024). There, the plaintiffs sued a digital asset lending business and its partners, alleging they were "sellers" of unregistered securities. *Id.* at *1. The nonsignatories sought to enforce the plaintiffs' arbitration agreement with Coinbase, where the plaintiffs purchased the cryptocurrency tokens. *Id.* Judge Orrick denied the motion, reasoning that there was no interdependent conduct because the alleged harm of selling unregistered securities "does not stem from purchasing [the tokens] through Coinbase," noting that plaintiffs "could have purchased [the tokens] on any exchange." *Id.* at *6. Here, in contrast, Plaintiffs allege a privacy harm based on the purported collection of their information *while using* the DoorDash app, and that DoorDash contracted with Amplitude for its SDK and embedded the SDK into that app—and that neither DoorDash nor Amplitude told them that Amplitude would receive their information.[9] Unlike in *Houghton*, Plaintiffs could not assert these claims had they not used DoorDash.

Plaintiffs also argue that the alleged interdependent conduct by DoorDash and Amplitude has nothing to do with the T&C. *See* Opp. at 11-12. Plaintiffs ignore their own allegations. The FAC alleges that "Amplitude contracted with DoorDash to provide its SDK" for DoorDash's app, that DoorDash embedded the SDK into its app, that Amplitude received Plaintiffs' data via the SDK, and that Plaintiffs were not informed about the data collection by DoorDash or Amplitude. *See* FAC ¶¶ 21, 24, 34, 36, 38, 40. These allegations relate to the Privacy Policy, which is part of the T&C and discloses the information collected and shared with third parties when using the app.

This is exactly like *Perry-Hudson*, which Plaintiffs ignore entirely. *See* 2024 WL 4933332, at *3. There, the plaintiff alleged that Twilio collected his data without his consent when he used

---

[9] *Wiedenbeck* is distinguishable for the same reason. *See* 2015 WL 12743599, at *5 (no interdependent conduct between website that shared plaintiff's phone number with consent and company who called plaintiff 41 times in violation of the TCPA). And Plaintiffs' reliance on *Mance v. Mercedes-Benz USA*, 901 F. Supp. 2d 1147, 1157 (N.D. Cal. 2012) only backfires as the court compelled arbitration under the first prong of equitable estoppel. And courts have applied equitable estoppel even where nonsignatories are sued alone. *See, e.g.*, *Franklin v. Cmty. Reg'l Med. Ctr.*, 998 F.3d 867, 876 (9th Cir. 2021); *Perry-Hudson*, 2024 WL 493332, at *3.

AMPLITUDE'S REPLY ISO MOTION TO
COMPEL ARBITRATION
CASE NO. 3:24-cv-04913-RFL

a website operated by a non-party. *Id.* at *1. Judge Chhabria compelled arbitration based on the arbitration agreement in the website's terms, reasoning that "the language in the Privacy Policy seems to speak directly to [the website's] obligations with respect to [the plaintiff's] data and his consent to sharing that data." *Id.* at *3. Because the plaintiff alleged "that he did not consent for his data to be shared with Twilio, and those allegations form the bases of his privacy claims, his allegations [that the website allowed Twilio to intercept his data] are intimately connected with the obligations [the website] imposed on itself in the Privacy Policy related to obtaining consent and the scope of any disclosure of data." *Id.* Here, as in *Perry-Hudson*, the T&C and the incorporated Privacy Policy disclose how and with whom DoorDash shares data.

> 2. The Court Should Not—And Cannot—Ignore Binding Precedent From the Ninth Circuit And California Courts of Appeals To Create A New Test For Equitable Estoppel

Recognizing that their allegations meet the test for equitable estoppel routinely applied by California appellate courts and the Ninth Circuit,[10] Plaintiffs ask the Court to break new ground and hold that this settled precedent was undone by the Supreme Court's decision in *Morgan v. Sundance*, which did not involve equitable estoppel or California law.

Plaintiffs' argument is based *Morgan*'s statement that "courts may not create arbitration-specific variants of federal rules." 596 U.S. at 411. Plaintiffs argue that the equitable estoppel test applied by courts to determine whether a nonsignatory can enforce an arbitration agreement (what they call the "arbitration-specific version of equitable estoppel") is different than the doctrine of equitable estoppel applied in other non-arbitration contexts. Opp. at 7. Because courts do not require that a nonsignatory detrimentally rely on the signatory in the arbitration context (unlike in other contexts), Plaintiffs argue that courts have improperly created a "special, arbitration-preferring" rule in violation of *Morgan*. The Court should reject Plaintiffs' request.

