Rafey Balabanian (SBN 315962)
rbalabanian@edelson.com
EDELSON PC
150 California Street, 18th Floor
San Francisco, California 94111
Tel: 415.212.9300
Fax: 415.373.9435

Schuyler Ufkes*
sufkes@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

**Pro hac vice admission to be sought*

*Counsel for Plaintiffs and the Putative Classes*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

KYLE ATKINS and MICHAEL LUO, individually and on behalf of all others similarly situated,

*Plaintiffs*,

v.

AMPLITUDE, INC., a Delaware corporation,

*Defendant*.

Case No.: 3:24-cv-04913-RFL

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CERTIFICATION OF INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b)**

Hearing: December 16, 2025
Time: 10:00 a.m.
Location: Courtroom 15, 18th Floor
Judge: Hon. Rita F. Lin

## INTRODUCTION

The Supreme Court's decision in *Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022), raises a fundamental question about whether California's arbitration-specific departure from traditional equitable estoppel principles remains viable. While the Ninth Circuit has continued to apply the *Metalclad* test post-*Morgan*, it has done so without examining whether the doctrine's departure from over 150 years of California equitable estoppel law violates the Supreme Court's prohibition on "bespoke rules" that favor arbitration over litigation. California appellate courts have flagged this tension, the California Supreme Court recently reserved judgment on this precise question, and scholars have argued that this doctrine cannot survive *Morgan.* Consequently, Plaintiffs seek certification so the Ninth Circuit can clarify whether *Metalclad Corp. v. Ventana Environmental Organizational Partnership*, 109 Cal. App. 4th 1705 (4th Dist. 2003), remains good law.

This is an important question that will have broad significance in California and throughout the circuit, where non-signatories frequently invoke *Metalclad* to compel arbitration. *E.g.*, *Woods v. Verve Grp. Eur. GMBH*, No. 24-cv-04909, dkt. 44 (N.D. Cal. 2025) (currently pending motion to compel arbitration on this exact issue); *Morrison v. Yippee Ent., Inc.*, No. 24-cv-00797, dkt. 13-1 (S.D. Cal. 2025) (same); *Apexxus LLC v. OptumRx, Inc.*, No. 25-cv-00049, dkt. 11 (N.D. Cal. 2025) (same); *Christensen Bros. Constr. Co. v. Proyecto*, No. 25CV124989 (Cal. Super. Ct. 2025) (same); *Oswald v. MV Transp.*, No. 25-cv-00696, dkt. 16 (N.D. Cal. 2025) (same). Certification will allow the Ninth Circuit to provide the needed guidance on whether *Metalclad*'s arbitration-specific doctrine can coexist with *Morgan*'s equal-treatment rule. And Plaintiffs have met the standard for seeking such guidance under Section 1292(b) by demonstrating that there are substantial grounds for difference of opinion, that this question is purely legal and outcome-determinative, and that its resolution could materially advance this litigation.

Defendant insists there is no "substantial ground for difference of opinion," asserting that (1) *Morgan* only applies to "procedural" rules; that (2) Plaintiffs have not identified squarely conflicting authority; and that (3) recent California and Ninth Circuit equitable estoppel decisions show no disagreement because they applied *Metalclad*. (Dkt. No. 52 ("Opp.").) Each contention fails. First, *Morgan* is merely the latest in a long line of Supreme Court decisions prohibiting

arbitration-favoring rules of any kind—procedural or substantive. *See, e.g.*, *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624 (2009); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967). Second, Section 1292(b) does not require "directly conflicting" authority—it asks only whether reasonable jurists could differ on an issue's resolution. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011). And third, the relevant California and Ninth Circuit decisions applied *Metalclad* only because the parties did not challenge its validity or because the cases could be (and thus needed to be) resolved on narrower grounds.

Defendant's arguments regarding the remaining Section 1292(b) factors also fail. Immediate appeal would advance, not delay, resolution by either confirming arbitration must proceed or allowing the case to continue in court—avoiding unnecessary arbitration and post-arbitration appeals. While the FAA makes orders denying arbitration immediately appealable but not orders granting it, this structure does not eliminate Section 1292(b)'s independent purpose of resolving exceptional legal questions. And the question here is undeniably a controlling question of law: if *Metalclad* violates *Morgan* and traditional equitable estoppel applies, Defendant's motion fails because it cannot establish the required detrimental reliance—a showing Defendant has not made and cannot make. This purely legal question about which standard governs, not how it applies to Plaintiffs' claims, warrants immediate appellate review.