For starters, Plaintiffs misread *Morgan*. *Morgan* was a narrow opinion that "decide[d] a single issue" limited to whether federal courts may "create arbitration-specific variants of federal

---

[10] *See, e.g.*, *Herrera*, 104 F.4th at 707; *Franklin*, 998 F.3d at 870; *In re Pac. Fertility Ctr. Litig.*, 814 F. App'x at 209; *Young v. Solana Labs, Inc.*, 2024 WL 4023087, at *1 (N.D. Cal. Sept. 3, 2024); *Freeman v. 3Commas Techs. OU*, 2024 WL 4049864, at *1 (N.D. Cal. Sept. 3, 2024); *Ballesteros v. Ford Motor Co.*, 109 Cal. App. 5th 1196, 1207 (2025).

procedural rules, like those concerning waiver, based on the FAA's 'policy favoring arbitration.'" 596 U.S. at 416–17. The Eighth Circuit had ruled that the defendant had not waived its right to arbitrate by litigating the case, and in doing so applied an arbitration-specific rule of waiver that did not require a showing that the delay harmed the other party. *Id.* at 413. The Supreme Court found that arbitration-specific waiver rule impermissible. *Id.* Specifically, it held that "the FAA's 'policy favoring arbitration' does not authorize federal courts to invent special, arbitration-preferring procedural rules."[11] *Id.* at 418. Unlike *Morgan*, which concerned procedural rules applied by federal courts, equitable estoppel stems from California contract law principles. *See* Opp. at 5 ("Plaintiffs agree that California provides the relevant state contract law"); *see also* *Herrera*, 104 F.4th at 707 (looking to "California contact law" to determine whether nonsignatory "may compel arbitration under the agreement based on equitable estoppel"). The Supreme Court expressly stated that it was not addressing "the role state law might play in resolving when a party's litigation conduct results in the loss of a contractual right to arbitrate" or "whether to understand that inquiry as involving rules of waiver, forfeiture, estoppel, laches, or procedural timeliness." 596 U.S. at 416. *Morgan* thus has no effect here.

*Second*, Plaintiffs misconstrue equitable estoppel as an "arbitration-preferring'" rule. Equitable estoppel is a general principle of contract law that "operates to prevent one from taking an unfair advantage of another but not to give an unfair advantage to one seeking to invoke the doctrine." 13 Witkin, Summary of California Law, Equity § 212 (11th ed. 2024) (quoting *Peskin v. Phinney*, 182 Cal. App. 2d 632, 636 (1960)). In compelling arbitration under equitable estoppel, courts frequently invoke general principles of equity: "The linchpin for equitable estoppel is fairness." *Herrera*, 104 F.4th at 710 (citation and quotations marks omitted); *accord Goldman*, 173 Cal. App. 4th at 220.[12] In this context, imposing the reliance requirement that Plaintiffs seek

---

[11] Plaintiffs' parallel citation to *Quach v. California Commerce Club* fails for similar reasons. *See* 16 Cal. 5th 562, 583 (2024). That case followed *Morgan* and interpreted the California Arbitration Act, the state parallel to the FAA, and considered procedural rules applied by state courts.

[12] Even the cases Plaintiffs cite acknowledge that *fairness* is an "overriding concern in equitable estoppel cases." *Ballesteros*, 109 Cal. App. 5th at 1202. "[T]he point of equitable estoppel is that the purchaser—although not expecting at the time of contracting to have to arbitrate with a

would be unfair and nonsensical, as a nonsignatory is by definition not a party to the agreement and may not have been aware of it. Rather than favoring arbitration, equitable estoppel puts arbitration on a level playing field with other contracts by preventing a party from trying to skirt their arbitration agreement. *See, e.g.*, *Perry-Hudson*, 2024 WL 4933332, at *3 ("Permitting Twilio to equitably enforce the arbitration agreement in this case would be fairer than permitting Perry-Hudson to skirt its agreement with Keeps by suing only Twilio."). Even if Plaintiffs read *Morgan* correctly (they do not), equitable estoppel is not an arbitration-preferring rule.