For these reasons, and as explained more fully below, this Court should grant Plaintiffs' Motion for Certification of Interlocutory Appeal. (Dkt. No. 49 ("Mot.").)

## ARGUMENT

### I. There Is Substantial Ground for Difference of Opinion.

#### A. None of Defendant's arguments refute that Plaintiffs have established a substantial ground for difference of opinion.

Defendant first applies the wrong legal standard by demanding a direct split among courts on this issue, but substantial grounds for disagreement exist whenever reasonable jurists might disagree on an issue's resolution. (Opp. at 7 (arguing that "Plaintiffs 'have not provided a single case that conflicts' with the Court's decision here.") (quoting *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010)).) In fact, the Ninth Circuit flatly rejected such a "rigid approach." *Reese*,

643 F.3d at 688 & n.5 (holding that "cases directly conflicting with the district court's construction of the law" are not necessary to show a substantial ground for difference of opinion). Rather, as the court explained, a substantial ground for difference of opinion is present when "reasonable jurists might disagree on an issue's resolution, not merely where they have *already* disagreed." *Id.* at 688 (emphasis added). For that reason, the unpublished and out-of-circuit cases cited by Defendant that disagree with Plaintiffs' view on this issue are not particularly relevant to the "substantial ground for disagreement" factor. (Opp. at 6–7 (citing *Bender v. Twilio Inc.*, No. 24-cv-04914, 2025 WL 2308484 (N.D. Cal. Aug. 11, 2025); *Torres v. Nissan N. Am., Inc.*, No 22STV07578, 2022 WL 14147528 (Cal. Super. Ct. Aug. 17, 2022); *Munoz v. Conduent State & Local Solns., Inc.*, No. 24-2044, 2025 WL 799482 (10th Cir. Mar. 13, 2025); *James v. Venture Home Solar, LLC*, 715 F. Supp. 3d 203 (D. Conn. 2024)).) What matters, rather, is whether there might be reasonable jurists on the other side of the ledger. Between California courts' skepticism of *Metalclad*[1] and their recognition of *Morgan*'s equal-treatment principle,[2] other jurisdictions' rejection of arbitration-specific estoppel rules,[3] legal scholars' tear-down of the same,[4] and the additional countervailing authority discussed below, Plaintiffs have clearly demonstrated such grounds for reasonable disagreement exists. (Mot. at 5–7.)

---

[1] *Davis v. Nissan N. Am., Inc.*, 100 Cal. App. 5th 825, 835 n.3 (4th Dist. 2024); *Ballesteros v. Ford Motor Co.*, 109 Cal. App. 5th 1196, 1207 n.2 (1st Dist. 2025).

[2] *Quach v. California Com. Club, Inc.*, 16 Cal. 5th 562, 569 (2024) (explaining that *Morgan* requires states to treat "arbitration agreements on equal footing with other contracts"); *Hohenshelt v. Sup. Ct. of L.A. Cnty.*, 573 P.3d 944, 949 (Cal. 2025) (affirming that, under *Morgan*, the FAA preempts California laws that depart from "generally applicable state law contract principles" (quoting *Quach*, 16 Cal. 5th at 572)).

[3] *E.g.*, *Santich v. VCG Holding Corp.*, 443 P.3d 62, 65–66 (Colo. 2019); *Hirsch v. Amper Fin. Servs., LLC*, 71 A.3d 849, 857–60 (N.J. 2013); *Warciak v. Subway Rests., Inc.*, 880 F.3d 870, 872 (7th Cir. 2018); *Scheurer v. Fromm Fam. Foods LLC*, 863 F.3d 748, 753 (7th Cir. 2017).

[4] Myriam Gilles, *Arbitration's Unraveling*, 172 U. PA. L. REV. 1063, 1094 (2024) ("[T]he entire edifice of state-law estoppel principles supporting nonsignatory arbitration should, by all logic, come crumbling down in the wake of *Morgan*."); Richard Frankel, *The Arbitration Clause As Super Contract*, 91 WASH. U. L. REV. 531, 580 (2014) (criticizing how "courts have improperly expanded the federal policy favoring arbitration" by "interpret[ing] the [arbitration-specific equitable estoppel] doctrine so broadly as to give non-signatories virtually the exact same rights under the contract as a signatory, and [by] omitt[ing] basic limitations . . . such as the requirement[] of detrimental reliance" from the doctrine of equitable estoppel).