*Third*, Plaintiffs have not met the high bar of establishing that *Morgan* overruled the settled test for equitable estoppel under California law. Plaintiffs must show that *Morgan* "undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable." *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003). Plaintiffs must show more than "some tension" between *Morgan* and the traditional equitable estoppel test, *Rodriguez v. AT & T Mobility Servs. LLC*, 728 F.3d 975, 979 (9th Cir. 2013), or that *Morgan* "cast doubt" on the established precedent, *Lair v. Bullock*, 697 F.3d 1200, 1207 (9th Cir. 2012). "So long as the court can apply our prior circuit precedent without running afoul of the intervening authority it must do so." *CoreCivic, Inc. v. Candide Grp., LLC*, 46 F.4th 1136, 1141 (9th Cir. 2022) (citation omitted). This is a standard Plaintiffs cannot meet, particularly as *Morgan* did not address equitable estoppel and concerned procedural rules under the FAA, not a substantive rule under California law.

Amplitude has identified three decisions rejecting similar arguments that *Morgan* overruled the equitable estoppel doctrine, from the Tenth Circuit, District of Connecticut, and the California Superior Court—and is not aware of any cases adopting Plaintiffs' argument. *See Munoz v. Conduent State & Local Solns., Inc.*, 2025 WL 799482, at *3 n.4 (10th Cir. Mar. 13, 2025) (applying South Dakota law, and concluding that *Morgan* "does not disturb *Arthur Andersen*'s holding that state contract law principles, including equitable doctrines, apply to arbitration agreements"); *James v. Venture Home Solar, LLC*, 715 F. Supp. 3d 203, 210–13 (D. Conn. 2024) (denying reconsideration and holding that *Morgan* did not abrogate the Second

nonsignatory—should thereafter reasonably expect to arbitrate if it decides to sue the nonsignatory on a claim clearly tethered to the contract and there exists a sufficient relationship between the nonsignatory and a signatory." *Id.* at 1219.

Circuit equitable estoppel jurisprudence, and that "the common law contract principle of estoppel is not enhanced or altered to favor arbitration"); *Torres v. Nissan N. Am., Inc*, 2022 WL 14147528, at *4 (Cal. Super. Ct. Aug. 17, 2022) (rejecting same argument under California law). Moreover, the Ninth Circuit and courts in this District have continued to apply the same equitable estoppel test to compel arbitration since *Morgan. See Herrera*, 104 F.4th at 708; *Nutanix, Inc. v. Tessell, Inc.*, 2025 WL 793652, at *2 (N.D. Cal. Mar. 12, 2025); *Turing Video Tech., Inc. v. AGI7 Inc.*, 2025 WL 579190, at *1 (N.D. Cal. Feb. 21, 2025); *Coinmint, LLC v. DX Corr Design, Inc.*, 2023 WL 9595893, at *1 (N.D. Cal. Apr. 24, 2023).[13]

*Finally*, in a last-ditch effort, Plaintiffs ask the Court to delay ruling on this Motion based on a pending appeal before the California Supreme Court in *Ford Motor Warranty Cases*. Opp. at 8. Plaintiffs assert that "further guidance on [the validity of equitable estoppel] should be coming soon" because respondents in the appeal have raised a similar argument to the one Plaintiffs make here. *Id.* But it is far from certain that the Supreme Court will consider—let alone rule on—that argument. The appeal is of a denial of a motion to compel arbitration; the lower court ruled that the traditionally-recognized test for equitable estoppel (which Plaintiffs claim was overruled) was not met. *See Ford Motor Warranty Cases*, 89 Cal. App. 5th 1324, 1333-36 (2023). The defendant petitioned for review, and the Supreme Court agreed to hear an appeal limited to a narrow issue with no relevance here: "Do manufacturers' express or implied warranties that accompany a vehicle at the time of sale constitute obligations arising from the sale contract, permitting manufacturers to enforce an arbitration agreement in the contract pursuant to equitable estoppel?"[14] *Ford Motor Warranty Cases*, 532 P.3d 270 (Cal. 2023). The lower court did not hold

---

[13] Plaintiffs' argument that *Herrera* is "not binding on this Court" turns this issue on its head. Opp. at 8. While it is true that *Herrera* did not consider Plaintiffs' argument about whether equitable estoppel "survives *Morgan* and *Quach*," the case remains binding on the Court as to the applicability of equitable estoppel. And *Herrera* is not "the only Ninth Circuit case post-*Morgan*" that applied this version of equitable estoppel: the court also did so in *Guisinger v. Keystone RV Co.*, 2024 WL 3384211, at *1 (9th Cir. July 12, 2024).