Defendant's attempt to downplay courts that invalidated arbitration-favoring equitable estoppel doctrines before *Morgan* is unavailing. (Opp. at 8 n.9 (arguing that cases which pre-date *Morgan* "do not support [Plaintiffs'] argument").) Regardless of when they were decided, these cases illustrate the substantial ground for difference of opinion because they are predicated on the exact same policy that animates *Morgan*: "to make 'arbitration agreements as enforceable as other contracts, but not more so.'" *Morgan*, 596 U.S. at 418 (quoting *Prima Paint*, 388 U.S. at 404 n.12). For example, in *AtriCure, Inc. v. Meng*, the Sixth Circuit considered whether it should apply an arbitration-specific "intertwined claims" equitable estoppel theory under Ohio law. 12 F.4th 516 (6th Cir. 2021). Applying *Arthur Andersen*'s directive to "follow neutral state-law rules when deciding whether nonparties may enforce or be bound by an arbitration contract," the *AtriCure* court answered in the negative, explaining that the alternative equitable estoppel theory "rest[s] more on the federal policy favoring arbitration and efficiency concerns" and is "not ground[ed] . . . in anything resembling traditional estoppel at common law." *Id.* at 525, 528–29.

Likewise, in *Hall v. Trivest Partners, L.P.*, a federal district court refused to apply an arbitration-specific estoppel test previously adopted by a Michigan state court because it was abrogated by *Arthur Andersen* and did not "comport[] with traditional principles of contract enforcement under Michigan law"). No. 22-12743, 2025 WL 1483694, at *8 (E.D. Mich. May 23, 2025). In so holding, the court was also guided by *Morgan*'s instruction to treat "arbitration agreements as enforceable as other contracts, but not more so." *Id.* at *6 (quoting *Morgan*, 596 U.S. at 418); *see also Doe v. Carmel Operator, LLC*, 160 N.E.3d 518, 525–26 (Ind. 2021) (observing that *Arthur Andersen* "effectively abrogated any case that applied federal common law while ignoring state contract law" and rejecting arbitration-specific estoppel theories that ignore detrimental reliance as being inconsistent with "doctrine's traditional, well-established principles"); *Lawson v. Life of the S. Ins. Co.*, 648 F.3d 1166, 1170–71 (11th Cir. 2011) (collecting cases and recognizing that *Arthur Andersen* "overruled or at least undermined to the point of abrogation" several of the circuit's earlier decisions—including *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942 (11th Cir. 1999), the case from which *Metalclad* adopted the arbitration-specific equitable

estoppel rule at issue—which applied federal common law and not "traditional state-law principles").

Defendant next contends that *Davis* and *Ballesteros* do not demonstrate a substantial ground for difference of opinion because both courts ultimately applied the equitable estoppel test Plaintiffs seek to invalidate. But that's because the test's validity was not properly before either court, as no party had briefed or raised the issue. *Davis*, 100 Cal.App.5th at 835 n.3 ("We do not decide this issue because it has not been briefed by the parties."); *Ballesteros*, 109 Cal. App. 5th at 1207 n.2 ("We do not address this argument because Ballesteros never made it."). Indeed, that the *Davis* and *Ballesteros* courts raised this issue *sua sponte*—despite no party briefing it—suggests that the courts themselves recognized the tension between *Metalclad*'s standard and the centuries-old common law doctrine.

Nor does *Ford Motor Warranty Cases* undermine the substantial grounds for disagreement. Although the California Supreme Court analyzed the case under *Metalclad*, it did so only to find the doctrine inapplicable on the facts—the plaintiffs' claims arose from independent statutory and fraud duties, not their sales contracts with the dealers. *Ford Motor Warranty Cases*, 570 P.3d 857, 859 (Cal. 2025). Because the court resolved the case on that narrower ground, it expressly declined to reach the broader question under *Morgan*. *Id.* at 863–64 n.4 ("[W]e need not, and do not, address plaintiffs' alternative argument" that *Metalclad* violates *Morgan.*). This silence cannot be treated as endorsement. *United States v. Kirilyuk*, 29 F.4th 1128, 1134 (9th Cir. 2022) ("[C]ases are not precedential for propositions not considered . . . ." (citation omitted)). The Court should thus reject Defendant's invitation to infer approval from what can only be characterized as an act of judicial restraint. *Teter v. Lopez*, 125 F.4th 1301, 1309 (9th Cir. 2025) (observing "[t]he cardinal principle of judicial restraint—if it is not necessary to decide more, it is necessary not to decide more—counsels us to go no further" (quoting *PDK Labs. Inc. v. DEA*, 362 F.3d 786, 799 (D.C. Cir. 2004)).