[14] The appeal is focused on the vehicle warranty context because the Courts of Appeal have reached different conclusions regarding whether a manufacturer can compel arbitration of warranty claims pursuant to an arbitration agreement in a sale contract to which it was not a party. *Compare Ford*

that the traditionally-recognized test for equitable estoppel has been overruled by *Morgan*.[15] There is no need to wait for an answer that might never come in the appeal.

The Court should decline Plaintiffs' invitation to depart from settled principles of law and decades of precedent based on their misreading of a Supreme Court case.

**B.      The Arbitration Agreement Is Enforceable**

There is no dispute that Plaintiffs agreed to delegate any enforceability disputes to the arbitrator. Opp. at 13 (acknowledging that "the DoorDash Arbitration Agreement delegates enforceability questions to the arbitrator"). Nevertheless, the Opposition argues that the arbitration agreement is unenforceable on grounds that it is procedurally and substantively unconscionable.

Plaintiffs' arguments should be rejected for three reasons: (1) Plaintiffs agreed to delegate enforceability disputes to the arbitrator, (2) the arbitration agreement is not procedurally unconscionable because it allows users to opt-out of the arbitration requirement, requires DoorDash to provide notice of material changes to the T&C, and makes clear what claims are subject to arbitration, and (3) the arbitration agreement is not substantively unconscionable because it is limited to claims related to use of the app and services, the group arbitration provision is similar to those upheld by other courts, and the appeal provision applies mutually.

**1.      Plaintiffs' Arguments Are Barred By The Delegation Agreement**

As Plaintiffs concede (Opp. at 13), any dispute regarding the enforceability of the arbitration agreement must be resolved by the arbitrator, as courts enforce valid agreements to delegate "gateway" disputes like in DoorDash's T&C. *See, e.g.*, *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 71–76 (2010); Cramer Decl. Ex. B § 14(d), Ex. G § 14(d).

---

*Motor Warranty Cases*, 89 Cal. App. 5th at 1333-36 *and Ballesteros*, 109 Cal. App. 5th at 1211, *with Felisilda v. FCA US LLC*, 53 Cal. App. 5th 486 (2020).

[15] Plaintiffs' request that the Court delay ruling on this Motion is based on an argument raised by the respondents that the traditionally-recognized test for equitable estoppel treats arbitration agreements differently from other contracts. *See* Answering Br. at 26-30, *Ford Motor Warranty Cases*, No. S279969 (Cal. Jan. 16, 2024). The appellant has argued that respondents waived this argument by not raising it in the lower court, and also that *Morgan* is inapposite. *See* Reply Br. at 39-45, *Ford Motor Warranty Cases*, No. S279969 (Cal. Apr. 4, 2024). The parties also dispute whether the traditional test for equitable estoppel (articulated in Section II.A.1, *supra*) is met, which was the subject of the lower court's holding.

Plaintiffs try to back out of their delegation agreements by claiming to challenge the delegation agreement itself, *see* Opp. at 13-17, but none of their arguments relate to the delegation provision. Plaintiffs fail to identify any portion of the delegation agreement in Section 14(d) that is supposedly problematic. *See Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1010–11 (9th Cir. 2023). Instead, Plaintiffs take issue with *other provisions* in the T&C, including the arbitration procedures and modification provisions. These arguments have nothing to do with whether the delegation agreement is enforceable, and Plaintiffs fail to explain how they render the delegation agreement unenforceable.[16] *See Rent–A–Center*, 561 U.S. at 73–74 (enforcing delegation agreement where arguments were not directed specifically at delegation); *Van De Hey v. EPAM Sys., Inc.*, 2025 WL 829604, at *6 (N.D. Cal. Feb. 28, 2025); *Bielski*, 87 F.4th at 1012.[17] Plaintiffs cannot meet their "burden of proving unconscionability" by hand-waving at other provisions in the arbitration agreement. *See Ronderos v. USF Reddaway, Inc.*, 114 F.4th 1080, 1089 (9th Cir. 2024) (burden is on the "party asserting unconscionability"). Because Plaintiffs have not shown that the delegation clause is unconscionable, all of their enforceability arguments should be resolved by the arbitrator.