Next, Defendant misses the point in arguing that the Ninth Circuit's continued application of *Metalclad*'s equitable estoppel test means it doesn't violate *Morgan*'s prohibition on arbitration-favoring rules. (Opp. at 5–6 & n.7.) Plaintiffs do not dispute that the Ninth Circuit has continued to apply the *Metalclad* test, even after *Morgan*. *See Kramer v. Toyota Motor Corp.*, 705 F.3d 1122

(9th Cir. 2013); *In re Pac. Fertility Ctr. Litig.*, 814 F. App'x 206 (9th Cir. 2020); *Franklin v. Cmty. Reg'l Med. Ctr.*, 998 F.3d 867 (9th Cir. 2021); *Herrera v. Cathay Pac. Airways Ltd.*, 104 F.4th 702 (9th Cir. 2024). But that doesn't illustrate an absence of substantial grounds for difference of opinion because no party in *Kramer*, *In re Pacific Fertility Center*, *Franklin*, or *Herrera* raised the issue. The Ninth Circuit did not address the question in those cases—and still hasn't.

Relatedly, Defendant's insistence that Plaintiffs must satisfy the Ninth Circuit standard for overruling circuit precedent—on a motion for certification of interlocutory appeal—manufactures a requirement that Section 1292(b) simply does not impose and is yet another improper attempt to relitigate the merits. (Opp. at 1, 6 n.5 (quoting *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003)).) Nonetheless, *Miller* governs when a Ninth Circuit panel may depart from existing circuit precedent, not how courts assess issues of first impression. Because the Ninth Circuit has never addressed whether *Metalclad*'s arbitration-specific equitable estoppel rule survives *Morgan*, the *Miller* standard is irrelevant.

There can be no question that reasonable judges might—and, indeed, do—disagree about whether allowing non-signatories to enforce arbitration agreements through equitable estoppel without showing detrimental reliance is an improper arbitration-favoring rule. Plaintiffs have clearly established that there are substantial grounds for a difference of opinion.

**B. Defendant's irrelevant arguments about the merits fail.**

Much of Defendant's opposition attacks whether Plaintiffs' appeal would be successful on the merits, but that is not at issue here. (Opp. at 4–5.) Plaintiffs did not move for reconsideration, and the Court is not being asked to revisit its prior Order—Plaintiffs, of course, understand the Court did not agree with them on the merits. Rather, the question before the Court is whether there is "substantial ground for difference of opinion" such that "reasonable jurists might disagree" about the propriety of allowing non-signatories to compel arbitration through equitable estoppel without showing detrimental reliance—an element California courts have required in every other context for 150 years. *Reese*, 643 F.3d at 688; *City of Long Beach v. Mansell*, 3 Cal. 3d 462, 489 (1970).

While the merits are not at issue, Plaintiffs feel compelled to briefly address Defendant's misunderstanding of *Morgan* and the FAA. (Opp. at 4–5.) According to Defendant, *Morgan* only

prohibits *federal* courts from making arbitration-preferring rules that are *procedural* in nature. (*Id.* at 4.) In other words, Defendant's position would (1) allow any state court to ignore *Morgan* and create arbitration-specific rules, and (2) allow any rule deemed "substantive" to discriminate against litigation in favor of arbitration without violating *Morgan* or its progenitors. Those distinctions find no support in *Morgan*'s reasoning.

First, *Morgan* applies to both state and federal courts. In fact, the Supreme Court has made unmistakably clear that "the FAA's core substantive requirement—Section 2's command to enforce arbitration agreements like other contracts—applies in state courts, just as it does in federal courts." *Badgerow v. Walters*, 596 U.S. 1, 8 n.2 (2022).