### 2. Plaintiffs Cannot Demonstrate Unconscionability

Plaintiffs' failure to challenge the delegation agreement should end the inquiry. But even if the Court considers their arguments, Plaintiffs cannot establish that either the delegation agreement or the broader arbitration agreement is procedurally and substantively unconscionable. *See Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1210 (9th Cir. 2016).

#### a. *The T&C Are Not Procedurally Unconscionable*

Plaintiffs raise several arguments about procedural unconscionability. None have merit.

*First*, Plaintiffs argue that the arbitration agreement is a procedurally unconscionable

---

[16] Plaintiffs' only attempt to link any of these provisions to the delegation agreement is an assertion in a footnote that the T&C's appeal provisions (discussed in Section II.B.2, *infra*) would not allow them to appeal the denial of an injunction "against the unconscionable arbitration provisions in the rest of the agreement or an injunction barring the use of a conflicted arbitrator." Opp. at 17 n.6. But Plaintiffs seek no such injunction—the FAC avoids citing the arbitration agreement at all.

[17] Plaintiffs concede as much by repeating the same arguments against the broader arbitration agreement. *See* Opp. at 17 (asserting that "[t]he elements of the DoorDash Terms & Conditions that made the delegation clause unconscionable . . . also serve to make the DoorDash Arbitration Agreement . . . unconscionable").

"contract of adhesion." Opp. at 14. But it is undisputed that DoorDash's T&C allows users to opt out of the arbitration agreement. Cramer Decl., Ex. B at p.1, § 14(h), Ex. G at p.1, § 14(h). And "an arbitration agreement is not adhesive if there is an opportunity to opt out of it." *Mohamed*, 848 F.3d at 1211; *see also Cir. City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1199–200 (9th Cir. 2002).

*Second*, Plaintiffs argue that the arbitration agreement and delegation clause are procedurally unconscionable because they contain a modification provision allowing DoorDash to "modify the terms [and conditions]" of the T&C. Opp. at 14-15. Plaintiffs do not explain how the modification provision creates a procedural issue with the arbitration agreement,[18] let alone show that DoorDash modified the T&C "so frequently or significantly as to make it oppressive."[19] *Loewen v. Lyft, Inc.*, 129 F. Supp. 3d 945, 956 (N.D. Cal. 2015) (rejecting conclusory argument about procedural unconscionability). In any event, Plaintiffs' concern about modification falls flat because they *expressly* agreed to the updated T&C. *See* Cramer Decl. ¶¶ 14-17, 26-33. Plaintiffs cannot now claim "surprise" that DoorDash retained the right to modify its T&C when they repeatedly agreed to the modified terms.[20] *See In re Juul Labs, Inc., Antitrust Litig.*, 555 F. Supp. 3d 932, 954 (N.D. Cal. 2021) (rejecting substantive unconscionability argument where plaintiffs had agreed to substantially similar terms); *Gutierrez v. FriendFinder Networks, Inc.*, 2019 WL 1974900, at *11 (N.D. Cal. May 3, 2019) (challenge to unilateral modification clause was "especially weak" where plaintiff "actually received notice of the existence of" the terms).

---

[18] Courts often analyze challenges to modification provisions through the lens of *substantive* unconscionability, and the Ninth Circuit has held that "the presence of a unilateral modification provision, without more, does not render a separate arbitration clause at all substantively unconscionable." *Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 480 (9th Cir. 2024).

[19] Nor is it true that DoorDash was permitted to modify the terms "without notice," as Plaintiffs claim. Opp. at 14. The T&C require notice of "any material changes" to the terms, Cramer Decl. Ex. B § 3, Ex. G § 3, further undermining Plaintiffs' argument. *See Shierkatz Rllp v. Square, Inc.*, 2015 WL 9258082, at *12 (N.D. Cal. Dec. 17, 2015) (agreement with unilateral modification provision was "at most, minimally procedurally unconscionable" where it required notice).

[20] Plaintiffs agreed to DoorDash's T&C as recently as July 2024 (Atkins) and August 2024 (Luo). Cramer Decl. ¶¶ 15, 33. Their argument that the Batch Arbitration provision (Ex. B § 14(g)) was not in the T&C when they signed up with DoorDash is irrelevant, as they expressly agreed to multiple versions of the T&C with the provision. *See id.* Ex. B (May 16, 2024) § 14(g); Ex. C (Feb. 3, 2023) § 14(g); Ex. F (Mar. 29, 2021) § 12(g); Ex. G (Jan. 11, 2024) § 14(g).