Second, though *Morgan* happened to involve a procedural rule, nothing in its reasoning confines the decision to that context. Consider the absurd implications of such an interpretation. On this reading of *Morgan*, a state could not adopt a procedural forfeiture rule that uniquely favors arbitration, yet it could enforce arbitration agreements without requiring proof of fundamental contractual elements such as mutual assent or consideration. Nowhere did *Morgan* imply—let alone hold—that procedural rules deserve distinct protection while substantive ones do not. *See generally Morgan*, 596 U.S. 411. Instead, the Court invalidated the Eighth Circuit's waiver rule, which required a showing of prejudice only in the arbitration context, because it conflicted with the FAA's overarching policy "to make 'arbitration agreements as enforceable as other contracts, but not more so.'" *Id.* at 418 (quoting *Prima Paint*, 388 U.S. at 404 n.12); *see also id.* ("The federal policy is about treating arbitration contracts like all others, not about fostering arbitration.") (citing *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218–21 (1985)). That policy long predates *Morgan* and governs rules procedural *and* substantive concerning the enforceability of arbitration agreements. *See Prima Paint*, 388 U.S. at 403–04 & n.12 (holding that where a party asserts "fraud in the inducement of the arbitration clause itself"—a substantive defense—the claim cannot be "immunized . . . from judicial challenge" because to hold otherwise would "elevate [the arbitration agreement] over other forms of contract—a situation inconsistent with the [FAA's] 'saving clause'").

Indeed, *Morgan*'s rejection of "bespoke rule[s]" favoring arbitration simply applies *Arthur Andersen*'s equal-treatment principle, which "require[s] courts to place [arbitration] agreements upon the same footing as other contracts." *Arthur Andersen*, 556 U.S. 624, 630 (2009); *Kindred Nursing Centers Ltd. P'ship v. Clark*, 581 U.S. 246, 251 (2017) (describing the FAA's "equal-treatment principle"). In *Arthur Andersen*, the Supreme Court struck down the Sixth Circuit's categorical ban on enforcing arbitration agreements involving non-signatories because it contravened the FAA. 556 U.S. at 629–32. Applying the equal-treatment principle, the Court explained that the FAA does not "purport[] to alter background principles of state contract law," including substantive rules like equitable estoppel that "allow a contract to be enforced by or against nonparties." *Id.* But the Court added a key limitation: state law applies to the validity and enforceability of arbitration agreements only "*if* that law arose to govern issues concerning the validity, revocability, and enforceability *of contracts generally*." *Id.* at 630–31 (second emphasis added) (quoting *Perry v. Thomas*, 482 U.S. 483, 493 n.9 (1987)). Put differently, as the Court explained two decades earlier, "[a] state-law principle that takes its meaning precisely from the fact that a contract to arbitrate is at issue does not comport with [the equal-treatment] requirement of [FAA] § 2." *Perry*, 482 U.S. at 492 n.9.

Because the Sixth Circuit's categorical ban on applying arbitration agreements to non-signatories in *Arthur Andersen* did not govern the enforceability of contracts generally, it contravened the FAA. So too here: because *Metalclad*'s equitable estoppel doctrine does not govern the enforceability of contracts generally—only arbitration agreements—it likewise violates the FAA's equal-treatment principle. This analysis of *Morgan* and its predecessors should foreclose Defendant's procedural-only distinction—or, at the very least, demonstrates substantial grounds for disagreement. The FAA demands equal treatment of arbitration agreements in all contexts, regardless of whether the challenged rule is labeled procedural or substantive.

## II. Whether *Metalclad*'s Equitable Estoppel Test Survives *Morgan* Is a Controlling Question of Law

Defendant does not—and cannot—seriously dispute that Plaintiffs raise a "controlling issue of law" that could "materially affect the outcome of litigation in the district court." *In re Cement*

*Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1981). First, the question presented—whether *Metalclad* and its progeny's rule allowing non-signatories to compel arbitration through equitable estoppel without showing detrimental reliance is an arbitration-favoring rule in violation of *Morgan*—is purely legal and does not turn at all on the facts of this case. Defendant baldly asserts that "Plaintiffs actually seek review of the Court's application of the law to the facts of the case," but this ignores that Plaintiffs' request concerns solely what estoppel rule governs, and not how that rule applies. (Opp. at 10.) Moreover, when courts determine whether a state or judicial rule "favors arbitration" contrary to the FAA, they routinely frame the issue as a legal question of preemption, not a factual dispute. *See, e.g.*, *Kindred Nursing*, 581 U.S. at 252–53 (holding that Kentucky's "clear statement rule" is preempted by the FAA as a matter of law).

Second, as Plaintiffs set out in their motion, the question is controlling because if the *Metalclad* test is invalid and detrimental reliance is required to establish equitable estoppel, the motion to compel arbitration would necessarily fail. (Mot. at 4.) Defendant does not contest this point—nor does it dispute that it cannot show detrimental reliance.