*Finally*, Plaintiffs argue that applying the arbitration agreement to their claims against a third party raises "a strong element of surprise," amounting to procedural unconscionability. Opp. at 15. There is no "surprise" here: the T&C make crystal clear that claims related to Plaintiffs' "use" of the DoorDash app or any feature or function "made available or enabled by DoorDash" are subject to arbitration, and the Privacy Policy discloses DoorDash's data-sharing practices.

Plaintiffs cite the Court's decision in *Ireland-Gordy v. Tile, Inc.*, but that case does not help them. 760 F. Supp. 3d 946 (N.D. Cal. 2024), *appeal filed*, No. 25-403 (9th Cir. Jan. 21, 2025). There, the Court carefully distinguished between two categories of claims in analyzing unconscionability. The first category involved privacy claims based on third parties' surreptitious placement of the defendant's geolocation trackers in plaintiffs' cars. *Id.* at 951. These trackers were purchased by the third parties and linked to the third parties' accounts; they were "*not* purchased by [plaintiffs] and . . . *not* associated with [the plaintiffs'] account in any way." *Id.* at 963. The Court held that enforcing the arbitration agreement over such claims would be substantively unconscionable because they had "no relation to either Plaintiffs' own use of a Tile tracker or the services provided to Plaintiffs as part of their Tile accounts." *Id.* at 960. By contrast, the second category of claims was based on "services provided to Plaintiffs as part of their own Tile accounts"—including allegedly faulty safety features and a third party's stalking of plaintiff with her tracker on their joint account. *Id.* at 962–63. The Court found that "any claims based on the [third parties]' use of *Plaintiffs' own* Tile trackers are . . . within the scope of the arbitration agreement." *Id.* at 963 (emphasis added). That holding is applicable here: Plaintiffs' claims arise from their own use of the DoorDash app.

### b. *The T&C Are Not Substantively Unconscionable*

Because Plaintiffs have not demonstrated procedural unconscionability, this Court need not even address their substantive unconscionability arguments. *See Mohamed*, 848 F.3d at 1211. But even if it does, Plaintiffs' arguments fail.

*First*, Plaintiffs argue that the arbitration agreement is unconscionable because it applies to alleged conduct by a third party (Amplitude). Opp. at 15-16. Plaintiffs misstate the T&C and the FAC. The agreement is limited to claims related to *Plaintiffs'* "use" of the app and DoorDash's

services (Cramer Decl., Ex. B § 14(a)), and Plaintiffs' claims relate to *their* use of DoorDash. Though Plaintiffs have asserted those claims against Amplitude, the claims plainly are not based on Amplitude's use of DoorDash's services. The single case Plaintiffs cite (*Ireland-Gordy*) proves the point: the Court compelled arbitration of claims based on the plaintiffs' accounts but not claims based on the third parties' accounts. 760 F. Supp. 3d at 960–63; *see also Nutanix*, 2025 WL 793652, at *2 (enforcing arbitration under equitable estoppel where provision covered "all" claims "arising out of" plaintiffs' employment); *Turing Video*, 2025 WL 579190, at *1 (similar).

*Second*, Plaintiffs misconstrue the Batch Arbitration provision in the T&C (Cramer Decl., Ex. B § 14(g)) in an effort to equate it to the bellwether mass arbitration protocol rejected by the Ninth Circuit in *Heckman v. Live Nation Ent. Inc.*, 120 F.4th 670, 683–84 (9th Cir. 2024). Opp. at 16. But DoorDash's batched arbitration procedures (which allow for the grouping of 100 demands for concurrent resolution) are nothing like the New Era rules at issue in *Heckman*, which sought to apply the arbitrator's holding in bellwether cases on other claimants.[21] In contrast, the T&C specifically state that the arbitrator's ruling "shall have no preclusive effect in any other arbitration or other proceeding involving a different party." Cramer Decl., Ex. B § 14(d). And Plaintiffs cite no authority "suggesting that *concurrent* claim batching results in unconscionable delay" similar to the bellwether procedures in *Heckman*. *Silva v. WhaleCo, Inc.*, 2024 WL 4487421, at *5 (N.D. Cal. Oct. 10, 2024) (provision grouping similar demands into batches of 100 not unconscionable). Unlike in *Heckman*, the T&C lack a bellwether provision and merely provide that a group of 100 demands shall be resolved "as a single arbitration." Cramer Decl., Ex. B § 14(g). Because any grouped demands (*i.e.*, 100 demands brought and represented by the same counsel) would be heard simultaneously, the T&C do not present the same concerns about delay, notice, or representation. *See Jones v. Starz Ent. Inc.*, 129 F.4th 1176, 1182–83 (9th Cir. 2025) (distinguishing consolidation of arbitration filings from representative procedures like those in *Heckman*); *Kohler v. Whaleco,*