## III. Immediate Appeal May Materially Advance Termination of the Litigation

Defendant's emphasis on a "speedy" resolution assumes the parties' dispute will end with arbitration. (Opp. at 9 (*Prima Paint*, 388 U.S. at 404 n.12).) That assumption is flawed: arbitration may delay rather than expedite resolution, since Plaintiffs retain the right to appeal after an award is confirmed or vacated by this Court. More importantly, Defendant's argument misapprehends the purpose of Section 1292(b), which asks not whether arbitration might be faster, but whether "early appeal of a legal ruling . . . may provide more efficient disposition of the litigation." *Crowe v. County of San Diego*, No. 99CV0241 R, 2005 WL 8156612, at *2 (S.D. Cal. July 25, 2005) (*quoting Ford Motor Credit Co. v. S. E. Barnhart & Sons, Inc.*, 664 F.2d 377, 380 (3d Cir. 1981))).

Defendant also raises the FAA's appeal provisions, but the FAA's asymmetric appeal structure does not diminish that efficiency interest or alter Section 1292(b)'s independent inquiry. (Opp. at 9 (citing 9 U.S.C. § 16(a)–(b).) Whether the FAA allows immediate appeals from orders compelling arbitration has no bearing on whether this Court should certify its order under Section 1292(b). The relevant question under Section 1292(b) is not whether Plaintiffs have an independent

right to appeal now, but whether allowing an immediate appeal would "materially advance the ultimate termination of the litigation." *Reese*, 643 F.3d at 688.

Here, an immediate appeal would do exactly that. If the Ninth Circuit agrees that *Metalclad* is inconsistent with *Morgan*, the case will return to this Court for prompt adjudication on the merits, sparing the parties the cost and delay of unnecessary arbitration and the inevitable post-arbitration motion practice to confirm or vacate any award. What matters is that early appellate review would either end the arbitration entirely or confirm that it must proceed, both outcomes materially advancing resolution of the case. *Lee v. Postmates Inc.*, No. 18-CV-03421, 2019 WL 1864442, at *4 (N.D. Cal. Apr. 25, 2019) (granting a motion to certify two orders compelling arbitration in part because "an appeal before arbitration will … conclude more quickly than requiring arbitration to run its course before the appeal begins"); *A.D. by & through Serrano v. Credit One Bank, N.A.*, No. 14 C 10106, 2016 WL 10612609, at *1 (N.D. Ill. Dec. 11, 2016) (certifying interlocutory appeal on the Seventh Circuit's "arbitration-by-estoppel doctrine" because "determination of this question on appeal now, rather than later after an arbitration proceeding is over and done with, may materially advance the ultimate termination of the litigation").

And appellate review wouldn't just advance this case; it would provide critical guidance in many similar California cases wrestling with the same non-signatory arbitration issue. *E.g.*, *Woods*, No. 24-cv-04909, dkt. 44 (currently pending motion to compel arbitration on this exact issue); *Morrison*, No. 24-cv-00797, 13-1 (same); *Apexxus LLC*, No. 25-cv-00049, dkt. 11 (same); *Christensen Bros. Constr. Co.*, No. 25CV124989 (same); *Oswald*, No. 25-cv-00696, dkt. 16 (same). This is yet another reason to certify question for interlocutory appeal. *See Chambers v. Maplebear, Inc.*, 746 F. Supp. 3d 206, 218 (S.D.N.Y. 2024) (certifying an order compelling arbitration in part because interlocutory appeal would "converse judicial resources in the longer term by resolving important and oft-arising legal questions") (citation omitted).

**CONCLUSION**

For the reasons outlined in Plaintiffs' motion and this reply, Plaintiffs respectfully request that this Court grant their Motion for Certification of Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b).

Respectfully submitted,

**KYLE ATKINS and MICHAEL LUO,** individually and on behalf of all others similarly situated,

Dated: November 6, 2025

By: */s/ Rafey Balabanian*
*One of Plaintiffs' Attorneys*

Rafey Balabanian (SBN 315962)
rbalabanian@edelson.com
EDELSON PC
150 California Street, 18th Floor
San Francisco, California 94111
Tel: 415.212.9300
Fax: 415.373.9435

Schuyler Ufkes*
sufkes@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

**Pro hac vice admission to be sought*

*Counsel for Plaintiffs and the Putative Classes*