---

[21] The mass arbitration protocol in *Heckman* required that any time more than five cases presented "common issues of law or fact," they would be grouped together. 120 F.4th at 678. From that group, only three "bellwether cases" would be chosen, and the findings in those bellwether cases would be "precedential" on "all common issues" in the other cases. *Id.* Thus, the potential delay caused by the staggered arbitrations and a claimant's lack of notice and representation in the bellwether cases drove the court's unconscionability findings. *Id.* at 683.

*Inc.*, 757 F. Supp. 3d 1112, 1128 (S.D. Cal. 2024) (distinguishing *Heckman*). As the *Jones* court recognized, consolidation is entirely distinct from the bellwether mass arbitration protocol at issue in *Heckman*. 129 F.4th at 1182–83.

*Third*, Plaintiffs argue that the T&C's appeal provision is asymmetrical and similar to the provision rejected in *Heckman*. Opp. at 16-17. They are wrong. As Plaintiffs acknowledge, the T&C provides a *mutual* right to appeal an arbitration award that "includes any injunction or a monetary award that exceeds $100,000." Cramer Decl., Ex. B § 14(c)(i), Ex. G § 14(c)(i). Notably, unlike in *Heckman*, the right to appeal is not limited to the party against whom injunctive relief was awarded.[22] *Heckman*, 120 F.4th at 686. And the California Supreme Court has acknowledged that the "potentially far-reaching nature of an injunctive relief remedy" may warrant "the extra protection of additional arbitral review." *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 917 (2015); *see also McKay v. JPMorgan Chase Bank*, 2016 WL 11755601, at *7 (C.D. Cal. Mar. 8, 2016) (relying on *Sanchez* to foreclose plaintiffs' challenge to the appeal provision).[23]

### C.    The Class Waiver Provision Does Not Save Plaintiffs

Unable to avoid equitable estoppel or establish that the delegation or arbitration agreements are unenforceable, Plaintiffs argue that the Court should nevertheless retain the case because they separately contend that the T&C's class action waiver provision is unenforceable. Plaintiffs point to a sentence in the class action waiver (Cramer Decl., Ex. B § 14(f)) stating that "any claim that all or part of the waivers set forth in Section 14(f) is unenforceable, unconscionable, void, or voidable may be determined only by a court of competent jurisdiction and not by an arbitrator." Relying on this provision, Plaintiffs suggest that they can avoid arbitration simply by contesting the validity of the class action waiver. This argument makes no sense for a host of reasons.

*First*, Plaintiffs misread the T&C. Section 14(f) states that a class action "must be litigated in a civil court of competent jurisdiction" only *if* "a civil court of competent jurisdiction finds all

---

[22] This case also does not involve a "putative class of claimants," which was the risk in *Heckman* from the bellwether process. 120 F.4th at 686.

[23] Plaintiffs' unconscionability arguments should be rejected in their entirety. But in the event that the Court agrees with Plaintiffs, the Court can sever any violating provision under the DoorDash T&C. Cramer Decl. Ex. B § 24(c), Ex. G § 24(c).

or part of the Waiver of Class, Consolidated, and Representative Actions is unenforceable." Cramer Decl., Ex. B at § 14(f). No court has found the class waiver unenforceable, nor do Plaintiffs even assert a claim (such as for a declaratory judgment or injunction) asking for that relief.

*Second*, the class waiver provision is enforceable. Plaintiffs' argument fails off the bat because they do not even attempt to argue that the class action waiver provision is procedurally unconscionable, as would be required even if *Discover Bank* applied. 97 Cal. App. 4th at 1100. Nor could they: the class action waiver is also subject to the opt-out right for the broader arbitration provision. *See supra* Section II.B.2.a; Cramer Decl., Ex. B at § 14(h). That alone is reason to reject Plaintiffs' unconscionability challenge. *See Mohamed*, 848 F.3d at 1210.

Plaintiffs' substantive unconscionability argument fares no better. Plaintiffs take issue with the T&C's Batch Arbitration provision, arguing that it does not result in "bilateral arbitration" and thus the application of California's unconscionability law—and specifically the holding in *Szetela v. Discover Bank*, 97 Cal. App. 4th 1094 (2002) that class action waivers in consumer contracts of adhesion are unconscionable—is not preempted by the FAA. Opp. at 20-21. But the only case Plaintiffs cite for that point is *Heckman*, which concerned bellwether procedures and New Era arbitration rules not at issue here. *See* Opp. at 18-20; *Heckman*, 120 F.4th at 689–92. As an alternative ground for affirming the denial of the motion to compel arbitration, *Heckman* held that the FAA did not apply because the specific arbitration procedures at issue were unlike traditional arbitration, and therefore *Discover Bank* was not preempted. *Heckman*, 120 F.4th at 689–92. Despite suggesting that the FAA does not apply for the class waiver argument, the Opposition does *not* argue against application of the FAA generally—and in fact quotes caselaw applying the FAA in other contexts. *See* Opp. at 2 n.1 (arguing that the FAA requires standing to be decided first).[24] In any event, the holding in *Heckman* was limited to the unique arbitration procedures in that case (including bellwether cases) and did not prohibit batch arbitration procedures across the board. *Id.*

The Opposition also ignores the Ninth Circuit's more recent decision in *Jones*, which confirmed the limited scope of *Heckman* and distinguished consolidated arbitration (like the

---

[24] That means *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) continues to preempt the *Discovery Bank* rule that Plaintiffs ask the Court to apply. *See Heckman*, 120 F.4th at 690.

grouped arbitration here) from representative arbitration procedures, highlighting the issues with New Era's use of bellwether cases. 129 F.4th at 1182 (contrasting consolidated arbitration with representative or "class arbitration," which fails to protect claimants' procedural rights and is barred by *Heckman*). The court then upheld the consolidated arbitration procedure in the parties' agreement. *Id.* Far from forbidding consolidated arbitration—which is bilateral and includes the procedural protections absent in *Heckman*—the Ninth Circuit permitted it to proceed.[25]

*Finally*, even if the class action waiver provision were unenforceable (and it is not), that would not provide a basis for keeping the entire case in court, as Plaintiffs suggest. Rather, the T&C provide that only "the class, collective, or representative action must be litigated in a civil court of competent jurisdiction." Cramer Decl., Ex. B § 14(f). In contrast, the portion "that is enforceable shall be enforced in arbitration," with the court proceedings "stayed pending the conclusion of the arbitration." *Id.* As a result, Plaintiffs' individual claims would still be subject to arbitration and any class claims would be stayed pending the conclusion of the arbitration. And the delegation agreement would also remain intact, such that any disputes regarding the "interpretation" or "applicability" of the arbitration agreement would be delegated to an arbitrator. *See* Cramer Decl., Ex. B § 14(d); Ex. G § 14(d) (delegating disputes relating to the "interpretation" and "applicability" of the arbitration agreement).

Plaintiffs' class action waiver argument should be rejected on the merits, but even at face value it does not provide a basis for litigating this entire case in federal court.

## III.    CONCLUSION

For the foregoing reasons, Amplitude respectfully requests that the Court (1) compel Plaintiffs to arbitrate their claims, and (2) stay this action. *See* 9 U.S.C. § 3.

---

[25] Other courts have rejected unconscionability challenges to batch (or consolidated) arbitrations. *See, e.g., Silva*, 2024 WL 4487421, at *5 (distinguishing batched arbitration from bellwether processes, and upholding provision requiring batches of 25 similar demands); *Hu v. Whaleco, Inc.*, 2024 WL 4481439, at *20 (E.D.N.Y. Oct. 1, 2024) (batches of 100 similar demands).

Dated: May 20, 2025

Respectfully submitted,

LATHAM & WATKINS LLP

By: /s/ Michael H. Rubin
Michael H. Rubin (Bar No. 214636)
 michael.rubin@lw.com
Melanie M. Blunschi (Bar No. 234264)
 melanie.blunschi@lw.com
Francis J. Acott (Bar No. 331813)
 francis.acott@lw.com
505 Montgomery St., Suite 2000
San Francisco, CA 94111
Telephone: +1.415.391.0600

*Attorneys for Defendant Amplitude, Inc.*